JON MICHAELSON (SBN 83815)
BEN BEDI (SBN 172591)
**KIRKPATRICK & LOCKHART PRESTON
GATES ELLIS LLP**
630 Hansen Way
Palo Alto, California 94304
Telephone: 650.798.6700
Facsimile: 650.798.6701

KEVIN W. KIRSCH (SBN 166184)
DAVID H. WALLACE, *pro hac vice pending*
DAVID A. MANCINO, *pro hac vice pending*
STEPHAN H. JETT, *pro hac vice pending*
**TAFT, STETTINIUS & HOLLISTER, LLP**
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205

Attorneys for Defendant
TESSERON, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELECTRONICS FOR IMAGING, INC., | Case No. CV07-5534 RS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF TESSERON, LTD. TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |
| vs. | |
| TESSERON, LTD., | [Assigned to Honorable Richard Seeborg] |
| Defendant. | Hearing Date:    January 16, 2008<br>Time:    9:30 a.m. |

1        PLEASE TAKE NOTICE that on December 10, 2007, Defendant Tesseron, Ltd. ("Tesseron")

2   filed with the Court a Motion to Dismiss or, in the Alternative, to Transfer Venue. A hearing on this

3   motion will be held on January 16, 2008 at 9:30 a.m. before the Honorable Richard Seeborg.

4        Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Tesseron moves the Court

5   to dismiss the instant matter for lack of personal jurisdiction. In the alternative, Tesseron requests

6   that the Court transfer this matter to the United States District Court for the Northern District of Ohio

7   pursuant to 28 U.S.C. § 1404(a). This motion is supported by the following Memorandum of Points

8   and Authorities and by the Declaration of Forrest Gauthier.

9

10                   KIRKPATRICK & LOCKHART PRESTON
                            GATES ELLIS LLP

11

12

13   Dated: December 10, 2007         By:                    

                                     Ben Beal

14                                      Jon Michaelson
                                     Attorneys for Defendant

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION OF TESSERON, LTD. TO DISMISS**
**Case No. CV07-5534 RS**

Jon Michaelson (SBN 83815)
Ben Bedi (SBN 172591)
**KIRKPATRICK & LOCKHART PRESTON**
**GATES ELLIS LLP**
630 Hansen Way
Palo Alto, California  94304
Telephone: 650.798.6700
Facsimile: 650.798.6701

Kevin W. Kirsch  (SBN 166184)
David H. Wallace, *pro hac vice pending*
David A. Mancino, *pro hac vice pending*
Stephan H. Jett, *pro hac vice pending*
**TAFT, STETTINIUS & HOLLISTER, LLP**
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205

Attorneys for Defendant
TESSERON, LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ELECTRONICS FOR IMAGING, INC., | Case No. CV07-5534 RS |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF DEFENDANT TESSERON, LTD'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |
| vs. | |
| TESSERON, LTD., | |
| Defendant. | [Assigned to Honorable Richard Seeborg] |
| | Hearing Date:     January 16, 2008 |
| | Time:              9:30 a.m. |

# TABLE OF CONTENTS

**Page**

I.  Introduction and Statement of Issues ................................................................. 1

II.  Statement of the Case................................................................................. 1

III.  Statement of Facts .................................................................................. 3

IV.  ARGUMENT ............................................................................................ 5

    A.  This Action Should be Dismissed for Lack of Personal Jurisdiction ...................... 5

        1.  The allegations in EFI's Complaint do not establish personal jurisdiction over Tesseron in California.............................................................. 5

        2.  Tesseron is not subject to personal jurisdiction in California because it lacks the required minimum contacts with California ................................. 6

    B.  Alternatively, this Court Should Transfer This Action to the United States District Court for the Northern District of Ohio ................................................... 10

V.  Conclusion ............................................................................................ 14

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

1

# TABLE OF AUTHORITES

2

**Page**

*Cases*

3

Bell Atlantic Corp. v. Twombly, - U.S. -, 127 S. Ct. 1955 (2007) ...................................................... 6

4

Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ........................................................ 6

Cal. Civ. P. Code § 410.10 and Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th

5

    Cir. 1998) ........................................................................................................................................ 7

Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960) ....................................................... 12

6

Dex Prods., Inc. v. Houghteling, No. C 05-05126 SI, 2006 WL 1751903, at *1 (N.D. Cal.

    June 23, 2006) ................................................................................................................................. 7

7

Gerin v. Aegon USA, Inc., No. C 06-5407 SBA, 2007 WL 1033472, at *4 (N.D. Cal. April 4,

    2007) ........................................................................................................................... 11, 12, 14

8

Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985) ......................................................... 11

Hernandez v. Union Pacific R.R. Co., No. C 04-04899, 2005 WL 396614, at *3 (N.D. Cal.

9

    Feb. 18, 2005) ................................................................................................................................. 12

Hockerson-Halberstadt, Inc. v. Propet USA, 62 Fed. Appx. 322, 337 (Fed. Cir. 2003) ................ 9

10

Hoefer v. U.S. Dep't of Commerce, No. C 00 0918 VRW, 2000 WL 890862, at *3 (N.D. Cal.

    June 28, 2000) ......................................................................................................................... 11, 12

11

Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ............................................. 5, 7, 9

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ................................................................... 7

12

London and Hull Mar. Ins. Co. Ltd. v. Eagle Pacific Ins. Co., No. C 96-01512 CW, 1996 WL

    479013, *3 (N.D. Cal. Aug. 14, 1996) ........................................................................................ 12

13

Pebble Beach Co. v. Caddy, 945 F.3d 1151, 1160 (9th Cir. 2006) .................................................. 6

Pratt v. Rowland, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991) ......................................................... 12

14

Red Wing Shoe Co., Inc. v. Hockerson-Halberstradt, Inc., 148 F.3d 1355

    (Fed. Cir. 1998) ................................................................................................... 3, 7, 8, 9

15

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) ........................... 6

Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) ........................ 6, 9

16

Storage Tech. Corp. v. Cisco Systems, Inc., 329 F.3d 823, 836 (Fed. Cir. 2003) ...................... 11

Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) ................................................................ 6

17

Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995) .................................................. 6

UMAX Techs., Inc. v. Herold Mktg. Assoc., Inc., No. C 97-4027 SC ARB, 1998 WL 164964,

18

    at *1 (N.D. Cal. March 19, 1998) ................................................................................................ 12

Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) ............................................................................ 11

19

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ....................................... 9

*Statutes*

20

28 U.S.C. § 1404 ................................................................................................................................. 3

21

28 U.S.C. § 1631 ................................................................................................................................. 10

United States District Court for the Northern District of Ohio 28 U.S.C. § 1404(a) .......... 1, 10, 14

22

*Other Authorities*

23

U.S. Pat. Nos. 5,729 .......................................................................................................................... 1

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

1    **I.    INTRODUCTION AND STATEMENT OF ISSUES**

2            Plaintiff Electronics for Imaging, Inc. ("EFI") has sued Defendant Tesseron, Ltd.

3    ("Tesseron") in this Court seeking a declaratory judgment that it is not infringing Tesseron's patents.

4    Tesseron, however, lacks sufficient contact with the State of California to satisfy the due process

5    requirements necessary for Tesseron to be subjected to personal jurisdiction in California. In fact,

6    Tesseron has no presence in California. It owns no property in California, conducts no business in

7    California, has never been registered to do business in California, and has not engaged in any

8    transaction that would subject it to personal jurisdiction in this forum.   Tesseron accordingly moves

9    this Court to dismiss this matter for lack of personal jurisdiction. This Motion presents the following

10    issue:

11            Infringement-notice letters and other cease-and-desist letters are insufficient to subject
        a patent holder to personal jurisdiction in a forum state. The activities of a patent
12        holder's licensees are likewise insufficient to confer personal jurisdiction over the
        patent holder in the forum state. Here, Tesseron's only contacts with California are
13        infringement-notice letters sent to EFI and, potentially, the activities of Tesseron's
        patent licensees. Is Tesseron subject to personal jurisdiction in California?
14

15            Alternatively, Tesseron requests that the Court transfer this matter to the United States

16    District Court for the Northern District of Ohio 28 U.S.C. § 1404(a). There, this action can be

17    consolidated with a pending patent-infringement action that Tesseron filed against EFI's customer

18    Konica Minolta Business Technologies, Inc. and to which EFI has been joined as a defendant. To

19    transfer this matter, the Court must resolve the following issue:

20            The interests of justice factor may be decisive in granting a transfer under 28 U.S.C. §
        1404(a). Transferring this matter to the Northern District of Ohio for consolidation
21        will—without adversely affecting the parties and witnesses—further the interests of
        justice by promoting judicial economy and avoiding duplicative litigation, thereby
22        limiting the waste of time and money. Do the interests of justice warrant transferring
        this action?
23

24    **II.    STATEMENT OF THE CASE**

25            EFI instituted this unverified declaratory judgment action against Tesseron, alleging that U.S.

26    Pat. Nos. 5,729,665; 5,937,153; 6,209,010 B1;  6,381,028 B1; 6,487,568 B1; 6,599,325 B2;

27    6,687,016 B2; and 6,771,387 B2 (collectively, or in part, the "Tesseron Patents") are invalid,

28    unenforceable, and otherwise not infringed by EFI. EFI alleges, in support of jurisdiction, that "[t]his

1

1   Court has personal jurisdiction over Tesseron by way of Tesseron's ongoing and substantial business

2   in the Northern District of California" and "[b]ased on information and belief, Tesseron, through its

3   agents, affiliates, and/or alter egos, has continuing and extensive contacts with this forum, including

4   contacts with companies in this forum to which it sells and provides service support for variable data

5   printing ("VDP") software and hardware." (Compl. ¶ 2)  But EFI fails to provide even a single

6   supporting fact for its conclusory allegations of personal jurisdiction.

7            The facts underlying Tesseron's dealings with EFI and California are set forth in the affidavit

8   of Forrest Gauthier, Tesseron's Chief Executive Officer, attached as Exhibit A and submitted in

9   support of Tesseron's motion to dismiss or transfer.  As the Court will see from that affidavit, for

10  purposes of general personal jurisdiction, Tesseron conducts no business and has no "substantial,

11  continuous, and systematic" contacts with the State of California.  For purposes of specific

12  jurisdiction, Tesseron's only alleged contact with EFI in California is infringement-notice letters

13  Tesseron sent to EFI.

14           All of this boils down to EFI's conjecture, i.e., the unverified, alleged "information and

15  belief," that Tesseron has continuing and extensive contacts with this forum, which it does not.

16  Nowhere in the Complaint does EFI state how, and by what means, Tesseron has continuing and

17  extensive contacts with California such that it purposely avails itself of the protection and benefits of

18  the laws of California.  EFI does not allege, as it cannot, that Tesseron maintains a place of business

19  in California.  Nor does EFI allege, as it cannot, that Tesseron did any of the following activities:

20       ▪   ever been registered or qualified to do business in California

21       ▪   contracted for business in California

22       ▪   represented that it does business in California

23       ▪   owned property in California

24
25       ▪   kept bank accounts in California

26       ▪   paid taxes in California

27       ▪   held meetings in California

28       ▪   solicited sales from California

2

- directed any advertising toward California

- sold products to customers in California

- shipped any products to California

- consented to jurisdiction in California

- did any act by which it sought to avail itself of the laws or benefits of California.

On the basis of *Red Wing Shoe Co., Inc. v. Hockerson-Halberstradt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), and other pertinent authority, Tesseron moves to dismiss this action because that the Court lacks personal jurisdiction over Tesseron, inasmuch as Tesseron has no presence in California, conducts no business in California, and has not engaged in any transactions in California that would subject Tesseron to specific jurisdiction in the forum.

Alternatively, Tesseron moves the Court to transfer this action to the United States District Court for the Northern District of Ohio for consolidation with a related action, *Tesseron, Ltd. v. Konica Minolta Business Solutions, U.S.A., Inc., et al.*, No. 1:07-cv-02947 (N.D. Ohio) (the "Related Action"), pursuant to 28 U.S.C. § 1404 or § 1631. The Related Action was commenced on September 26, 2007, over a month before the present action was filed. Further, on December 6, 2007, shortly after the initial pleading was filed in this case, the Related Action was amended, as of right, to add EFI, Ricoh Company, Ltd. and Ricoh Americas Corporation (the Ricoh entities collectively referred to as "Ricoh") as additional defendants. (See Amended Complaint and the docket in the Related Action, accompanying this memorandum as Exhibit B.) As it stands, EFI and Tesseron are already parties to a previously filed and duplicative action in the Northern District of Ohio that further includes, among others, Konica Minolta Business Technologies, Inc. ("Konica Minolta"), a downstream customer of EFI. (Compl. ¶ 8)

## III.    STATEMENT OF FACTS

The Tesseron Patents are directed to advancements in the field of high-speed and high-volume variable printing, which involves the creation of numerous documents where portions of those documents are the same for each document, i.e., static, while other portions are different for each document, i.e., variable. (See declaration of Forrest Gauthier, ¶ 4, accompanying this memorandum

1    as Exhibit A ("Gauthier Decl.")) The Tesseron Patents cover several inventions of Tesseron's

2    founder, Forrest Gauthier, which greatly simplify and improve the efficiencies involved with high-

3    speed and high-volume variable printing. (Gauthier Decl., ¶ 3) These advancements helped

4    revolutionize the variable-printing industry, and the patents that issued are "pioneering patents"

5    entitled to the highest form of protection.

6         Tesseron, an Ohio limited liability company, was founded by Mr. Gauthier on October 16,

7    2000, and owns the intellectual property rights in the Tesseron Patents. (Gauthier Decl., ¶¶ 2, 8)

8    From 1993 to 2000, Mr. Gauthier was employed by Varis Corporation ("Varis"). (Gauthier Decl., ¶

9    2) Varis owned the rights in the then-existing Tesseron Patents and sold hardware and software

10   products that commercialized the then-existing patents. (Gauthier Decl., ¶ 5) The products of Varis

11   included a variable-output printer controller and "VariScript" software, proprietary software capable

12   of producing variable outputs at high speeds. (Gauthier Decl., ¶ 5) Varis licensed these variable-

13   output printer controllers, and the accompanying VariScript software, to Wallace Computer Systems

14   ("Wallace") and other companies in the mid-1990s, providing technical support service by telephone

15   and receiving monthly licensing fees. (Gauthier Decl., ¶ 6) In the late 1990s, Varis suffered

16   financial difficulty, wherein Tesseron purchased the intellectual property of Varis and the

17   licensing/technical support contracts with Wallace at public auction. (Gauthier Decl., ¶ 8)

18        Tesseron's present revenue results from the licensing of its intellectual property, which

19   includes the patents formerly owned by Varis and additional intellectual property developed by

20   Tesseron since (i.e., the Tesseron Patents), as well as the revenue from the software-use/technical-

21   support contract with Wallace.[1] (Gauthier Decl., ¶ 9) Tesseron does not and has never manufactured

22   any products, including the variable-output printer controller and VariScript software once sold by

23   Varis, and Tesseron has never sold any products or services, whether in California or otherwise.

24   (Gauthier Decl., ¶ 10)

25

26

27   _____

28   [1] After entering into the licensing contracts with Varis, Wallace merged with Moore Corporation,
     Ltd., becoming Moore Wallace, Inc. ("Moore Wallace"), and was thereafter acquired by R.R.
     Donnelley & Sons Company, though it maintains the Moore Wallace name. (Gauthier Decl., ¶ 7)

4

1  Tesseron has licensed at least some portion of its intellectual property to Xerox Corporation

2  ("Xerox"), a corporation organized under the laws of the State of New York with its primary office in

3  Connecticut; vLogix, Inc., having a principal place of business in the State of Ohio; GMC Software

4  AG, organized and existing under the laws of Switzerland; GMC Software Technology, Inc., having

5  a principal place of business in Massachusetts; and, Canon, Inc. ("Canon"), organized and existing

6  under the laws of Japan. (Gauthier Decl., ¶ 11)  In addition, Moore Wallace, the entity now owned

7  by R.R. Donnelley that assumed the rights to the licensing contracts, is principally based in Illinois,

8  and has represented that all variable-output printer controllers that are subject to the

9  licensing/technical support contract with Moore Wallace are located in Osage, Kansas and

10  Streetsboro, Ohio. (Gauthier Decl., ¶ 12)

11  Tesseron has never licensed to a company with a principal place of business in California,

12  negotiated a contract in California, and/or held meetings in California. (Gauthier Decl., ¶ 13)

13  Further, Tesseron does not maintain any physical presence, facilities, or employees in California, and

14  is not registered or qualified to do any business in the state. (Gauthier Decl., ¶ 14)  Tesseron does not

15  receive royalties or revenue from any licenses, product sales, or services in the state and does not

16  otherwise transact business in California. (Gauthier Decl., ¶ 13)  Tesseron has no contact, contract,

17  or commitment in California, aside from this action. (Gauthier Decl., ¶ 14)

18  **IV.   ARGUMENT**

19      **A.   This Action Should be Dismissed for Lack of Personal Jurisdiction**

20  Based on the allegations of EFI's Complaint and the facts established by Mr. Gauthier's

21  affidavit, Tesseron is not subject to personal jurisdiction in California, and this action should

22  therefore be dismissed.

23          1.   The allegations in EFI's Complaint do not establish personal jurisdiction over

24             Tesseron in California

25

26  EFI bears the burden of demonstrating the existence of minimum contacts over nonresident

Tesseron. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  In its Complaint, EFI

27  asserts only in conclusory terms that "[t]his Court has personal jurisdiction over Tesseron by way of

28  Tesseron's ongoing and substantial business in the Northern District of California" and "[b]ased on

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

1    information and belief, Tesseron, through its agents, affiliates, and/or alter egos, has continuing and

2    extensive contacts with this forum, including contacts with companies in this forum to which it sells

3    and provides service support for variable data printing ("VDP") software and hardware." (Compl. ¶

4    2)  Such statements are simply a rote recitation of judicial decisions on due process and personal

5    jurisdiction.  The Federal Circuit, like the Ninth Circuit,[2] does not credit such conclusory allegations

6    in opposition to a motion to dismiss. *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998)

7    ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim"

8    against a Rule 12(b) motion).  EFI's jurisdictional pleading is therefore insufficient to meet the

9    required *prima facie* showing of jurisdiction and to withstand a motion to dismiss.  *See Silent Drive,*

10   *Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

11          This position is supported by the Supreme Court, which recently re-emphasized that

12   conclusory, non-factual pleading is not permitted under Rule 12.  *Bell Atlantic Corp. v. Twombly*, –

13   U.S. –, 127 S. Ct. 1955 (2007).  To survive a motion to dismiss, a plaintiff must plead "enough facts

14   to state a claim to relief that is plausible on its face," and the "[f]actual allegations must be enough to

15   raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1265, 1274.  While the

16   *Twombly* case involved Civil Rule 12(b)(6), that principle applies with equal force to jurisdictional

17   and substantive deficiencies.  Measured against these requirements, EFI's Complaint fails to state a

18   *prima facie* case of personal jurisdiction under either a general or specific jurisdiction theory.

19                    2.    Tesseron is not subject to personal jurisdiction in California because it lacks

20                          the required minimum contacts with California

21

22          Because the jurisdictional question at issue here is "intimately involved with the substance of

23   patent laws," the law of the Federal Circuit is applied to determine whether the defendant is subject to

24   _____

25   [2] *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("conclusory allegations … are
     insufficient to establish prima facie showing of personal jurisdiction"); *Schwarzenegger v. Fred*
26   *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("plaintiff cannot 'simply rest on the bare
     allegations of its complaint'" (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787
27   (9th Cir. 1977))); *see also Pebble Beach Co. v. Caddy*, 945 F.3d 1151, 1160 (9th Cir. 2006)
     ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare
28   allegations in the face of specific denials made by the defendants, the Court need not permit even
     limited discovery …" (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995))).

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

1   personal jurisdiction. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (citing *Akro*

2   *Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)); *see also Dex Prods., Inc. v. Houghteling*, No. C

3   05-05126 SI, 2006 WL 1751903, at *1 (N.D. Cal. June 23, 2006)[3] (citing *Elecs. for Imaging, Inc. v.*

4   *Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2002)). Even so, the Court may exercise personal jurisdiction

5   over Tesseron only if: (1) the applicable California statute authorizes service of process upon the

6   nonresident defendant, and (2) the assertion of jurisdiction would satisfy the requirements of federal

7   due process. *Inamed*, 249 F.3d at 1359 (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123

8   F.3d 1455, 1458 (Fed. Cir. 1997)). Because California's long-arm statute is coextensive with the

9   bounds of due process of law, however, the inquiry is simply whether jurisdiction comports with due

10  process. *Id.* at 1360 (citing Cal. Civ. P. Code § 410.10 and *Panavision Int'l, L.P. v. Toeppen*, 141

11  F.3d 1316, 1320 (9th Cir. 1998)). As such, the test for personal jurisdiction over Tesseron in this

12  action is whether Tesseron has sufficient "minimum contacts" with California such that jurisdiction

13  "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.*

14  *Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

15          Applying this test to facts analogous to the present case in *Red Wing*, the Federal Circuit

16  affirmed the District of Minnesota's granting of a motion to dismiss for lack of personal jurisdiction.

17  *Red Wing*, 148 F.3d at 1359-62. There, the Red Wing Shoe Company, Inc. ("Red Wing"), a

18  Minnesota resident, brought a declaratory judgment action for non-infringement, invalidity, and

19  unenforceability of a patent owned by the defendant Hockerson-Halberstadt, Inc. ("HHI"), a non-

20  Minnesota resident. *Id.* at 1357. While HHI's patent related to the design of an athletic shoe, HHI,

21  itself did not manufacture or sell any shoes. Instead, its revenue stemmed solely from the licensing

22  and enforcement of its patent rights. *Id.*

23          Red Wing argued that HHI had sufficient minimum contacts with Minnesota due to a series of

24  three infringement-notice letters that HHI sent to Red Wing in Minnesota. *Id.* at 1359. Along with

25  indicating that several of Red Wing's products infringed HHI's patents, the letters offered Red Wing

26  a license and responded to Red Wing's noninfringement contentions. *Id.* at 1357. The court held that

27

28  [3] A copy of *Dex Prods.* is attached as Exhibit C.

7

1  such letters, without more, were insufficient to confer personal jurisdiction. *Id.* at 1361. The court

2  reasoned that, while infringement-notice letters may be substantially related to the action,

3  "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others

4  of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Id.* 1360-61. The

5  court accordingly held that HHI's three letters did not create personal jurisdiction. *Id.* at 1361.

6  　　In addition to the infringement-notice letters, Red Wing argued that HHI was subject to

7  personal jurisdiction in Minnesota because thirty-four of HHI's patent licensees sold products in

8  Minnesota, including six who had stores or were registered to do business there. *Id.* at 1357-59. The

9  court rejected this argument as well, reasoning that "doing business with a company that does

10  business in Minnesota is not the same as doing business in Minnesota." *Id.* at 1361. The court went

11  on to note that "the Supreme Court has made clear that contacts resulting from 'the unilateral activity

12  of another party or third person' are not attributable to a defendant." *Id.* (citing *Burger King*, 471

13  U.S. at 475 & n. 17). Indeed, "Red Wing's flawed theory would subject a defendant to nationwide

14  personal jurisdiction if it decides to do business with a company that does business nationwide." *Id.*

15  at 1361 (citing Burger King, 471 U.S. at 475 & n.17). Accordingly, the court held that the activities

16  of HHI's licensees did not create personal jurisdiction over HHI. *Id.* at 1361-62. As a result, HHI

17  lacked sufficient contacts with Minnesota to confer jurisdiction on the district court.

18  　　Here, Tesseron similarly lacks sufficient contacts with California to confer jurisdiction on this

19  Court. EFI's claims here are for declaratory judgment of noninfringement, invalidity, and

20  unenforceability. Like HHI, Tesseron does not manufacture any products, and it generates revenue

21  through licensing and protecting the Tesseron Patents. While EFI implies that numerous threats and

22  communications were directed to EFI (presumably, in California), Tesseron's sole alleged contact

23  with California that relates to these claims is infringement-notice letters Tesseron sent to EFI.

24  (Compl. ¶¶ 11); *see also Red Wing*, 148 F.3d at 1360 (because plaintiff's claim requests only

25  declaratory judgment of noninfringement, "[t]he contacts at issue are cease-and-desist letters that

26  charge plaintiff with infringement"). Thus, as in *Red Wing*, Tesseron is not subject to personal

27  jurisdiction in California because infringement-notice letters do not create personal jurisdiction.

28  Indeed, it is well established that such notice letters alone are insufficient to satisfy the minimum-

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

1  contacts requirements necessary for due process in declaratory-judgment actions. *See Silent Drive*,

2  326 F.3d at 1202 (letters threatening infringement litigation do not suffice to create personal

3  jurisdiction because to exercise jurisdiction in such a situation would not "comport with fair play and

4  substantial justice"); *Inamed*, 249 F.3d at 1361 (Federal Circuit has "repeatedly held" that sending an

5  infringement letter without more is insufficient to exercise personal jurisdiction; there must be "other

6  activities" related to specific claims and directed at a specific forum besides infringement letters).

7  Tesseron's infringement-notice letters are therefore insufficient to subject Tesseron to personal

8  jurisdiction in this Court.

9      In like manner, whatever dealings its licensees have with the forum state, Tesseron does not

10  transact business in California and has not purposely availed itself of the laws and benefits of the

11  state. Tesseron's contacts with California are limited to notice letters and contacts through licensees.

12  Under the Due Process Clause, it is the activity of the defendant that makes it amenable to specific

13  jurisdiction, not the unilateral activity of some third party. *Burger King*, 471 U.S. at 474; *World-*

14  *Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Thus, as in *Red Wing*, the activities

15  of Tesseron's licensees are insufficient to subject Tesseron to personal jurisdiction in California.

16      Moreover, it cannot credibly be asserted that Tesseron has engaged in "continuous and

17  systematic" activity in California such that the Court may exercise general personal jurisdiction over

18  Tesseron. *See Silent Drive*, 326 F.3d at 1200; *Red Wing*, 148 F.3d at 1359. Tesseron does not have

19  contacts "so substantial and of such a nature as to justify suit against [the defendant] on causes of

20  action arising from dealings entirely different from those activities." *Hockerson-Halberstadt, Inc. v.*

21  *Propet USA*, 62 Fed. Appx. 322, 337 (Fed. Cir. 2003) (quoting *International Shoe*, 326 U.S. at 318).

22  These contacts must be so extensive as to be tantamount to Tesseron being constructively present in

23  the state to such a degree that it would be fundamentally fair to require it to answer in a California

24  court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the

25  world. This is simply not the case. Again, Tesseron has no contact, contract, commitment, or

26  presence in California, aside from this action. (Gauthier Decl., ¶ 14) Tesseron therefore is not

27  subject to general personal jurisdiction in California.

28

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

1    In sum, there is simply no basis upon which EFI may assert that personal jurisdiction exists

2  over Tesseron in California and no basis to exercise personal jurisdiction that would comport with

3  "fair play and substantial justice." *Burger King*, 471 U.S. at 479.  Accordingly, dismissal of this case

4  is necessary and appropriate.

5    **B.    Alternatively, this Court Should Transfer This Action to the United States**

6        **District Court for the Northern District of Ohio**

7    EFI has not—and cannot—establish that Tesseron is subject to personal jurisdiction in this

8  forum.  This case should therefore be dismissed, or, at a minimum, it should be transferred to the

9  Northern District of Ohio,[4] where EFI can proceed to litigate the case without the jurisdictional

10  problems it faces in this Court and where the district court in Ohio may consolidate this action with

11  the related action already pending between EFI and Tesseron in that district,[5] which involves

12  substantially the same patents and issues.

13    But even if this Court concludes that it may exercise personal jurisdiction over Tesseron, it

14  should nonetheless transfer this action to the Northern District of Ohio in the interests of justice,

15  pursuant to 28 U.S.C. § 1404(a):

16        For the convenience of parties and witnesses, in the interest of justice, a
        district court may transfer any civil action to any other district or
17        division where it might have been brought.

18    As is well established, the Court may transfer an action under § 1404 if: (1) the transferee

19  court is one where the action "might have been brought;" and (2) the convenience of the parties and

---

21  [4] Pursuant to 28 U.S.C. § 1631, a district court that lacks personal jurisdiction over a party may,
notwithstanding, transfer the case to another district court in which the action could have been
22  brought originally – i.e., where personal jurisdiction and other requirements are met:

23        Whenever a civil action is filed in a [district] court … and that court finds that
        there is a want of jurisdiction, the court shall, if it is in the interest of justice,
        transfer such action … to any other such court in which the action or appeal
24        could have been brought at the time it was filed or noticed.

25  Here, EFI could have brought the present action against Tesseron in the United States District Court
for the Northern District of Ohio, and therefore the Court in its discretion may transfer the case to that
26  district as an alternative to dismissal of the case.

27  [5] *Tesseron, Ltd. v. Konica Minolta Business Solutions, U.S.A., Inc., et al.*, No. 1:07-cv-02947 (N.D.
Ohio).

28

10

1  witnesses and the interests of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414

2  (9th Cir. 1985).[6]

3       There is no dispute that this action "might have been brought" in Ohio, where Tesseron is

4  located, and where Tesseron has consented to jurisdiction and venue by asserting its patent rights in

5  the Tesseron Patents against other infringers in the

6       Northern District of Ohio.[7]  Moreover, the convenience of the parties and witnesses and the

7  interests of justice weigh in favor of transfer. Because "the purpose of section 1404(a) is to prevent

8  waste of time, energy and money and to protect litigants, witnesses and the public against

9  unnecessary inconvenience and expense," transfer of this action to the Northern District of Ohio is

10  warranted. *See Hoefer v. U.S. Dep't of Commerce*, No. C 00 0918 VRW, 2000 WL 890862, at *3

11  (N.D. Cal. June 28, 2000)[8] (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Several factors

12  are relevant, including: convenience of the parties; convenience of the witnesses; ease of access to the

13  evidence; plaintiff's choice of forum; familiarity of each forum with the applicable law; feasibility of

14  consolidation of other claims; any local interest in the controversy; and the relative court congestion

15  and time of trial in each forum. *Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 WL 1033472,

16  at *4 (N.D. Cal. April 4, 2007)[9] (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.

17  2000)).

18       The "'interest of justice' consideration is the most important factor a court must consider, and

19  may be decisive in a transfer motion even when all other factors point the other way." *Gerin*, 2007

20  WL 1033472, at *6 (citing *London and Hull Mar. Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*, No. C 96-

21  01512 CW, 1996 WL 479013, *3 (N.D. Cal. Aug. 14, 1996) and *Pratt v. Rowland*, 769 F. Supp.

22  1128, 1133 (N.D. Cal. 1991)).  "Interests of justice" considerations include whether transfer will

23

24  [6] In contrast to the jurisdictional question, as a procedural matter, review of a district court's decision regarding transfer of venue is governed by the regional circuit in which it sits. *Storage Tech. Corp. v.*

25  *Cisco Systems, Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) (applying law of Court of Appeals for the Seventh Circuit (citing *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000))).

26  [7] In addition to the lawsuit against EFI, Tesseron initiated a separate suit, filed on December 4, 2006 that is pending in the Northern District of Ohio against R.R. Donnelley & Sons Company, *Tesseron,*

27  *Ltd. v. R.R. Donnelley & Sons Company*, Case No. 1:06-cv-2909 (N.D. Ohio).

28  [8] A copy of *Hoefer* is attached as Exhibit D.

[9] A copy of *Gerin* is attached as Exhibit E.

11

1   affect judicial economy, limit the waste of time and money, and, of paramount importance, avoid

2   duplicative litigation. *Gerin*, 2007 WL 1033472, at *6 (citing *London and Hull*, 1996 WL 479013, at

3   *3).   Indeed, the Supreme Court has indicated that courts should give substantial weight to the

4   interests of justice factor by stating that "[t]o permit a situation in which two cases involving

5   precisely the same issues are pending in different District Courts leads to wastefulness of time,

6   energy and money that §1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*,

7   364 U.S. 19, 26 (1960), *quoted in Gerin*, 2007 WL 1033472, at *6. *See also Hoefer*, 2000 WL

8   890862, at *3; *UMAX Techs., Inc. v. Herold Mktg. Assoc., Inc.*, No. C 97-4027 SC ARB, 1998 WL

9   164964, at *1 (N.D. Cal. March 19, 1998).[10]  With related litigation already before the Northern

10  District of Ohio, this action is an unnecessary drain on party and judicial resources.  The parties and

11  the courts will engage in duplicative discovery, and even perhaps duplicative discovery disputes;

12  duplicative briefing, such as briefing regarding claim construction; and hearings before the two

13  separate courts.

14      Not only does transfer avoid duplicative litigation, it also avoids the possibility of inconsistent

15  verdicts. *See Hernandez v. Union Pacific R.R. Co.*, No. C 04-04899, 2005 WL 396614, at *3 (N.D.

16  Cal. Feb. 18, 2005).[11]

17      The related case pending before the Northern District of Ohio involves substantially the same

18  patents and issues as the present action and is, in fact, more comprehensive in scope than this action.

19  [12]  The suit in Ohio is for infringement of the Tesseron Patents brought by Tesseron against EFI and

20  EFI's customers Konica Minolta and Ricoh.  The present action before this Court is based on the

21  Tesseron patents and requests declaratory judgment that those patents are not infringed, are invalid,

22  and are unenforceable – common defenses that can and likely will be litigated between Tesseron and

23  EFI in the Northern District of Ohio action.  While the issues to be decided in the two forums are

24  substantially the same, the decisions could be inconsistent.  Even a seemingly innocuous

---

[10] A copy of *UMAX* is attached as Exhibit F.

[11] A copy of *Hernandez* is attached as Exhibit G.

[12] The Related Action was filed on September 27, 2007, over a month prior to the filing of the present action.  The Complaint was originally brought against only Konica Minolta and its related entities, downstream customers of the infringing EFI products.  (Compl. ¶ 8) After the filing of the present action, the Complaint was amended on December 6, 2007, to add EFI as a party.

1  inconsistency at the time of the ruling, such as a small variation in the construction of a claim term

2  during *Markman*, could result in completely divergent results in both the liability and damages phases

3  at trial. Further, in the event that discovery is permitted in one forum and not the other, additional

4  difficulties would arise. Every discovery dispute would seemingly provide the requesting parties two

5  bites at the apple. To avoid such numerous potential problems, transfer is warranted, if not

6  necessary.

7       Review of the other considerations for transfer does not change the conclusion that transfer is

8  necessary. With regard to convenience of the parties and witnesses, for example, it is not surprising

9  that Tesseron would be significantly inconvenienced and incur significant expense by having to

10  litigate (the same issues against the same party as in the related action) in a distant forum, while EFI

11  would prefer to litigate in its home forum. It is also not surprising that the witnesses and evidence in

12  this declaratory judgment action will be split between the two forums, among other locations. The

13  attorneys who participated in the procurement of the Tesseron Patents each reside in Ohio. Percipient

14  witnesses for Varis Corporation reside in Ohio. The percipient witnesses for Tesseron reside in Ohio.

15  The possible 30(b)(6) deponents for Tesseron are located in Ohio. Further, some of the key witnesses

16  and documents concerning EFI's infringement of the Tesseron Patents will not rest with EFI in

17  California, but rather in New Jersey with EFI's relevant customers. In fact, extensive discovery

18  including, *inter alia*, depositions, document production and review of computer source code, will

19  likely need to be taken from the relevant EFI customers listed in the Complaint at Paragraph 8, Ricoh

20  and Konica Minolta, each of which have principal places of business in New Jersey. New Jersey is

21  closer and more reasonably accessible from Ohio than California.

22       Further, according to EFI's website (www.efi.com) EFI is far better positioned to shoulder the

23  expense and inconvenience of litigating in Ohio than Tesseron in California. EFI purports to have 26

24  Worldwide Offices, including Foster City, Arizona, Chicago, Georgia, Michigan, Lebanon,

25  Minnesota, New Jersey, Pittsburgh, Vancouver, Merideth, Mexico, Brazil, Belgium, France,

26  Germany, Italy, Netherlands, Sweden, United Kingdom, Israel, India, Japan, Shanghai, Singapore

27  and Australia. Tesseron has 1 office in Ohio. EFI is a publicly traded company on NASDAQ (EFII).

28  According to EFI's last annual report posted on their website, EFI had annual revenues of

13

1  approximately $468 million.  Tesseron is a privately held company with a fraction of that revenue.

2  The disparity in relative burden between EFI and Tesseron is night and day.

3        Aside from the deference given to plaintiff's choice of forum, the other considerations

4  likewise do not favor one party over the other, as both forums are familiar with the applicable law,

5  the local interest is similar, etc.  *See Gerin*, at *4 (citing *Jones*, 211 F.3d at 498).  In short, transfer is

6  necessitated by the interests of justice – "the most important factor a court must consider" – and not

7  mitigated by other considerations.  *Gerin*, 2007 WL 1033472, at *6.  Thus, even if the Court finds

8  that it may exercise personal jurisdiction over Tesseron, it should nevertheless transfer this action to

9  the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a) for consolidation with the Related

10  Action there.

11  **V.    CONCLUSION**

12        For the foregoing reasons, Tesseron respectfully requests the Court to dismiss this action or,

13  in the alternative, to transfer the action to the United States District Court for the Northern District of

14  Ohio.

15

16

17
                                    KIRKPATRICK & LOCKHART PRESTON
18                                  GATES ELLIS LLP

19

20  Dated:  December 10, 2007        By: _____
                                         Ben Bedi
21                                       Jon Michaelson
                                         Attorneys for Defendant
22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF TESSERON, LTD'S MOTION TO DISMISS**
**Case No. CV07-5534 RS**

# EXHIBIT A

**KEVIN W. KIRSCH  (CSBN: 166184)**
**Taft, Stettinius & Hollister LLP**
**425 Walnut St., Suite 1800**
**Cincinnati, OH 45202**
**Telephone No.: (513) 381-2838**
**Facsimile No.: (513) 381-0205**
**Email: kirsch@taftlaw.com**

**Attorney for Defendant,**
**Tesseron, Ltd.**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELECTRONICS FOR IMAGING, INC., | ) | Case No. CV07-5534 RS |
| | ) | Judge _____ |
| Plaintiff, | ) | |
| | ) | **DECLARATION OF FORREST** |
| v. | ) | **GAUTHIER IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS OR** |
| TESSERON, LTD., | ) | **TRANSFER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |



I, Forrest Gauthier, state that I am competent to testify about the matters contained herein and do so of my own personal knowledge and belief.

1.      I am president and sole shareholder of Tesseron, Ltd. ("Tesseron"), an Ohio limited liability company having its principal place of business at 8792 Maineville Rd., Maineville, Ohio 45039.

2.      Previous to founding Tesseron on October 16, 2000,  I was employed by Varis Corporation ("Varis"), an Ohio corporation, from 1993 through 2000.

3.      At Varis, I was intimately involved in research regarding the high-speed printing industry.  This work (as well as my research since with Tesseron) ultimately led to inventions which simplify and improve efficiencies in high-speed and high-volume variable printing.  These inventions are disclosed in numerous patents, including, but not limited to, the United States patents that are the subject of the present action: U.S. Pat. Nos. 5,729,665; 5,937,153; 6,209,010 B1;  6,381,028 B1; 6,487,568 B1; 6,599,325 B2; 6,687,016 B2; and 6,771,387 B2 (collectively, the "Tesseron Patents").

4.      The Tesseron Patents are generally directed to advancements in the field of high-speed and high-volume variable printing, which involves the creation of numerous documents where portions of those documents are the same for each document, i.e., static, while other portions are different for each document, i.e., variable.  These inventions in part are intended to decrease processing time by reducing the need to repetitively redefine the same static information for each page to be printed.

5.      Varis owned the rights in the then-existing Tesseron Patents during my time with the company, and it sold hardware and software products that commercialized the then-

existing patents. The Varis products included, for example, a variable-output printer controller and "VariScript" software, proprietary software capable of producing variable outputs at high speeds.

6.      Varis licensed these variable-output printer controllers, and the accompanying VariScript software, to Wallace Computer Systems ("Wallace") and other companies in the mid-1990s. Together with the printer controllers and software, Varis provided technical support service by telephone and received monthly software use fees.

7.      On information and belief, Wallace later merged with Moore Corporation, Ltd., becoming Moore Wallace, Inc. and was thereafter acquired by R.R. Donnelley & Sons Company, though it apparently maintains the Moore Wallace name in practice, if not legally. Throughout the sales and mergers the Wallace, Moore, R.R. Donnelley & Sons Company entities maintained a number of their licenses for the printer controllers, software, and telephone technical support.

8.      Varis suffered financial difficulty in the late 1990s, wherein Tesseron purchased the intellectual property of Varis and the licensing/technical support contracts with Wallace at public auction in 2000.

9.      Tesseron's present revenue results from the licensing of its intellectual property, which includes the patents formerly owned by Varis and additional intellectual property developed by Tesseron since (i.e., the Tesseron Patents), as well as the revenue from the software use/technical support contract with Moore Wallace.

10.     Tesseron does not and has never manufactured any products, including the variable-output printer controller and VariScript software once sold by Varis. Tesseron has never sold any products or services, whether in California or otherwise.

11.     The licensees of Tesseron's intellectual property are: Xerox Corporation ("Xerox"), a corporation organized under the laws of the State of New York with its primary office in Connecticut; vLogix, Inc., having a principal place of business in the State of Ohio; GMC Software AG, having a principal place of business in Switzerland; GMC Software Technology, Inc., having a principal place of business in Massachusetts; and, Canon, Inc. ("Canon"), organized and existing under the laws of Japan.

12.     In addition, Moore Wallace, the entity now owned by R.R. Donnelley that assumed the rights to the software use/technical support contracts is principally based in Illinois, and has represented that all variable-output printer controllers that are subject to the software use/technical support contract with Moore Wallace are located in Osage, Kansas and Streetsboro, Ohio.

13.     Tesseron has never licensed to a company with a principal place of business in California, negotiated a contract in California, and/or held meetings in California. Tesseron does not receive royalties or revenue from any licenses, product sales, or services in the State and does not otherwise transact business in California.

14.     Further, Tesseron does not maintain any physical presence, facilities, or employees in California, and is not registered or qualified to do any business in the state. Tesseron has no contact, contract, or commitment in California, aside from this action.

15.     I declare under penalty of perjury of the law of the United States of America that the foregoing is true and correct.

Executed on December 6, 2007.

Forrest Gauthier

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TESSERON, LTD.,<br>an Ohio Limited Liability Company<br>8792 Mainesville Road<br>Mainesville, Ohio 45039,<br><br>      Plaintiff,<br><br>    vs.<br><br>KONICA MINOLTA BUSINESS<br>SOLUTIONS U.S.A., INC.,<br>c/o CSC-Lawyers Incorporating Service<br>Statutory Agent<br>50 W. Broad St., Suite 1800<br>Columbus, Ohio 43215<br><br>and<br><br>KONICA MINOLTA BUSINESS<br>TECHNOLOGIES, INC.,<br>1-6-1 Marunouchi<br>Chiyoda-ku Tokyo 100-0005<br>Japan<br><br>and<br><br>KONICA MINOLTA HOLDINGS, INC.,<br>Marunouchi Center Building<br>1-6-1 Marunouchi<br>Chiyoda-ku, Tokyo 100-0005<br>Japan<br><br>and<br><br>ELECTRONICS FOR IMAGING, INC.,<br>303 Velocity Way<br>Foster City, California 94404.<br><br>and | CASE NO. 1:07CV2947<br><br>JUDGE KATHLEEN M. O'MALLEY<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>__FIRST AMENDED COMPLAINT__<br>__FOR PATENT INFRINGEMENT__<br><br>(DEMAND FOR JURY TRIAL) |

{K0388857.1}

EXHIBIT

**B**

| | |
|---|---|
| **RICOH AMERICAS CORP.,** | ) |
| c/o CT Corporation System | ) |
| **Statutory Agent** | ) |
| **1300 E. 9th St.** | ) |
| **Cleveland, Ohio 44114** | ) |
| | ) |
| **and** | ) |
| | ) |
| **RICOH COMPANY, LTD.,** | ) |
| **Ricoh Building** | ) |
| **8-13-1 Ginza** | ) |
| **Chuo-ku, Tokyo 104-8222** | ) |
| **Japan** | ) |
| | ) |
| **Defendants.** | ) |

Plaintiff Tesseron, Ltd. ("Tesseron"), for its claims against Defendants Electronics for

Imaging, Inc. ("EFI"), Ricoh Americas Corporation ("Ricoh Americas"), Ricoh Company, Ltd.

('Ricoh Company"), Konica Minolta Business Solutions U.S.A., Inc. ("Konica Minolta U.S.A."),

Konica Minolta Business Technologies, Inc. ("Konica Minolta Business Technologies"), and

Konica Minolta Holdings, Inc. ("Konica Minolta Holdings"), alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for patent infringement arising under the laws of the United

States, 35 U.S.C. Section 1, et seq. Jurisdiction and venue in this district are based upon the

provisions of 28 U.S.C. §§ 1331, 1338 (a), 35 U.S.C. § 281 and 28 U.S.C. §§ 1391 and 1400(b).

## PARTIES

A.      Tesseron.

2.      Tesseron is an Ohio limited liability company, with its place of business in

Mainesville, Ohio.

**B.    EFI.**

3.    Upon information and belief, EFI is a Delaware corporation with its principal place of business at 303 Velocity Way, Foster City, California 94404.

4.    Upon current information and belief, EFI makes, uses, sells, offers to sell and/or imports for sale into the United States its Fiery print controllers, including, but not limited to, the EFI/Fiery X3e+,  EFI/Fiery ES300, EFI/CN3102e (Fiery X3e+), EFI/IC-402 (Fiery X3e+), EFI/IC-407, EFI/IC-402 (Fiery X3e+), EFI/IC-406, EFI/IC-405 (Fiery X3e), EFI/IC-408 (Fiery X3e TY2), EFI/System 8e, IC-408 (Fiery), IC-409 (Fiery), EFI/Fiery X3e+, EFI/EB-105e, EFI/EB-105EX, EFI/EB-135, Fiery E-7000, Fiery E-8000, Fiery E-310, Fiery E-300, Fiery E-750, Fiery E-850, Fiery E-650, Fiery E-800, Fiery E-700, Fiery E-710, Fiery E-810, Fiery E-820, and EFI/Fiery color digital print.

5.    Upon information and belief, in addition to selling its own products, EFI sells variable data printing components to other original equipment manufacturers ("OEM's"), including, but not limited to, Konica Minolta U.S.A., Konica Minolta Business Technologies, Konica Minolta Holdings, Ricoh Americas, and Ricoh Company, which incorporate EFI's components into their digital printing equipment.

6.    Upon information and belief, EFI has done and continues to do business in this Judicial District.

**C.    The Konica Defendants.**

7.    Upon information and belief, Konica Minolta U.S.A. is a New York corporation with its principal place of business at 101 Williams Drive, Ramsey, New Jersey 07446.

Order Summary                                                                                          Page 1 of 1

**OfficeMax**

Save Order  |  Delete Order  |  Customer Service  |  Logout
🗈 Help

| | |
|---|---|
| **Attention** | Melissa McCreight |
| **Shipping Address** | 200 Public Square #3500<br>Cleveland, OH 44114 |
| **PO #** | 74258386 |
| **Future Delivery Date** | December 10, 2007 |
| **Account** | 0430325 - ALA Cleveland Chapter |
| **Ship To Code** | TAFT14 - Taft, Stettinius & Hollister |
| **Payment Type** | Direct Bill |

| | |
|---|---|
| **Subtotal** | $249.73 |
| **Estimated Tax** | $16.86 |
| **Total\*\*** | $266.59 |

| Qty | UOM | Product Code | Description | Delivery\* | | List Price | Your Price | Subtotal |
|---|---|---|---|---|---|---|---|---|
| 10 | RM | P1MP-2201-CY | Boise - FIREWORX™ Colored Multi-Use Paper - 20 Lb. - 8-1/2" x 11", Crackling Canary™, 20 Lb., 500 Sh eets/Ream<br>PPR,PASTEL20#,11" CY | 10 Next Day | 🗎 | $13.54 | $3.74 | $37.40 |
| | | | **Item Comments:**          1. DELIVER TO MIKE PERROTTI | | | | | |
| 1 | PK | N298028 | Avery - Marks-A-Lot® Permanent Markers - Large - Black, Chisel, Permanent, 12/Pack<br>MARKS-A-LOT MARKERS BLK 12PK | 1 Next Day | 🗎 | $17.28 | $5.41 | $5.41 |
| 24 | BX | H4OM97008 | OfficeMax - Black Binder Clips - Medium, 1-1/4" W, 5/8", Black, 12/Box<br>CLIPS,BINDER,BK,MD 12/BX | 24 Next Day | 🗎 | $2.19 | $.30 | $7.20 |
| 8 | BX | H4OM97414 | OfficeMax - Black Binder Clips - Large, 2" W, 1-1/16", Black, 12/Box<br>CLIPS,BINDER,BK,LG 12/BX | 8 Next Day | 🗎 | $5.79 | $.86 | $6.88 |
| 4 | PK | A558092 | Tabbies - Color-Coded Legal Exhibit Labels - White, 252/Pack, 1-5/8" x 1", Exhibit<br>LBL,EXHIBIT,WE,252/PK | 4 In 1-3 Days | | $5.25 | $5.04 | $20.16 |
| 3 | BX | A55163 | Avery - White Laser Labels - White, 2" x 4", 10 Labels/Sheet, 1000 Labels/Box<br>LABEL,ADD,LASER,2X4,1000 | 3 Next Day | 🗎 | $43.27 | $19.79 | $59.37 |
| 3 | BX | A55164 | Avery - White Laser Labels - White, 3-1/3" x 4", 6 Labels/Sheet, 600 Labels/Box<br>LABEL,ADD,LASR,3.3X4,600 | 3 Next Day | 🗎 | $43.27 | $23.56 | $70.68 |
| 1 | BX | A55663 | Avery - Easy Peel Clear Permanent Laser Labels - Clear, 2" x 4", 10 Labels/Sheet, 500 Labels/Box, Sh ipping<br>LABEL,LSR,ADD,2X4-1/8,CR | 1 Next Day | 🗎 | $53.03 | $25.56 | $25.56 |
| | | | **Item Comments:**          1. DELIVER TO SUZANNE | | | | | |
| 3 | PK | A55267 | Avery - White Laser Labels - White, 1/2" x 1-3/4" Return Address, 80 Labels/Sheet, 2000 Labels/Pack<br>LABEL,ADD,LASER,1/2X1.75 | 3 Next Day | 🗎 | $12.62 | $5.69 | $17.07 |

**\* Stock is not allocated until order is placed. Days indicated above are business days and may vary depending upon delivery location.**

**\*\* Refer to final invoice for order total.**

**THIS IS NOT AN INVOICE**

8.      Upon information and belief, Konica Minolta Business Technologies is a company existing under the laws of Japan with its principal place of business at Marunouchi Center Building, 1-6-1 Marunouchi, Chiyoda-ku, Tokyo 100-0005, Japan.

9.      Upon information and belief, Konica Minolta Holdings is a company existing under the laws of Japan with its principal place of business at Marunouchi Center Building, 1-6-1 Marunouchi, Chiyoda-ku, Tokyo 100-0005, Japan.

10.      Upon information and belief, Konica Minolta U.S.A. is a wholly-owned subsidiary of Konica Minolta Holdings.

11.      Upon information and belief, Konica Minolta Business Technologies is a wholly-owned subsidiary of Konica Minolta Holdings.

12.      Upon current information and belief, Konica Minolta U.S.A., Konica Minolta Business Technologies, and Konica Minolta Holdings (collectively the "Konica Defendants") make, use, sell, offer to sell and/or import for sale into the United States variable-enabled printing systems, including, but not limited to, the Bizhub C300, Bizhub C351, Bizhub C352, Bizhub C450, Bizhub C500, Bizhub C550, Bizhub PRO C500, Bizhub PRO C5500, Bizhub PRO C6500, CF1501, CF2001, CF3102, CF3120, CM3120, cm4520, CF8050, CF9001, CPP500, CS220, KM-C2520, and Business PRO 500c.

13.      Upon information and belief, the Konica Defendants have done and continue to do business in this Judicial District.

**D.      The Ricoh Defendants.**

14.      Upon information and belief, Ricoh Americas is a Delaware corporation with its principal place of business at 5 Dedrick Place, West Caldwell, New Jersey 07006.

15.    Upon information and belief, Ricoh Company is a company existing under the laws of Japan with its principal place of business at Ricoh Building, 8-13-1 Ginza, Chuo-ku, Tokyo 104-8222, Japan.

16.    Upon information and belief, Ricoh Americas is a wholly-owned subsidiary of Ricoh Company.

17.    Upon current information and belief, Ricoh Americas and Ricoh Company (collectively the "Ricoh Defendants") make, use, sell, offer to sell and/or import for sale into the United States variable-enabled printing systems, including, but not limited to, the Aficio 1050, Aficio 1085, Aficio 1105, Aficio 3260C, Aficio 5560, Aficio 6513, Aficio 3506, Aficio 4506, Aficio 3131, Aficio 3121, Aficio 2090, Aficio 2105, Aficio 8513, Ricoh Aficio MP9000, Ricoh Aficio MP1100, Ricoh Aficio MP1350, MP C2500, MP C3000, MP C3500, MP C4500, Aficio 6513, Aficio 3506, Aficio 3006, Aficio 3121, Aficio 3131, Aficio 3506, Aficio 4006, Aficio 4106, Aficio 4506, Aficio 6010, Aficio 6110, Aficio 6510, and Aficio Color 5560.

18.    Upon information and belief, the Ricoh Defendants have done and continue to do business in this Judicial District.

### FIRST CLAIM FOR RELIEF FOR INFRINGEMENT
### OF UNITED STATES PATENT NO. 6,381,028 B1

19.    Tesseron incorporates by reference Paragraphs 1 through 18 of the Amended Complaint as if fully rewritten herein.

20.    On April 30, 2002, United States Patent No. 6,381,028 B1 ("the '028 patent") entitled "Method of Utilizing Variable Data Fields with a Page Description Language" was duly and legally issued to Tesseron.

21.   On May 24, 2001, the '028 patent (then pending application U.S. Ser. No. 09/299,502) was assigned from Varis Corporation to Tesseron. Said assignment was duly recorded in the U.S. Patent and Trademark Office on July 2, 2001, at reel/frame 011944/0233.

A.   **EFI.**

22.   Upon current information and belief, EFI has infringed and continues to infringe, has actively induced and currently is actively inducing others to infringe, and/or has contributorily infringed and currently is contributorily infringing at least one claim of the '028 patent in the United States by making, using, selling, offering to sell and/or importing for sale into the United States products that embody the inventions described and claimed in the '028 patent, including, but not limited to, the following print controllers that are capable of processing PPML and/or VPS for variable data printing: EFI/Fiery X3e+, EFI/Fiery ES300, EFI/CN3102e (Fiery X3e+), EFI/IC-402 (Fiery X3e+), EFI/IC-407, EFI/IC-402 (Fiery X3e+), EFI/IC-406, EFI/IC-405 (Fiery X3e), EFI/IC-408 (Fiery X3e TY2), EFI/System 8e, IC-408 (Fiery), IC-409 (Fiery), EFI/Fiery X3e+, EFI/EB-105e, EFI/EB-105EX, EFI/EB-135, Fiery E-7000, Fiery E-8000, Fiery E-310, Fiery E-300, Fiery E-750, Fiery E-850, Fiery E-650, Fiery E-800, Fiery E-700, Fiery E-710, Fiery E-810, Fiery E-820, and EFI/Fiery color digital print.

23.   EFI was first placed on notice by Tesseron of the '028 patent by a letter dated September 11, 2002, and addressed to Mr. Guy Gecht.

24.   Upon information and belief, EFI's infringement of claim(s) of the '028 patent has been willful, deliberate and in conscious disregard of Tesseron's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.

25.    As a result of the actions of EFI, Tesseron has suffered and will continue to suffer substantial injury, including irreparable harm and damages, and loss of sales and profits that Tesseron would have made but for the infringement by EFI, unless EFI is preliminarily and/or permanently enjoined by this Court.

**B.    The Konica Defendants.**

26.    Upon current information and belief, the Konica Defendants have infringed and continue to infringe, have actively induced and currently are actively inducing others to infringe, and/or have contributorily infringed and currently are contributorily infringing at least one claim of the '028 patent in the United States by making, using, selling, offering to sell and/or importing for sale into the United States products that embody the inventions described and claimed in the '028 patent, including, but not limited to, the following variable-enabled printing systems:

a.    **Konica Minolta Models** (Bizhub C300, Bizhub C351, Bizhub C352, Bizhub C450, Bizhub C500, Bizhub C550, Bizhub PRO C500, Bizhub PRO C5500, Bizhub PRO C6500, CF1501, CF2001, CF3102, CM3120, cm4520, CF8050, CF9001, CPP500, CS220, KM-C2520 and BusinessPRO 500c) **which process PPML for variable data printing jobs using EFI Digital Front Ends** (EFI/Fiery X3e, EFI/Fiery ES300, EFI/CN3102e (Fiery X3e+), EFI/IC-402 (Fiery X3e+), EFI/IC-407, EFI/IC-402 (Fiery X3e+), EFI/IC-406, EFI/IC-405 (Fiery X3e), EFI/IC-408 (Fiery X3e TY2), EFI/System 8e), including:

i.    Bizhub C300 with EFI/IC-407 or EFI/IC-406;

ii.    Bizhub C351 with EFI/IC-402 (Fiery X3e+);

iii.    Bizhub C352 with EFI/IC-406;

iv.    Bizhub C450 with EFI/IC-402 (Fiery X3e+);

v.    Bizhub C550 with IC-409 (Fiery);

vi.   Bizhub PRO C500 with EFI/IC-405 (Fiery X3e);

vii.   Bizhub PRO C5500 with IC-408 (Fiery);

viii.   Bizhub PRO C6500 with EFI/IC-408 (Fiery X3e TY2);

ix.   BusinessPRO 500c with EFI/Fiery X3e+;

x.   CM3120 with EFI/IC-405 (Fiery X3e);

xi.   cm4520 with EFI/Fiery X3e+;

xii.   CPP 500 with EFI/Fiery ES300 or EFI/System 8e;

xiii.   CS220 with EFI/CN3102e (Fiery X3e+); and

xiv.   KM-C2520 with EFI/IC-402 (Fiery X3e+).

b.   **Konica Minolta Models (BusinessPRO 500c) which process VPS for variable data printing jobs using EFI Digital Front Ends (EFI/Fiery X3e+).**

c.   **Konica Minolta models (Bizhub PRO C500, Bizhub PRO C6500, CPP500, and BusinessPRO 500c) which process VPS for variable data printing jobs using Kodak (Creo) Digital Front Ends (Creo/IC-301, Creo/IC-304), including:**

i.   Bizhub PRO C500 with Creo/IC-301;

ii.   Bizhub PRO C6500 with Creo/IC-304; and

iii.   CPP500 with Creo/PowerPro 500.

27.   The Konica Defendants were first placed on notice by Tesseron of the '028 patent by a letter dated September 11, 2002, and addressed to Mr. Yasua Matsumoto.

28.   Upon information and belief, the Konica Defendants' infringement of claim(s) of the '028 patent has been willful, deliberate and in conscious disregard of Tesseron's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.

29.     As a result of the actions of the Konica Defendants, Tesseron has suffered and will continue to suffer substantial injury, including irreparable harm and damages, and loss of sales and profits that Tesseron would have made but for the infringement by the Konica Defendants, unless the Konica Defendants are preliminarily and/or permanently enjoined by this Court.

**C.     The Ricoh Defendants.**

30.     Upon current information and belief, the Ricoh Defendants have infringed and continue to infringe, have actively induced and currently are actively inducing others to infringe, and/or have contributorily infringed and currently are contributorily infringing at least one claim of the '028 patent in the United States by making, using, selling, offering to sell and/or importing for sale into the United States products that embody the inventions described and claimed in the '028 patent, including but not limited to the following variable-enabled printing systems:

     a.     **Ricoh Models** (Aficio 1050, Aficio 1085, Aficio 1105, Aficio 3260C, Aficio 5560, Aficio 6513, Aficio 3506, Aficio 4506, Aficio 3131, Aficio 3121, Aficio 2090, Aficio 2105, Ricoh Aficio MP9000, Ricoh Aficio MP1100, Ricoh Aficio MP1350, MP C2500, MP C3000, MP C3500, MP C4500, Aficio 6513, Aficio 3506, Aficio 3006, Aficio 3121, Aficio 3131, Aficio 3506, Aficio 4006, Aficio 4106, Aficio 4506, Aficio 6010, Aficio 6110, Aficio 6510) **which process PPML for variable data printing jobs using EFI Digital Front Ends** (EFI/EB-105e, EFI/EB-105EX, EFI/EB-135, Fiery E-7000, Fiery E-8000, Fiery E-310, Fiery E-300, Fiery E-750, Fiery E-850, Fiery E-650, Fiery E-800, Fiery E-700, Fiery E-710, Fiery E-810, Fiery E-820 and EFI/Fiery color digital print), including:

        i.     Aficio 1085 with EFI/EB-105e;

        ii.     Aficio 2090 with EFI/EB-105EX;

        iii.     Aficio MP9000 with EFI/EB-135;

        iv.     Aficio 1050 with EFI/EB-105e;

        v.     Aficio 1105 with EFI/EB-105e;

vi.    Aficio 2105 with EFI/EB-105EX;

vii.    Aficio MP1100 with EFI/EB-135;

viii.    Aficio MP1350 with EFI/EB-135;

ix.    Aficio 3260C with Fiery E-7000 or Fiery E-8000;

x.    Aficio Color 5560 with Fiery E-7000 or Fiery E-8000;

xi.    Aficio 3506 with Fiery E-310;

xii.    Aficio 3006 with Fiery E-300;

xiii.    Aficio 3121 with Fiery E-750;

xiv.    Aficio 3131 with Fiery E-750, E-850;

xv.    Aficio 3506 with Fiery E-310;

xvi.    Aficio 4006 with Fiery E-300;

xvii.    Aficio 4106 with Fiery E-300;

xviii.    Aficio 4506 with Fiery E-310;

xix.    Aficio 6010 with Fiery E-650, E-800;

xx.    Aficio 6110 with Fiery E-650, E-800;

xxi.    Aficio 6510 with Fiery E-700;

xxii.    Aficio 6513 with Fiery E-710, E-810, E-820;

xxiii.    MP C2500 with EFI/Fiery color digital print;

xxiv.    MP C3000 with EFI/Fiery color digital print;

xxv.    MP C3500 with EFI/Fiery color digital print; and

xxvi.    MP C4500 with EFI/Fiery color digital print.

31.    The Ricoh Defendants were first placed on notice by Tesseron of the '028 patent by a letter dated September 11, 2002, and addressed to Mr. Masamitsu Sakuri.

32.    Upon information and belief, the Ricoh Defendants' infringement of claim(s) of the '028 patent has been willful, deliberate and in conscious disregard of Tesseron's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.

33.    As a result of the actions of the Ricoh Defendants, Tesseron has suffered and will continue to suffer substantial injury, including irreparable harm and damages, and loss of sales and profits that Tesseron would have made but for the infringement by the Ricoh Defendants, unless the Ricoh Defendants are preliminarily and/or permanently enjoined by this Court.

## SECOND CLAIM FOR RELIEF FOR INFRINGEMENT OF UNITED STATES PATENT NO. 6,771,387 B2

34.    Tesseron incorporates by reference Paragraphs 1 through 33 of the Amended Complaint as if fully rewritten herein.

35.    On August 3, 2004, United States Patent No. 6,771,387 B2 ("the '387 patent") entitled "Method of Utilizing Variable Data Fields with a Page Description Language" was duly and legally issued to Tesseron.

36.    On May 24, 2001, the '387 patent (as a yet un-filed continuation of the '153 and '028 patents) was assigned from Varis Corporation to Tesseron.  Said assignment was duly recorded in the U.S. Patent and Trademark Office on July 2, 2001, at reel/frame 011944/0233.

37.    The U.S. patent application for the '387 patent was published by the U.S. Patent and Trademark Office on September 5, 2002, as US 2002/122205 A1 ("the '205 published application").

A.    **EFI.**

38.    Upon current information and belief, EFI has infringed and continues to infringe, has actively induced and currently is actively inducing others to infringe, and/or has contributorily infringed and currently is contributorily infringing at least one claim of the '387 patent in the United States by making, using, selling, offering to sell and/or importing for sale into the United States products that embody the inventions described and claimed in the '387 patent, including but not limited to the following printer controllers that are capable of processing PPML and/or VPS for variable data printing: EFI/Fiery X3e+, EFI/Fiery ES300, EFI/CN3102e (Fiery X3e+), EFI/IC-402 (Fiery X3e+), EFI/IC-407, EFI/IC-402 (Fiery X3e+), EFI/IC-406, EFI/IC-405 (Fiery X3e), EFI/IC-408 (Fiery X3e TY2), EFI/System 8e, IC-408 (Fiery), IC-409 (Fiery), EFI/Fiery X3e+, EFI/EB-105e, EFI/EB-105EX, EFI/EB-135, Fiery E-7000, Fiery E-8000, Fiery E-310, Fiery E-300, Fiery E-750, Fiery E-850, Fiery E-650, Fiery E-800, Fiery E-700, Fiery E-710, Fiery E-810, Fiery E-820, and EFI/Fiery color digital print.

39.    EFI was first placed on notice by Tesseron of the '205 published application by a letter dated September 11, 2002, and addressed to Mr. Guy Gecht.

40.    EFI was first placed on notice by Tesseron of the '387 patent by a letter dated February 8, 2005, and addressed to Mr. Guy Gecht.

41.    Upon information and belief, EFI's infringement of claim(s) of the '387 patent has been willful, deliberate and in conscious disregard of Tesseron's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.

42.    As a result of the actions of EFI, Tesseron has suffered and will continue to suffer substantial injury, including irreparable harm and damages, and loss of sales and profits that

Tesseron would have made but for the infringement by EFI, unless EFI is preliminarily and/or permanently enjoined by this Court.

## B.    The Konica Defendants.

43.    Upon current information and belief, the Konica Defendants have infringed and continue to infringe, have actively induced and currently are actively inducing others to infringe, and/or have contributorily infringed and currently are contributorily infringing at least one claim of the '387 patent in the United States by making, using, selling, offering to sell and/or importing for sale into the United States products that embody the inventions described and claimed in the '387 patent, including but not limited to the following variable-enabled printing systems:

a.    **Konica Minolta Models** (Bizhub C300, Bizhub C351, Bizhub C352, Bizhub C450, Bizhub C500, Bizhub C550, Bizhub PRO C500, Bizhub PRO C5500, Bizhub PRO C6500, CF1501, CF2001, CF3102, CM3120, cm4520, CF8050, CF9001, CPP500, CS220, KM-C2520 and BusinessPRO 500c) **which process PPML for variable data printing jobs using EFI Digital Front Ends** (EFI/Fiery X3e+, Konica Minolta/CN 3101e, EFI/Fiery ES300, EFI/CN3102e (Fiery X3e+), EFI/IC-402 (Fiery X3e+), EFI/IC-407, EFI/IC-402 (Fiery X3e+), EFI/IC-406, EFI/IC-405 (Fiery X3e), EFI/IC-408 (Fiery X3e TY2), EFI/System 8e), including:

   i.    Bizhub C300 with EFI/IC-407 or EFI/IC-406;

   ii.    Bizhub C351 with EFI/IC-402 (Fiery X3e+);

   iii.    Bizhub C352 with EFI/IC-406;

   iv.    Bizhub C450 with EFI/IC-402 (Fiery X3e+);

   v.    Bizhub C550 with IC-409 (Fiery);

   vi.    Bizhub PRO C500 with EFI/IC-405 (Fiery X3e);

   vii.    Bizhub PRO C5500 with IC-408 (Fiery);

   viii.    Bizhub PRO C6500 with EFI/IC-408 (Fiery X3e TY2);

    ix.    BusinessPRO 500c with EFI/Fiery X3e+;

    x.    CM3120 with EFI/IC-405 (Fiery X3e);

    xi.    cm4520 with EFI/Fiery X3e+;

    xii.    CPP 500 with EFI/Fiery ES300 or EFI/System 8e;

    xiii.    CS220 with EFI/CN3102e (Fiery X3e+); and

    xiv.    KM-C2520 with EFI/IC-402 (Fiery X3e+).

    b.    **Konica Minolta Models (BusinessPRO 500c) which process VPS for variable data printing jobs using EFI Digital Front Ends (EFI/Fiery X3e+).**

    c.    **Konica Minolta models (Bizhub PRO C500, Bizhub PRO C6500, CPP500, and BusinessPRO 500c) which process VPS for variable data printing jobs using Kodak (Creo) Digital Front Ends (Creo/IC-301, Creo/IC-304), including:**

    i.    Bizhub PRO C500 with Creo/IC-301;

    ii.    Bizhub PRO C6500 with Creo/IC-304; and

    iii.    CPP500 with Creo/PowerPro 500.

44.    The Konica Defendants were first placed on notice by Tesseron of the '205 published application by a letter dated September 11, 2002, and addressed to Mr. Yasua Matsumoto.

45.    The Konica Defendants were first placed on notice by Tesseron of the '387 patent by a letter dated April 18, 2005, and addressed to Mr. Joseph M. Bonassar.

46.    Upon information and belief, the Konica Defendants' infringement of claim(s) of the '387 patent has been willful, deliberate and in conscious disregard of Tesseron's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.

47.    As a result of the actions of the Konica Defendants, Tesseron has suffered and will continue to suffer substantial injury, including irreparable harm and damages, and loss of sales and profits that Tesseron would have made but for the infringement by the Konica Defendants, unless the Konica Defendants are preliminarily and/or permanently enjoined by this Court.

C.    **The Ricoh Defendants.**

48.    Upon current information and belief, the Ricoh Defendants have infringed and continue to infringe, have actively induced and currently are actively inducing others to infringe, and/or have contributorily infringed and currently are contributorily infringing at least one claim of the '387 patent in the United States by making, using, selling, offering to sell and/or importing for sale into the United States products that embody the inventions described and claimed in the '387 patent, including but not limited to the following variable-enabled printing systems:

a.    **Ricoh Models** (Aficio 1050, Aficio 1085, Aficio 1105, Aficio 3260C, Aficio 5560, Aficio 6513, Aficio 3506, Aficio 4506, Aficio 3131, Aficio 3121, Aficio 2090, Aficio 2105, Ricoh Aficio MP9000, Ricoh Aficio MP1100, Ricoh Aficio MP1350, MP C2500, MP C3000, MP C3500, MP C4500, Aficio 6513, Aficio 3506, Aficio 3006, Aficio 3121, Aficio 3131, Aficio 3506, Aficio 4006, Aficio 4106, Aficio 4506, Aficio 6010, Aficio 6110, Aficio 6510) **which process PPML for variable data printing jobs using EFI Digital Front Ends** (EFI/EB-105e, EFI/EB-105EX, EFI/EB-135, Fiery E-7000, Fiery E-8000, Fiery E-310, Fiery E-300, Fiery E-750, Fiery E-850, Fiery E-650, Fiery E-800, Fiery E-700, Fiery E-710, Fiery E-810, Fiery E-820 and EFI/Fiery color digital print), including:

i.    Aficio 1085 with EFI/EB-105e;

ii.    Aficio 2090 with EFI/EB-105EX;

iii.    Aficio MP9000 with EFI/EB-135;

iv.    Aficio 1050 with EFI/EB-105e;

v.    Aficio 1105 with EFI/EB-105e;

vi.     Aficio 2105 with EFI/EB-105EX;

vii.    Aficio MP1100 with EFI/EB-135;

viii.   Aficio MP1350 with EFI/EB-135;

ix.     Aficio 3260C with Fiery E-7000 or Fiery E-8000;

x.      Aficio Color 5560 with Fiery E-7000 or Fiery E-8000;

xi.     Aficio 3506 with Fiery E-310;

xii.    Aficio 3006 with Fiery E-300;

xiii.   Aficio 3121 with Fiery E-750;

xiv.    Aficio 3131 with Fiery E-750, E-850;

xv.     Aficio 3506 with Fiery E-310;

xvi.    Aficio 4006 with Fiery E-300;

xvii.   Aficio 4106 with Fiery E-300;

xviii.  Aficio 4506 with Fiery E-310;

xix.    Aficio 6010 with Fiery E-650, E-800;

xx.     Aficio 6110 with Fiery E-650, E-800;

xxi.    Aficio 6510 with Fiery E-700;

xxii.   Aficio 6513 with Fiery E-710, E-810, E-820;

xxiii.  MP C2500 with EFI/Fiery color digital print;

xxiv.   MP C3000 with EFI/Fiery color digital print;

xxv.    MP C3500 with EFI/Fiery color digital print; and

xxvi.   MP C4500 with EFI/Fiery color digital print.

49.    The Ricoh Defendants were first placed on notice by Tesseron of the '205 published application by a letter dated September 11, 2002, and addressed to Mr. Masamitsu Sakuri.

50.    The Ricoh Defendants were first placed on notice by Tesseron of the '387 patent by a letter dated April 28, 2005, and addressed to Mr. Kenji Takiguchi.

51.    Upon information and belief, the Ricoh Defendants' infringement of claim(s) of the '387 patent has been willful, deliberate and in conscious disregard of Tesseron's rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.

52.    As a result of the actions of the Ricoh Defendants, Tesseron has suffered and will continue to suffer substantial injury, including irreparable harm and damages, and loss of sales and profits that Tesseron would have made but for the infringement by the Ricoh Defendants, unless the Ricoh Defendants are preliminarily and/or permanently enjoined by this Court.

## DEMAND FOR JUDGMENT

WHEREFORE, Tesseron prays that the Court enter judgment in its favor as follows:

A.    As to EFI:

    1.    That EFI be declared and adjudged to have infringed, actively induced others to infringe, and/or contributorily infringed one or more claims of U.S. Patent Nos. 6,381,028 and 6,771,387;

    2.    That EFI, its agents, sales representatives, distributors, servants and employees, attorneys, affiliates, subsidiaries, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily and permanently, from infringing, actively inducing others to infringe, and/or contributorily infringing claim(s) of U.S. Patent Nos. 6,381,028 and 6,771,387;

    3.    An accounting be had for the profits and other damages arising out of EFI's infringement of U.S. Patent Nos. 6,381,028 and 6,771,387, and that the damages be trebled pursuant to 35 U.S.C. § 284 for the willful acts of infringement complained of herein and awarded to Tesseron, together with prejudgment and post-judgment interest;

    4.    That this case be decreed an "exceptional case" within the meaning of 25 U.S.C. § 285 and reasonable attorneys' fees be awarded to Tesseron; and

    5.    That Tesseron be awarded such other costs and further relief as the Court deems just and proper.

B.    As to the Konica Defendants:

    1.    That the Konica Defendants be declared and adjudged to have infringed, actively induced others to infringe, and/or contributorily infringed one or more claims of U.S. Patent Nos. 6,381,028 and 6,771,387;

    2.    That the Konica Defendants, their agents, sales representatives, distributors, servants and employees, attorneys, affiliates, subsidiaries, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily and permanently, from infringing, actively inducing others to infringe, and/or contributorily infringing claim(s) of U.S. Patent Nos. 6,381,028 and 6,771,387;

    3.    An accounting be had for the profits and other damages arising out of the Konica Defendants' infringement of U.S. Patent Nos. 6,381,028 and 6,771,387, and that the damages be trebled pursuant to 35 U.S.C. § 284 for

the willful acts of infringement complained of herein and awarded to Tesseron, together with prejudgment and post-judgment interest;

4. That this case be decreed an "exceptional case" within the meaning of 25 U.S.C. § 285 and reasonable attorneys' fees be awarded to Tesseron; and

5. That Tesseron be awarded such other costs and further relief as the Court deems just and proper.

C. As to the Ricoh Defendants:

1. That the Ricoh Defendants be declared and adjudged to have infringed, actively induced others to infringe, and/or contributorily infringed one or more claims of U.S. Patent Nos. 6,381,028 and 6,771,387;

2. That the Ricoh Defendants, their agents, sales representatives, distributors, servants and employees, attorneys, affiliates, subsidiaries, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily and permanently, from infringing, actively inducing others to infringe, and/or contributorily infringing claim(s) of U.S. Patent Nos. 6,381,028 and 6,771,387;

3. An accounting be had for the profits and other damages arising out of the Ricoh Defendants' infringement of U.S. Patent Nos. 6,381,028 and 6,771,387, and that the damages be trebled pursuant to 35 U.S.C. § 284 for the willful acts of infringement complained of herein and awarded to Tesseron, together with prejudgment and post-judgment interest;

4. That this case be decreed an "exceptional case" within the meaning of 25 U.S.C. § 285 and reasonable attorneys' fees be awarded to Tesseron; and

5. That Tesseron be awarded such other costs and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Tesseron demands a trial by jury on the causes of action set forth herein.

Respectfully submitted,

*/s/ Stephen H. Jett*
Stephen M. O'Bryan (0009512)
sobryan@taftlaw.com
David H. Wallace (0037210)
dwallace@taftlaw.com
Stephen H. Jett
sjett@taftlaw.com
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
(216) 241-2838;
(216) 241-3707 (Facsimile)

L. Clifford Craig (0024859)
craigc@taftlaw.com
Kevin W. Kirsch (0081996)
kirsch@taftlaw.com
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838
(513) 381-0205 (Facsimile)

*Counsel for Plaintiff, Tesseron, Ltd.*

### CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, the foregoing was filed electronically. Notice

of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ Stephen H. Jett*
One of the Attorneys for Plaintiff

CMCSch, Cat07, Vecchiar

## U.S. District Court
## Northern District of Ohio (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:07-cv-02947-KMO


Tesseron, Ltd. v. Konica Minolta Business Solutions U.S.A.,    Date Filed: 09/26/2007
Inc. et al                                                      Jury Demand: Plaintiff
Assigned to: Judge Kathleen M. O'Malley                         Nature of Suit: 830 Patent
Cause: 15:1126 Patent Infringement                              Jurisdiction: Federal Question

**Plaintiff**

**Tesseron, Ltd.**                      represented by    **David H. Wallace**
                                                          Taft, Stettinius & Hollister - Cleveland
                                                          3500 BP Tower
                                                          200 Public Square
                                                          Cleveland, OH 44114
                                                          216-241-2838
                                                          Fax: 216-241-3707
                                                          Email: dwallace@taftlaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **L. Clifford Craig**
                                                          Taft, Stettinius & Hollister - Cincinnati
                                                          1800 Firstar Tower
                                                          425 Walnut Street
                                                          Cincinnati, OH 45202-3957
                                                          513-381-2838
                                                          Fax: 513-381-0205
                                                          Email: craigc@taftlaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Stephen H. Jett**
                                                          Taft, Stettinius & Hollister
                                                          3500 BP Tower
                                                          200 Public Square
                                                          Cleveland, OH 44114
                                                          216-241-2838
                                                          Fax: 216-241-3707
                                                          Email: sjett@taftlaw.com
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Konica Minolta Business Solutions
U.S.A., Inc.**

**Defendant**

**Konica Minolta Business
Technologies, Inc.**

**Defendant**

**Konica Minolta Holdings, Inc.**

**Defendant**

**Electronics for Imaging, Inc.**

**Defendant**

**Ricoh Americas Corp.**

**Defendant**

**Ricoh Company, Ltd.**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/26/2007 | 1 | **Complaint** with jury demand against Konica Minolta Business Solutions U.S.A., Inc., Konica Minolta Business Technologies, Inc. ( Filing fee 350 receipt number 2652166.). Filed by Tesseron, Ltd.. (Attachments: # 1 Exhibit 1 - '665 Patent# 2 Exhibit 2 - Assignment Form Varis to Tesseron# 3 Exhibit 3 - 9/11/02 Letter# 4 Exhibit 4 - '153 Patent# 5 Exhibit 5 - '010 Patent# 6 Exhibit 6 - '028 Patent# 7 Exhibit 7 - 568 Patent# 8 Exhibit 8 - 4/4/03 Letter# 9 Exhibit 9 - '325 Patent# 10 Exhibit 10 - 4/18/05 Letter# 11 Exhibit 11 - '934 Published Application# 12 Exhibit 12 - '016 Patent# 13 Exhibit 13 - '681 Published Application# 14 Exhibit 14 - '387 Patent# 15 Exhibit 15 - '205 Published Application) (Jett, Stephen) (Entered: 09/26/2007) |
| 09/26/2007 | 2 | Corporate Disclosure Statement filed by Tesseron, Ltd.. (Jett, Stephen) (Entered: 09/26/2007) |
| 09/27/2007 |   | Judge Kathleen M. O'Malley assigned to case. (C,BA) (Entered: 09/27/2007) |
| 09/27/2007 |   | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Vecchiarelli. (C,BA) (Entered: 09/27/2007) |
| 09/27/2007 | 3 | Magistrate Consent Form issued to counsel. No summons provided, no summons issued. (C,BA) (Entered: 09/27/2007) |
| 10/02/2007 | 4 | Notice *of Filing and Report on filing or Determination* filed by Tesseron, Ltd.. (Attachments: # 1 Exhibit A - Report on the Filing or Determination of an Action Regarding a Patent or Trademark)(Jett, Stephen) Modified |

| | | |
|---|---|---|
| | | wording of text on 10/3/2007 (C, Br). (Entered: 10/02/2007) |
| 11/16/2007 | 5 | Stipulated **Motion** for leave *Waiver and Acceptance of Service and Stipulation for Leave to Plead* filed by Plaintiff Tesseron, Ltd.. Related document(s) 1 . (Wallace, David) (Entered: 11/16/2007) |
| 12/04/2007 | | **Order** [non-document] entered 12/4/2007 granting defendants' stipulated Motion for leave until 2/15/2008 to respond to complaint (Related Doc # 5 ). Judge Kathleen M. O'Malley (H,CM) (Entered: 12/04/2007) |
| 12/06/2007 | 6 | First **Amended complaint** *for Patent Infringement* against Electronics for Imaging, Inc., Ricoh Americas Corp., Ricoh Company, Ltd., Konica Minolta Business Solutions U.S.A., Inc., Konica Minolta Business Technologies, Inc., Konica Minolta Holdings, Inc., filed by Tesseron, Ltd.. (Jett, Stephen) (Entered: 12/06/2007) |
| 12/06/2007 | 7 | **Case Management Conference Scheduling Order** with case management conference to be held on 1/3/2008 at 03:00 PM at Chambers 16A before Judge Kathleen M. O'Malley. Parties to file position statement prior to conference. Signed by Judge Kathleen M. O'Malley on 12/6/2007. (Attachments: # 1 Position statement)(H,CM) (Entered: 12/06/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/07/2007 10:21:15 | | |
| **PACER Login:** km0021 | **Client Code:** | tes05 Gn0013 |
| **Description:** Docket Report | **Search Criteria:** | 1:07-cv-02947-KMO |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

**EXHIBIT C**

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

(Cite as: 2006 WL 1751903 (N.D.Cal.))

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
DEX PRODUCTS, INC., Plaintiff,
v.
Barbara HOUGHTELING, et al., Defendants.
No. C 05-05126 SI.

June 23, 2006.
Robert Lee Sallander, Jr., John Phillip Makin,
Greenan Peffer Sallander & Lally LLP, San Ramon,
CA, for Plaintiff.

Paul Lawrence Hickman, Technology &
Intellectual Property Strategies Group, Palo Alto,
CA, Timothy J. Martin, Martin & Henson P.C.,
Lakewood, CO, for Defendants.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS DEFENDANT
HOGHTELING FOR LACK OF
JURISDICTION AND DENYING
DEFENDANTS' MOTION TO DISMISS OR
TRANSFER AS TO
DEFENDANT BASIC COMFORT, INC.

SUSAN ILLSTON, District Judge.

*1 On May 19, 2006, the Court heard argument on
defendants' motion to dismiss or transfer. Having
considered the arguments of counsel and the papers
submitted, and for good cause appearing, the Court
hereby GRANTS the motion to dismiss defendant
Houghteling for lack of personal jurisdiction, and
DENIES the motion to dismiss or transfer as to
defendant Basic Comfort, Inc.

BACKGROUND
Plaintiff, Dex Products, Inc. ("Dex"), is a producer
of "comfort and safety products for infants,
toddlers, and older children," including the "Secure
Sleeper Ultra," a sleep positioner for infants.
Compl. at ¶ 8. Dex filed this declaratory judgment
patent action in December 2005. The patent at
issue, U.S. Patent No. 6,877,176 ("the '176 patent"),
discloses a cushioned "infant sleep aid that is
adapted to elevate the infant's head and torso as
well as to maintain the infant in a safe sleeping
position." '176 patent, col. 2, lines 30-32. Dex seeks
a declaration that it's Secure Sleeper Ultra does not
infringe the '176 patent, and that the '176 patent is
invalid.

Defendant Barbara Houghteling, a resident of
Loveland, Colorado, is the sole inventor and owner
of the '176 patent, which issued April 12, 2005.
Defendant Basic Comfort, Inc., is a Colorado
corporation with it principal place of business in
Denver, Colorado. Basic Comfort produces and
sells products based upon the '176 patent, and is the
exclusive licensee of the ' 176 patent. Compl. at ¶
¶ 3, 11; see also Compl. at Exh. B ("The '176
Patent is exclusively licensed to Basic Comfort,
Inc....")

On May 25, 2005, an attorney representing both
Houghteling and Basic Comfort contacted plaintiff's
counsel by telephone to inform him that plaintiff's
Secure Sleeper Ultra might infringe the '176 patent.
Compl. at ¶ 13. Later, on November 23, 2005,
defendants' counsel sent plaintiff a cease and desist
letter, accusing the Secure Sleeper Ultra of
infringing the '176 patent. Compl. at ¶¶ 14-15 &
Exh. B. On December 12, 2005, plaintiff filed suit
in this Court, seeking a declaratory judgment that
the '176 patent is invalid, or, in the alternative, that
its product does not infringe the '176 patent.

Defendants now move to dismiss, arguing, first,
that the Court lacks personal jurisdiction over
Houghteling, who they claim is an indispensable
party to this lawsuit, and second, that venue is
improper. In the alternative, defendants seek to have

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT

C

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

**(Cite as: 2006 WL 1751903 (N.D.Cal.))**

this action transferred to Colorado. For the following reasons, the Court DENIES defendants' motion.

## LEGAL STANDARD

### I. Jurisdiction

The parties agree that Federal Circuit law applies to the question whether personal jurisdiction exists over Houghteling. *See Elecs. for Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1348 (Fed.Cir.2002) ("[W]here the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law."). Under Federal Circuit law, "before a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1349 (Fed.Cir.2002).

*2 The "applicable statute" authorizing service of process is the California long arm statute. *See id.* at 1350; Fed.R.Civ.P. 4(e). Because the California long arm statute is coextensive with the limits of due process, the "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,* 142 F.3d 1266, 1270 (Fed.Cir.1998).

Before a court may exercise jurisdiction over a non-resident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). A defendant may meet the minimum contacts requirement in one of two ways. First, a court may exercise "general jurisdiction" over a defendant that has "continuous and systematic" contacts with the forum state. *See LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed.Cir.2000). Second, a court may exercise "specific jurisdiction"

where the defendant's contacts with the forum state are "isolated and sporadic" but the cause of action arises out of those contacts. *Id.*

### II. Necessary and Indispensable Party

If the Court lacks personal jurisdiction over Houghteling, it must then decide if Houghteling is a necessary and indispensable party under Federal Rule of Civil Procedure 19. This analysis is conducted under Ninth Circuit law. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,* 142 F.3d 1266, 1269 (Fed.Cir.1998) ("Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law....").

Courts employ a two-step analysis under Rule 19. First, they must determine if the party is "necessary to the suit." Fed.R.Civ.P. 19(a). A party is necessary if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a)(2). The second step is determining whether the party is indispensable. *See* Fed.R.Civ.P. 19(b). This involves a determination "whether in equity and good conscience the action should proceed among the parties before [the Court]." [FN1] *Id.* Defendants bear the burden of persuasion in arguing for dismissal under Rule 19. *See Clinton v. Babbit,* 180 F.3d 1081, 1088 (9th Cir.1999).

> FN1. Rule 19(b) identifies four factors for courts to consider in making this determination: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

(Cite as: 2006 WL 1751903 (N.D.Cal.))

adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b).

### III. Venue

The venue in a declaratory judgment action concerning patent infringement and validity is governed by the general venue statute, 28 U.S.C.A. §§ 1391(b)- (c). *U.S. Aluminum Corp. v. Kawneer Co., Inc.,* 642 F.2d 193, 195 (9th Cir.1982). Venue is proper in any judicial district (1) where the defendant resides or (2) where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391(b). For declaratory judgment actions in patent infringement case, section 1391(b)(2) refers to the district where the allegedly infringing actions took place, not the district where the patent owner resides. *See Kawneer,* 642 F.2d at 195-96.

**\*3** A district court may transfer a civil action either for the convenience of the parties or witnesses or in the interest of justice. 28 U.S.C.A. § 1404(a). However, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

### DISCUSSION
### I. Personal Jurisdiction

Plaintiff rests its claim that personal jurisdiction exists over Houghteling solely upon specific jurisdiction. The Federal Circuit considers three factors in determining whether specific jurisdiction exists: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.' " *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed.Cir.2001).

According to plaintiff, specific jurisdiction exists in this case because its noninfringement claim arises

out of the phone call and threatening letter that defendants sent to plaintiff in California. Further, plaintiff points to the fact that Basic Comfort sells the "Inclined to Sleep" sleep positioner, a product based on the '176 patent, in California. *See* Saari Decl., ¶ 2 & Ex. A. Plaintiff argues that this litigation is directly related to both of these contacts with California.

The Federal Circuit has long held that a letter threatening litigation is an insufficient basis for asserting personal jurisdiction over a patent holder. *See, e.g., Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1361 (Fed.Cir.2001) ("We have, however, repeatedly held that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee."). In light of this longstanding rule, plaintiff argues that Basic Comfort's sale of a product based on the '176 patent in California is sufficient to confer jurisdiction over Houghteling.

The problem with plaintiff's argument is that it conflates the two defendants. The only action Houghteling has taken in this case was to grant Basic Comfort a license. Pursuant to this license, Basic Comfort chose to market and sell products based on the '176 patent in California. There is no evidence, however, that Houghteling was involved in that decision. Without further evidence of control, plaintiff cannot use Basic Comfort's actions to obtain jurisdiction over Houghteling. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed.Cir.1998) ("HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota.").

**\*4** This case is indistinguishable from the Federal Circuit's decision in *Red Wing.* That case involved a patent on an "athletic shoe [with] improved support and stability for the wearer's heel" owned by Hockerson-Halberstadt, Inc. ("HHI"), a Louisiana corporation located in New Mexico. *Id.*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                Page 4

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

(Cite as: 2006 WL 1751903 (N.D.Cal.))

at 1357. HHI did not manufacture any product; its sole business was licensing and enforcing the rights associated with its patents. *Id.* The plaintiff, Red Wing Shoe Co., was a footwear manufacturer located in Minnesota. *Id.* Starting in October 1995, HHI sent Red Wing a series of letters suggesting that Red Wing was infringing one of its patents. *Id.* Red Wing then brought a declaratory judgment action against HHI, alleging noninfringement of the patent, and that the patent was invalid and unenforceable. *Id.* HHI moved to dismiss for lack of personal jurisdiction, the district court granted the motion, and the Federal Circuit affirmed.

On appeal, Red Wing based its argument in favor of personal jurisdiction on the three letters from HHI contending that Red Wing was infringing its patent, as well as HHI's licensing activities in Minnesota. *Id.* at 1359. The Federal Circuit specifically noted that "HHI has thirty-four licensees who sell products in Minnesota. Six of those licensees have stores or are registered to do business in Minnesota." *Id.* Despite these contacts, the Federal Circuit found the combination of these factors insufficient to create personal jurisdiction:

As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction.... Standards of fairness demand that HHI be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights. HHI's three letters alone do not create personal jurisdiction in Minnesota.

HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, as stated above, the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant.... Red Wing's flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

*Id.* at 1361. As *Red Wing* illustrates, the Federal Circuit has found personal jurisdiction lacking in a case where the asserted minimum contacts were almost identical to this case.

Although plaintiff argues that *Red Wing* is inapplicable, the cases it relies on are all easily distinguishable. The primary case that plaintiff relies on involved a patentee that also produced products based upon its patent, then executed licenses with other companies to distribute those products. *See Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424, 429 (Fed.Cir.1996). In that case, the Federal Circuit found that the patent holder had deliberately placed its products into the "stream of commerce," knowing full well the locations to which the products would be distributed. *See Id.* ("Spal's marketing agreement and practices with Iowa Export establish a regular distribution channel through which Spal purposefully directed its activities."). Defendants also rely on cases in which the patent holder's contacts with the forum state were far more extensive than the contacts in this case. *See Genetic Implant Sys., Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997) (finding sufficient contacts with Washington State where patent holder had "engaged in a program to develop a market in Washington, including founding teaching centers in Seattle staffed by local periodontists, developing Washington customer lists through the teaching centers, and advertising in publications distributed to potential Washington customers"); *Akro Corp. v. Luker,* 45 F.3d 1541, 1546 (Fed.Cir.1995) (finding that patent holder had sufficient contacts with Ohio based upon exclusive license with Ohio corporation) [FN2]; *see also Red Wing,* 148 F.3d at 1362 (distinguishing *Akro* on basis that it involved exclusive license with a corporation in the forum state).

> FN2. *Akro's* partial reliance on warning letters to establish "minimum contacts" is out of step with other Federal Circuit law. As recently as 2002, the Federal Circuit has held that warning letters and other correspondences alone are not enough to establish personal jurisdiction. *See Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351,1356 (Fed Cir.2002).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

(Cite as: 2006 WL 1751903 (N.D.Cal.))

Page 5

**\*5** Thus, the Court concludes that Houghteling's limited contacts with California are insufficient to create the minimum contacts necessary to subject her to personal jurisdiction, and she is accordingly DISMISSED from this action.

## II. Indispensable Party

In addition to arguing that this Court lacks personal jurisdiction over Houghteling, defendants contend that Houghteling is both a necessary party under Rule 19(a) and an indispensable party under Rule 19(b).

## A. Necessary Party

Where a patent has been exclusively licensed to another party, the patent owner is a necessary party where it retains substantial rights in the patent that would be impaired by adjudication of the lawsuit. *See Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.,* 142 F.3d 1266,1269 (Fed.Cir.1998) [FN3]; *Central Tools, Inc. v. Mitutoyo Corp.,* 381 F.Supp.2d 71, 77 (D.R.I.2005). Defendants argue that Houghteling retained substantial rights in the ' 176 patent and is therefore a necessary party; this Court agrees.

> FN3. Although a Federal Circuit case, the *Dainippon* court applied Ninth Circuit law in its analysis of joinder issues.

According to the Houghteling/Basic Comfort licensing agreement, Houghteling retains the "first opportunity to sue" potential patent infringers, a substantial ownership right. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 240 F.3d 1016, 1018 (Fed.Cir.2001) (holding that exclusive licensee's ability to sue for infringement only after patent owner failed to do so was the "most important" reason why licensee did not possess all substantial rights in the patent); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 875 (Fed.Cir.1991) (requirement that licensee *only notify* patent owner prior to filing infringement suit is a "particularly dispositive" indication that full rights had been transferred). Like the exclusive licensee in *Mentor H/S,* Basic

Comfort can only file an infringement suit if Houghteling fails to bring an action within 90 days of being notified that possible infringement exists. License Agreement dated June 1, 2002, ¶ O.

Houghtling's retained rights might be impaired by this litigation because she may be collaterally estopped from re-litigating the validity of the patent in future lawsuits. *See Aguilar v. Los Angeles County,* 751 F.2d 1089, 1093 (9th Cir.1985) (holding that a child was a necessary party to his parents' federal action since a negative decision in parents' proceeding *might* collaterally estop child from re-litigating an important issue in a separate state court action). Whether Houghtling would actually be collaterally estopped from re-litigating the patent's validity is a difficult question [FN4]; however, *Aguilar* requires only that the party may face collateral estoppel issues and that is clearly the case here.

> FN4. *See Indep. Wireless Tel. Co. v. Radio Corp. Of Am.,* 269 U.S. 459 (1926) (holding that an absent patent owner may be bound by the case's result if the patent owner was given the opportunity to participate)

Because Houghtling retained substantial rights in the patent that may be impaired by this litigation, she is a necessary party.

## B. Indispensable Party

Relying on *Dainippon,* plaintiffs argue that Houghteling is not an indispensable party under the 4-factor Rule 19(b) test. This case is indistinguishable from *Dainippon* except that the patent owner in *Dainippon* was a wholly-owned subsidiary of the exclusive licensee. *Dainippon,* 142 F.3d at 1267. The court deemed this fact "highly relevant" to its decision that the patent owner/subsidiary was not an indispensable party. *Id.; see also Dow Chem. Co. v. Exxon,* 139 F.3d 1470, 1479 (Fed Cir.1998) (finding that patent-holding subsidiary of Exxon need not be joined in an infringement suit because subsidiary's interests were "adequately protected" by Exxon, the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

**(Cite as: 2006 WL 1751903 (N.D.Cal.))**

exclusive licensee). While the parent-subsidiary relationship does not exist in this case, Houghteling and Basic Comfort's interests are nonetheless sufficiently aligned that Houghteling need not be joined.

**\*6** The first Rule 19(b) factor requires consideration of the extent to which a judgment in the patent holder's absence would prejudice the parties. Fed.R.Civ.P. 19(b). "Prejudice to an absent party is mitigated when the interests of that party are 'adequately protected by those who are present.' " *Dainippon,* 142 F.3d at 1272 (quoting *In re Allustiarte,* 786 F.2d 910, 919 (9th Cir.1986)). A patent owner's interests are protected by an exclusive licensee if: (1) the licensee "manifests its obvious concern" over the patents by, for example, contacting suspected infringers and threatening legal action, (2) the patent owner and licensee share a common financial interest in the patent's validity and non-infringement, and (3) the patent owner and licensee share an attorney. *Id.* at 1272.

Each of the above factors is present in this case. Basic Comfort, through counsel, both telephoned Dex to express concern over Dex's possible infringement of the '176 patent and sent Dex a cease-and-desist letter. Compl., ¶¶ 13, 14. Second, as the exclusive, world-wide licensee of the rights to the '176 patent, Basic Comfort has an obvious financial incentive to defend against charges of invalidity and non-infringement. License Agreement, ¶ ¶ C, D. Third, as in *Dainippon,* Basic Comfort and Houghteling share the same attorney in this action. Houghteling's interests are further protected by the fact that any settlement agreement between Basic Comfort and Dex requires her consent. Licensing Agreement, ¶ O. So, while Houghteling's relationship with exclusive licensee Basic Comfort is not as close as the parent-subsidiary relationship in *Dainippon,* Houghteling's interests are adequately protected by Basic Comfort.

Although defendants argue that *Central Tools,* not *Dainippon,* is the controlling case, *Central Tools* is factually distinguishable from the current case. First, the patent owner in *Central Tools* granted a *non-exclusive* license to the defendant, thus reducing the defendant's incentive to protect the patent's validity. *Central Tools,* 381 F.Supp.2d at 79 . Second, and more importantly, the license provided rights to only one product in a two-product patent claim. *Id.* at 77. Since the licensee had no interest in the second product whatsoever and because the court would have had to invalidate the entire claim (and hence both products) or nothing at all, the patent owner's interest in the second product was not adequately protected. *Id.* at 77-78. Although defendants argue that Houghteling licensed only the "Inclined to Sleep" product, less than the full patent, they fail to indicate which of the '176 patent's 45 claims have been retained by Houghteling. Moreover, since this Court could invalidate the "Inclined to Sleep" claims without invalidating the entire patent, defendants would need to demonstrate that Houghteling, like the patent owner in *Central Tools,* retained a partial interest in an single claim. *See id.* They have not done so.

**\*7** The second Rule 19(b) factor, the Court's ability to shape relief to avoid prejudice, also militates in favor of Dex. In *Dainippon,* the court noted that "the second factor ... is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court." *Dainippon,* 142 F.3d at 1272-73. The court in *Central Tools* did not adopt this categorical approach. *Central Tools,* 381 F.Supp.2d at 80. Instead, it held that the second Rule 19(b) factor required joinder of the patent owner because the court could not shape its declaratory relief judgment such that it invalidated only part of a patent claim. *Id.* As noted, the issue raised in *Central Tools* is only a problem if Houghteling retained an interest in a partially-transferred claim. There is no evidence that such a partial transfer has taken place.

The third factor, adequacy of judgment, also favors Dex because Dex seeks only declaratory relief. *See Dainippon,* 142 F.3d at 1273 ("The third factor, adequacy of judgment, favors maintenance of the suit in [the patent owner's] absence because a declaration of invalidity or noninfringement would

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

**(Cite as: 2006 WL 1751903 (N.D.Cal.))**

fully serve [the alleged infringer's] interest in ensuring that it is free from claims of patent infringement irrespective of [the patent owner's] absence."); *see also Central Tools*, 381 F.Supp.2d. at 80 (quoting *Dainippon*, 142 F.3d at 1273).

If, as defendants contend, Dex could bring this suit in a Colorado district court, the fourth factor, availability of an alternate forum, would obviously weigh against Dex. "However, the fact that an alternative forum exists does not automatically warrant dismissal of the case given Rule 19(b)'s mandate to consider all of the relevant factors and the equities of the situation." *Dainippon*, 142 F.2d at 1273. Moreover, the fact that the patent owner's interests will be adequately protected by the licensee "strongly compels" the conclusion that the patent owner is not indispensable. *Id.*

Since Houghteling's interest will be adequately protected by Basic Comfort and only the potential availability of an alternative forum weighs in favor of dismissal, this Court concludes that Houghteling is not an indispensable party.

**III. Venue**

Defendants argue that the proper venue under 28 U.S.C.A. § 1391(b)(2) is Colorado, not California, because Houghteling resides in Colorado and all the work on the patent and license agreement took place in Colorado. [FN5] This contention, however, is in opposition to Ninth Circuit law which holds that the proper venue is the district where the alleged infringing acts took place. *See U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 642 F.2d 193, 195 (9th Cir.1982). The alleged infringing acts in this case are Dex's sale of particular baby products. Those sales were made in California, not Colorado. Opp. Mot. at 1:25- 28. This Court therefore concludes that venue is proper. [FN6]

> FN5. Defendants do not argue that venue is improper with regard to Basic Comfort.

> FN6. Defendants' reliance on *Jamba Juice Co. v. Jamba Group, Inc.*, 2002 WL 1034040 (N.D. Cal 2002) is misplaced.

Although the court in *Jamba Juice* held that the activities of the defendant, not the plaintiff, are the relevant focus of a venue dispute, the defendant in *Jamba Juice* was the alleged infringer while the plaintiff was the trademark owner--the reverse of the situation in this action. *Id.* at 2.

*8 Defendants argue in the alternative that this case should be transferred to a federal court in Colorado. Defendants, who cite no cases in support of their position, contend that a trial in this Court would unduly inconvenience Houghteling and Basic Comfort. More specifically, Houghteling, a Colorado resident, and employees of Basic Comfort, a Colorado corporation, would be required to travel to California for the trial. Defendants deem such travel expenses "unduly burdensome and expensive." Def. Mot. at 12. Defendants also assert, with minimal support, that the infringing acts were committed in Colorado, not California.

Defendants' arguments fail to overcome the significant presumption in favor of plaintiff's choice of forum. As several courts have noted, a mere shifting of inconvenience from defendant to plaintiff is not allowed under 28 U.S.C.A. § 1404(a) . *See Decker Coal v. Commonwealth Edison Co.*, 805 F.2d at 843 (finding that transfer of case from Montana to Illinois was not appropriate because there were witnesses living in both locations); *see also Shropshire v. Fred Rappoport Co.*, 294 F.Supp.2d 1085, 1095 (N.D.Cal.2003) (rejecting transfer to Central District of California because witnesses resided in both districts and inconvenience to plaintiff in the new district was "about the same" as that of the defendant in the Northern District); *A Slice of Pie Prods., LLC v. Wayans Bros. Ent.*, 392 F.Supp.2d 297 (D.Conn.2005) (refusing to transfer litigation from Connecticut to California even though more parties resided in California and only some material events occurred in Connecticut). The location of events giving rise to the action is also an important factor in a court's decision to transfer a case. *Decker Coal*, 805 F.2d at 843.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                        Page 8

Not Reported in F.Supp.2d, 2006 WL 1751903 (N.D.Cal.)

**(Cite as: 2006 WL 1751903 (N.D.Cal.))**

A shift of venue from California to Colorado would inconvenience Dex "about the same" as the current venue inconveniences Basic Comfort. *See Shropshire,* 294 F.Supp.2d at 1095. Defendants concede that Dex is a California-based corporation that has no greater presence in Colorado than Basic Comfort has in California. Reply Brief at 2 n. 1. In addition, although Houghteling, other likely witnesses and important documents reside in Colorado, other relevant witnesses (such as Dex employees) and key documents reside in California. In other words, Dex and its witnesses would incur approximately the same level of expenses from a change in venue as Basic Comfort and Houghteling currently face. Moreover, the key events giving rise to this action—the sale of allegedly infringing products--took place in California.

The Court therefore concludes that transfer of venue would not be appropriate.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion to dismiss Houghteling for lack of personal jurisdiction, and DENIES defendants' motion to dismiss or transfer as to defendant Basic Comfort, Inc. (Docket No. 28).

**IT IS SO ORDERED.**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                        Page 1

Not Reported in F.Supp.2d, 2000 WL 890862 (N.D.Cal.)

(Cite as: 2000 WL 890862 (N.D.Cal.))

c
Only the Westlaw citation is currently available.

United States District Court, N.D. California.
William D. HOEFER, et al., Plaintiffs,
v.
UNITED STATES DEPARTMENT OF
COMMERCE, et al., Defendants.
No. C 00 0918 VRW.

June 28, 2000.

ORDER

WALKER, District J.

*1 Defendants move to transfer this case to the
United States District Court for the District of
Columbia pursuant to 28 USC 1404(a).

On January 1, 1993, pursuant to an agreement
between the National Science Foundation (NSF)
and Network Solutions, Inc, (NSI), NSI became the
exclusive registrar for internet domain names. The
agreement provided that NSF would compensate
NSI on a flat fee basis to maintain and update the
internet domain name registry. Under the
agreement, NSF paid NSI roughly $1 million per
year and applicants received domain name
registration free of charge. On September 14, 1995,
pursuant to an amendment to the agreement, NSI
began charging domain name registrants a fee of
$100 to register a domain name and $50 per year to
maintain a name in the registry. The fee revenue
was divided as follows: NSI retained 70% and
placed the remaining 30% (the so-called
"Preservation Assessment") into the Intellectual
Infrastructure Fund, which Congress controls.

This case presents a challenge to this arrangement,
but not the first. In *Thomas v. Network Solutions,
Inc*, plaintiffs claimed, inter alia, that the

Preservation Assessment was an illegal tax and
sought an injunction against the collection of all
fees for the registration and maintenance of domain
names. 2 F Supp 2d 22, 28 (DDC 1998). In that
case, the court held that the Preservation
Assessment was not authorized by Congress and
was, therefore, unconstitutional. See *id* at 38-39. In
response, Congress ratified the Preservation
Assessment. See *Thomas v. Network Solutions, Inc,*
176 F3d 500, 505-506 (DC Cir1999). This mooted
the remaining claim and the district court dismissed
the case. See *id* at 506. The court of appeals
affirmed the decision. See *id* at 508.

On March 15, 2000, plaintiffs filed the instant class
action complaint alleging eight claims. Plaintiffs
contend that the registration fees charged by NSI
constitute illegal taxes, violate federal statutes, and
are unconstitutional takings without due process.
Compl, counts I, III, V, and VI. Plaintiffs also
challenge NSI's decision to discard the demarcation
between top level domain names ".com," ".net" and
".org" as an illegal tax, unconstitutional under due
process, and a violation of federal antitrust law.
Compl, counts II, IV, and VII. Finally, plaintiffs
allege that both the registration fees and the
elimination of top level domain name demarcation
violate the California Unfair Competition Act.
Compl, count VIII.

"For the convenience of parties and witnesses, in
the interest of justice, a district court may transfer
any civil action to any other district or division
where it might have been brought." 28 USC §
1404(a). There is no dispute that this action could
have been brought in the District of Columbia. The
appropriateness of transfer, therefore, depends on
the convenience of the parties and witnesses and the
interests of justice. See *Royal Queentex Enterprises
Inc v Sara Lee Corp,* 2000 WL 246599, *2 (ND
Cal, March 1, 2000). Several factors are relevant:
(1) plaintiff's choice of forum, (2) convenience of
the parties, (3) convenience of the witnesses, (4)

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT
D

Not Reported in F.Supp.2d                                                                                          Page 2

Not Reported in F.Supp.2d, 2000 WL 890862 (N.D.Cal.)

**(Cite as: 2000 WL 890862 (N.D.Cal.))**

ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy and (8) the relative court congestion and time of trial in each forum. See *id.* The court considers these factors in turn.

**\*2** Plaintiffs claim that their choice of forum should be given substantial weight. Little deference, however, is given to a plaintiff's choice of forum in a action brought on behalf of a nationwide class. See *Williams v. Sears Roebuck & Co,* 1998 WL 61307, \*1 (ND Cal, Jan 29, 1998). Where there are hundreds of potential plaintiffs, "all of whom could with equal show of right, go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v (American) Lumbermens Mut Cas Co,* 330 U.S. 518, 524 (1947) . This case is a purported class action. The members of the purported class are numerous and are located throughout the nation. The plaintiffs' choice of forum, therefore, is not given substantial weight when determining whether a transfer of venue is proper.

With respect to convenience of the parties, a forum in the District of Columbia is more convenient. Only one named plaintiff resides in California. Meanwhile, three named plaintiffs and all of the defendants are located in the Washington, DC, area.

Plaintiffs advance several arguments to tie a significant portion of witnesses and evidence to California: (1) Science Applications International Corporation (SAIC), NSI's parent company, is headquartered in California; (2) many non-party witnesses are located in California, including panel members who recommended domain name registration fees, former officials of Internet Assigned Numbers Authority (IANA) who formulated and implemented Internet protocols until 1997, and officers of the Internet Corporation for Assigned Names and Numbers (ICANN), the corporation charged with privatizing the domain name registration process; (3) the InterNIC panel that recommended that NSI begin charging for registration was convened in California; (4) the

pending merger with Verisign, a California corporation, will make NSI a wholly owned subsidiary; (5) plaintiffs' expert witness, Ellen Rony, resides in California.

Defendants, however, persuasively counter these claims and present strong evidence that witnesses and evidence are more accessible in the District of Columbia. Defendants claim that SAIC, the corporation to which NSI is a subsidiary, negotiated the agreement to institute a registration charge, but the officers and personnel who were involved in the negotiations are located near Washington, DC. Defendants further claim that the InterNIC panel that recommended NSI begin charging for domain name registration met at NSF's headquarters in Washington, DC, and that the records of the panel are not in California. Furthermore, because all three defendants have headquarters or principal offices in the Washington, DC, area, crucial witnesses are easily accessible if the action is litigated in the District of Columbia.

Defendants rebut plaintiffs' other assertions that California is a more convenient forum. Defendants point out that ICANN, the corporation charged with privatizing the domain name registration process, did not even exist when NSI initiated registration fees or when top-level domain names were demarcated. Defendants also contend that IANA refers to functions performed by an individual, Dr Jon Postel, now deceased. Finally, defendants contend that Verisign, Inc, a California corporation, did not have any connection or involvement in the initiation of registration fees or the demarcation of top-level domain names.

**\*3** Upon consideration of these arguments, the court is persuaded that the most convenient venue for witnesses and access to evidence is the District of Columbia. This finding substantially supports the requested transfer.

With respect to relative familiarity with applicable law, plaintiffs argue that venue is proper in this forum because the complaint includes a claim based on California law, with which this court is more familiar. But, when the gravamen of the case

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                Page 3

Not Reported in F.Supp.2d, 2000 WL 890862 (N.D.Cal.)

(Cite as: 2000 WL 890862 (N.D.Cal.))

involves federal law, a state law claim is usually not a significant consideration on a motion to transfer venue. See *Blake Constr Co Inc v. International Harvester Co,* 521 F Supp 1268, 1273 (ND Ill 1981). In the present case, the majority of the claims are based on federal law. The presence of a supplemental state law claim does not weigh heavily against a finding that the District of Columbia is the most convenient forum.

The purpose of section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. See *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). Perhaps most compelling to the court's consideration of these factors is that plaintiffs' counsel previously instituted a lawsuit very similar to the case at bar in federal court in the District of Columbia. It would appear that to allow this case to proceed in the Northern District of California would entail a significant waste of time and energy and would involve duplicative effort by this court.

Litigation should proceed where the case finds its "center of gravity." See *Teknekron Software Sys, Inc v. Cornell Univ,* 1993 WL 215024, *7 (ND Cal, June 14, 1993). Because all of the defendants' key witnesses and documents are located in or near Washington, DC, that "center of gravity" would appear plainly to be the nation's capital. This, combined with considerations of judicial economy, persuade the court that transfer of venue pursuant to 28 USC § 1404(a) is appropriate. Defendants' motion is, therefore, GRANTED. All matters presently scheduled for hearing are VACATED and must be renoticed in the United States District Court for the District of Columbia. The clerk shall transmit the file to the clerk in that district pursuant to Civil LR 3-15.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2000 WL 890862 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT E**

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

(Cite as: 2007 WL 1033472 (N.D.Cal.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Carolyn A. GERIN and Mary Kathleen Hughes, on
behalf of themselves and all
others similarly situated, Plaintiff,
v.
AEGON USA, INC., Aegon Financial Services
Group, Inc., AFSG Securities
Corporation, PFL Life Insurance Company, AUSA
Life Insurance Company, Inc.,
Western Reserve Life Assurance Co. of Ohio, and
Bankers United Life Assurance
Company, Defendants.
No. C 06-5407 SBA.
Docket Nos. 28, 36, 39, 47 & 51.

April 4, 2007.

Francis M. Gregorek, Betsy C. Manifold, Rachele
R. Rickert, Wolf Haldenstein Adler Freeman &
Herz LLP, San Diego, CA, Robert B. Weintraub,
Wolf Haldenstein Adler Freeman & Herz LLP, New
York, NY, for Plaintiff.

David Alun Jones, Daniel McNeel Lane, Jr., Akin
Gump Strauss Hauer & Feld LLP, San Antonio,
TX, Steve Kaufhold, Akin Gump Strauss Hauer &
Feld LLP, San Francisco, CA, for Defendants.

### ORDER

SAUNDRA BROWN ARMSTRONG, United
States District Judge.

*1 This matter comes before the Court on the
following motions:
1. Defendants' unopposed Motion to Stay [Docket
No. 28];
2. Defendants' Motion to Dismiss Plaintiffs
Carolyn Gerin and Mary Kathleen Hughes

[Docket No. 36];
3. Defendants' Motion to Transfer Venue [Docket
No. 39];
4. Plaintiffs' Motion for Class Certification
[Docket No. 47]; and
5. Defendants' Motion for Extension of Time to
File Response/Reply [Docket No. 51].

### BACKGROUND
I. The Georgia Action

The litigation underlying the present motions dates
back to 2001, and originated in the United States
District Court for the Northern District of Georgia.
The parties concede that a lawsuit essentially
identical to the instant action was commenced in the
Northern District of Georgia on October 1, 2001,
*Johnson v. Aegon USA, Inc.,* 1-01-CV-2617-CAP
(N.D.Ga.2001) ("Georgia Action"). Mot. to Stay at
2:17-19; Pl.'s Opp. to Mot. to Stay at 2:9-11
[Docket No. 48, filed on February 17, 2007,
withdrawn on March 19, 2007]. In that case,
plaintiff Jeffrey Johnson filed a class action
complaint against the Defendants in the Northern
District of Georgia, asserting claims for federal
securities fraud. Mot. to Stay at 3:6-7. The Georgia
Action was brought against seven commonly-owned
companies which issue, underwrite and sell,
pursuant to written prospectuses, a type of security
known as a variable annuity. Opp. to Mot. to Stay at
2:11-13. The complaint in the Georgia Action
alleged violations of Sections 11, 12(a)(2) and 15 of
the Securities Act of 1933, 15 U.S.C. §§ 77k,
77l(a)(2), 77o, asserting that Defendants violated
the federal securities laws by using prospectuses
which contained both materially inaccurate
statements and material omissions regarding the
variable annuities they offered for sale. Opp. to
Mot. to Stay at 2:13-17.

On December 9, 2002, Plaintiffs filed an amended
complaint, which added Carolyn Gerin and Mary
Kathleen Hughes as additional named plaintiffs.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT
E

Not Reported in F.Supp.2d                                                                Page 2

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

(Cite as: 2007 WL 1033472 (N.D.Cal.))

Mot. to Stay at 3:7-9. In the amended consolidated complaint, dated September 8, 2003, Gerin and Hughes asserted causes of action against Defendants for violations of Sections 11, 12(A) (2) and 15 of the Securities Act of 1933, as well as for declaratory and injunctive relief. *Id.* at 3:13-17.

**A. The Georgia Court's 2004 Order**

On September 24, 2004, the Georgia court dismissed Gerin and Hughes from the amended consolidated complaint as named plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that Johnson's filing of the initial complaint did not serve to toll the limitations period for the claims of Gerin and Hughes because they were added as named plaintiffs to the amended complaint more than one year after they discovered their claims. Declaration of Daniel McNeel Lane, Jr. in support of Mot. to Stay ("Lane Decl."), Ex. B at 20-21. Thereafter, the case proceeded with Johnson as the sole plaintiff. Mot. to Stay 3:13-14.

**B. The Georgia Court's 2006 Order**

*2 In May 2006, Plaintiffs' counsel disclosed that Johnson no longer wished to prosecute his claims against Defendants. Mot. to Stay at 3:15-16. On May 12, 2006, Plaintiffs' counsel filed a Motion for Intervention in Class Certification, requesting that Gerin and Hughes be permitted to intervene in place of Johnson, despite the fact that they had already been dismissed from the case. *Id.* at 3:16-19. Upon Defendants' request, the Georgia court stayed those motions pending the disposition of a motion by Defendants to dismiss the Georgia Action in its entirety, arguing that without Johnson there was no longer a "case or controversy" under Article III of the U.S. Constitution. Opp. to Mot. to Stay at 4:4-10. In its August 31, 2006 Order, the Georgia court ordered the dismissal of Johnson's claims, concluding that the case no longer satisfies the Article III case or controversy requirement. Lane Decl. Ex. D at 8-9. The Georgia court dismissed all other pending motions, including Gerin and Hughes' motion and cross-motion for intervention, as moot. *Id.*

**C. The Eleventh Circuit Appeals**

Gerin and Hughes have appealed both the 2004 and 2006 Orders to the United States Court of Appeals for the Eleventh Circuit. The question presented in the appeal of the 2004 Order is whether under United States Supreme Court precedent, including *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Georgia District Court erred as a matter of law when it dismissed Gerin and Hughes as named plaintiffs on the ground that the filing of Johnson's Georgia Action did not toll the statute of limitations. Opp. to Mot. to Stay at 5:7-12.

The question presented in the appeal of the 2006 Order is whether the Georgia District Court erred as a matter of law when it dismissed the Georgia Action as moot on Article III grounds without consideration of the interrelated cross-motion to brought by Gerin and Hughes, instead of allowing intervention when the only plaintiff withdrew from the action. *Id.* at 5:12-18. A ruling in their favor on either appellate issue, *i.e.,* a reversal of either Order, would mean that the Georgia Action would proceed.

**II. The Current Action**

On September 1, 2006, the day after the Georgia court's 2006 Order denying their attempt to intervene was filed, Gerin and Hughes filed the Class Action Complaint before this Court. Gerin and Hughes assert precisely the same claims for relief against Defendants that they had asserted in the Georgia Action. *Compare* Compl. *with* Lane Decl. Ex. A.

Plaintiffs vociferously opposed the Motion to Stay in their February 13, 2007 Opposition. However, on March 19, 2007 Plaintiffs withdrew their opposition to the Motion and stated their non-opposition to it on the grounds that:
    [a]fter consideration of the appellate briefs recently filed by the parties, plaintiffs have concluded that the Eleventh Circuit's decision may have an effect on some of the motions

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

(Cite as: 2007 WL 1033472 (N.D.Cal.))

pending before this Court. Therefore, plaintiffs now believe it is in the interests of judicial efficiency to stay this action pending the decision of the Eleventh Circuit.

*3 Pls.' Statement of Non-Opposition and Withdrawal of Opp. to Defs.' Mot. to Stay at 2:9-12.

## LEGAL STANDARD

### I. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Ritchie v. U.S.*, 451 F.3d 1019, 1023 (9th Cir.2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 (9th Cir.2001), *as amended by* 275 F.3d 1187 (9th Cir.2001).

### II. Motion to Transfer Venue

Venue is governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought." 28 U.S.C. § 1404(a). The purpose of the section is to "prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses, and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

The burden is on the moving party to demonstrate that the balance of conveniences favors the transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979). Generally, "great weight [is] accorded plaintiffs choice of forum," *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987), and the moving party "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1985). However, the plaintiff's choice of forum receives only minimal deference when the plaintiff brings a purported class action. *Lou*, 834 F.2d at 739.

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D.Cal.1992). A motion to transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000).

*4 In determining the convenience of the parties and witnesses and the interests of justice, a Court may consider a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *Id.* at 498-99.

### III. Motion to Stay

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

**(Cite as: 2007 WL 1033472 (N.D.Cal.))**

Where a complaint involving the same parties and the same issues has already been filed in another federal district, the court presiding over the later-filed suit may either transfer, stay, or dismiss that suit. This is known as the "first-to-file rule." *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir.1982); *Alltrade Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625 (9th Cir.1991). The purpose of the rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of other courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Panasonic Corp. v. Patriot Scientific Corp.,* 2006 WL 709024 at *2 (N.D.Cal.2006) (Jenkins, J.) (citing *Colorado River Conser. Dist. v. United States,* 424 U.S. 800, 818-20, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). It is also intended to foster federal comity. *Pacesetter Systems,* 678 F.2d at 94. Accordingly, the rule "should not be disregarded lightly." *Panasonic Corp.* at *1. The first-to-file rule does not require that the suits be absolutely identical; the crucial inquiry is one of "substantial overlap." *See Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989) ("We agree that exact parallelism does not exist, but it is not required. It is enough if the two proceedings are 'substantially similar.' " (citations omitted)).

"The first-filed action is preferred ... 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.' " *Serco Servs. Co. v. Kelley Co.,* 51 F.3d 1037, 1039 (Fed.Cir.1995) (quoting *Genentech Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993)). Thus, whether to dismiss, transfer or stay the later-filed action is within the discretion of the district court. *Id.; see also USA Scientific, LLC v. Rainin Instrument,* LLC 2006 WL 3334927, *1 (N.D.Cal., 2006) (Armstrong, J.).

***ANALYSIS***
**I. Motion to Dismiss on Res Judicata Grounds**

The doctrine of res judicata bars litigation of claims that were or could have been raised in a prior action. *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th. Cir.2002). The doctrine applies whenever there is (1) an identity of claims, (2) a final

judgment on the merits, and (3) identity or privity between parties. *Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir.2001) (citing *Western Radio Services Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir.1997)).

**\*5** Plaintiffs concede that the instant action involves the same claims and the same parties as the Georgia Action. Opp. to Mot. to Dismiss at 7:11-13 ("Gerin and Hughes [do not] dispute that they have asserted essentially the same claims in this action as that they asserted in the Georgia Action, [n]or that they are suing essentially the same defendants in this action as they sued in the Georgia Action."). However, Plaintiffs argue that because the 2006 Order dismissed the Georgia Action as "moot," it did not reach the merits of the case for the purposes of res judicata. Opp. to Mot. to Dismiss at 7:21-8:13 (citing, inter alia, *Media Techs. Licensing, LLC v. Upper Deck Co.,* 334 F.3d 1366, 1369-70 (Fed.Cir.2003) (because Article III standing "is jurisdictional, lack of standing precludes a ruling on the merits" and therefore a judgment based on Article III should not be afforded res judicata effect).

Plaintiffs correctly point out, however, that the 2004 Order was "merged" into the Final Judgment rendered in 2006. *See Akin v. PAFEC Ltd.,* 991 F.2d 1550, 1563 (11th Cir.1993) (when a district court enters a final and appealable order disposing of a case, "all prior non-final orders and rulings which produced the judgment are merged into the judgment and subject to review on appeal" (internal quotations and citation omitted).). The 2004 Order dismissed Hughes and Gerin's claims on statute of limitations grounds, which constitutes a dismissal with prejudice. The 2006 Order only dismissed *Johnson's* claims as moot--not Gerin and Hughes', which had already been dismissed on statute of limitations grounds. The Georgia court did not render any decision on Gerin and Hughes's motion to intervene in its 2006 Order, and therefore its dismissal of Johnson's action as moot does not neutralize the preclusive effect of the 2004 dismissal of Gerin and Hughes's claims.

Rule 12(b)(6) dismissals are granted based on a

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                              Page 5

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

(Cite as: 2007 WL 1033472 (N.D.Cal.))

plaintiff's failure to plead a cognizable claim. Supreme Court precedent confirms that a dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits" to which res judicata applies. *Stewart,* 297 F.3d at 957 (citing *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Because the 2004 Order constitutes a dismissal of Gerin and Hughes' claims with prejudice it has a preclusive effect for the purposes of res judicata. That the Order contained somewhat inscrutable dicta possibly suggesting otherwise is of no avail to Plaintiffs. [FN1] The Court therefore grants the Motion to Dismiss plaintiffs Gerin and Hughes.

> FN1. The Georgia court's statement in dicta that "[T]he dismissal of Ms. Gerin and Ms. Hughes as named plaintiffs does not necessarily preclude them from being added at a future stage in this litigation as class members should the court certify the purported class" (Lane Decl. Ex. B at 21) is wholly inconsistent with its dismissal of Gerin and Hughes' claims on statute of limitations grounds.

However, since granting the Motion to Dismiss will not dispose of the entire action, the Court must also consider Defendants' Motions to Transfer Venue.

**II. Motion to Transfer Venue**

Defendants have moved to transfer venue of this case to either the United States District Court for the Middle District of Florida, where the principal place of business of the primary defendant is located, or, in the alternative, to the Western District of Texas, where the lead plaintiff with the largest financial stake in the litigation resides.

*6 Plaintiffs' only basis for filing the suit in this venue is that Gerin and Hughes reside here and purchased their annuities here. Opp. to Mot. to Transfer Venue at 5:4-7:6. Thus, in the event plaintiffs Gerin and Hughes are dismissed, there will be essentially no reason for venue in the Northern District of California. Absent the presence of a plaintiff with ties to the forum, the plaintiff's choice of forum is accorded little weight when there is no connection of the underlying claims to the forum. *Lou,* 834 F.2d at 739. Moreover, Defendants make a compelling case for transfer: the primary defendants are located in Florida, the acts giving rise to the claims occurred in Florida, and a number of witness reside in Florida. The annuities that all four Plaintiffs purchased, and that are at the center of this suit, were issued by defendant Western Reserve Life Assurance Co. ("WRL"), which maintains its principal place of business in Clearwater, Florida. Mot. to Transfer at 3:11- 19. Consequently, most of the Defendants' material witnesses and documentary evidence are located in Florida. *Id.* Most importantly, however, the prospectuses and marketing materials about which Plaintiffs complain, and which are the centerpiece of this litigation, were drafted, reviewed, edited and approved in Florida, and thus the operative facts on which the complaint is based transpired in Florida. Reply at 2:11-16.

**A. Jurisdiction and Venue in Transferee Court**

On a motion to transfer, the moving party must show that the transferee court has complete personal jurisdiction over the defendants, subject matter jurisdiction over the claims, and proper venue had the claim originally been brought in that court. *Hoffman v. Blaski,* 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

Here, there is no genuine dispute that the instant action might have been properly brought in the Middle District of Florida. The Middle District of Florida has personal jurisdiction over WRL because WRL does business in Florida. Further, pursuant to 28 U.S.C. § 1391(c), venue is proper for corporations in any district in which a court has personal jurisdiction over that corporation. 28 U .S.C. § 1391(c). Last, the Middle District of Florida would have subject matter jurisdiction over the California action, as the claims in the California action involve a federal question. Accordingly, the Court must consider whether the convenience and justice factors warrant transfer of venue.

**B. Convenience and Justice Factors**

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

(Cite as: 2007 WL 1033472 (N.D.Cal.))

**1. Interests of Justice**

The first factor that this Court must evaluate is whether the instant Motion to Transfer Venue serves the interests of justice. The "interests of justice" consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way. *London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.,* 1996 WL 479013, * 3 (N.D.Cal.1996) (Wilken, J.) (citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3854 (1986)); *see also Pratt v. Rowland,* 769 F.Supp. 1128, 1133 (N.D.Cal.1991) (citing 15 Wright & Miller, supra, § 3851). A major consideration is the desire to avoid multiplicity of litigation from a single transaction. *London and Hull,* 1996 WL 479013, * 3. Indeed, in dictum, the Supreme Court has suggested that courts should give great weight to this consideration: "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

*\*7 While transferring this case to the Middle District of Florida will not actually reduce the current multiplicity of cases relating to the underlying transaction, it serves the interests of justice in that it will discourage forum-shopping by potential plaintiffs, such as Gerin and Hughes, who appear to be attempting to re-litigate their failed case in more sympathetic forum, as discussed below. *See Williams,* 157 F.Supp.2d at 1106. Additionally, as the Court grants the Motion to Dismiss, there is essentially no connection between the present venue and the action. Since a major consideration in ruling on a motion under § 1404(a) is the desire to avoid multiplicity of litigation from a single transaction, *Continental Grain,* 364 U.S. at 26, the interests of justice support transferring this case to Defendants' preferred forum.*

**2. Convenience Factors**

As set forth below, Defendants have persuasively established that the remaining applicable *Jones* factors weigh in favor of transfer.

**a. Plaintiffs' Choice of Forum**

The first *Jones* factor to be considered is Plaintiffs' choice of forum. Ordinarily, there is a strong presumption in favor of the plaintiffs' choice of forum. *Lou,* 834 F.2d at 739. However, the plaintiffs' choice of forum is given little deference where, as here, the action is brought on behalf of a class. *Id.* Further, "[i]f there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." *Williams v. Bowman,* 157 F.Supp.2d 1103, 1106 (N.D.Cal.2001) (Wilken, J.). Moreover, if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, the plaintiff's choice is entitled to only minimal consideration. *Lou,* 834 F.2d at 739.

This appears to be a textbook case of forum-shopping. Plaintiffs Gerin and Hughes, having utterly failed in the Georgia Action, have chosen to simply re-file their dismissed complaint in another forum--a forum which Plaintiffs concede is more favorable to securities class-actions. Opp. at 14:2. To add insult to injury, Gerin and Hughes have shopped for another forum while review of the first-filed case is still pending before the Eleventh Circuit. Finally, the history of the Georgia Action demonstrates that the Northern District of Georgia, and not the Northern District of California, is Plaintiff's first choice of venue. Accordingly, no weight should be given to the Plaintiffs' choice of forum in this action. *See Tiffany v. Hometown Buffet, Inc.,* 2006 WL 2792868, at *2 (N.D.Cal.2006) (Armstrong, J.) (stating that fact that Northern District of California was plaintiff's second choice of venue militated against deference to that choice).

**b. Convenience of Parties and Witnesses and Access to Evidence**

Additionally, the Court may consider whether the transferee court would be more convenient for the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

(Cite as: 2007 WL 1033472 (N.D.Cal.))

Page 7

parties and witnesses and whether the transferee court would provide the parties with easier access to evidence. As describe above, Defendants make a compelling case for transfer: the primary defendants are located in Florida, the acts giving rise to the claims occurred in Florida, and a number of witness reside in Florida. Mot. to Transfer at 3:11-19. Plaintiffs, on the other hand, present no affirmative reasons for keeping the case in the present venue other than the residence of Gerin and Hughes, rather, they simply argue that Defendants' reasons are unpersuasive. Opp. at 5-14.

*8 Absent the presence of Gerin and Hughes in this case, Plaintiffs have no argument for keeping this case in the present venue. The two named plaintiffs (and the *only* remaining plaintiffs, since the Court grants the Motion to Dismiss), John Arizpe and Douglas G. Wiseman, reside in North Carolina and Texas, respectively, both of which are closer to Florida than California. Opp. at 1:12. Finally, as evidenced by their pursuit of their litigation in Georgia, which is adjacent to Florida, for the last five years, Gerin and Hughes can scarcely complain that they are unable to litigate their claims away from their home venue.

### III. Balancing the Factors

The interests of justice strongly weigh in favor of granting the motion to transfer in order to discourage forum-shopping and duplicative litigation. Moreover, the convenience of the parties and witnesses also favors transfer to Florida. "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou*, 834 F.2d at 739. Accordingly, the Court grants the Motion to Transfer.

### III. Motion to Stay, Motion for Class Certification and Motion for Extension of Time to File Response/Reply

As the Court grants the Motion to Dismiss and the Motion to Transfer Venue, the remaining motions are denied as moot.

### CONCLUSION

Accordingly,

IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss [Docket No. 36] is GRANTED, and Defendants' Motion to Transfer Venue [Docket No. 39] is GRANTED. This matter is hereby ordered TRANSFERRED to the United States District Court for the Middle District of Florida. The Clerk of the Court shall transfer the file forthwith.

Defendants' Motion to Stay [Docket No. 28], Plaintiffs' Motion for Class Certification [Docket No. 47] and Defendants' Motion for Extension of Time to File Response/Reply [Docket No. 51] are DENIED AS MOOT.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2007 WL 1033472 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT F**

Westlaw.

Not Reported in F.Supp.                                                          Page 1

Not Reported in F.Supp., 1998 WL 164964 (N.D.Cal.)

(Cite as: 1998 WL 164964 (N.D.Cal.))

C
Only the Westlaw citation is currently available.

United States District Court, N.D. California.
UMAX TECHNOLOGIES, INC., Plaintiff,
v.
HEROLD MARKETING ASSOCIATES, INC.,
d/b/a Graphics Technologies, Inc.,
Defendant.
No. C 97-4027 SC ARB.

March 19, 1998.

ORDER RE MOTION TO DISMISS, STAY OR
TRANSFER

CONTI, J.

*1 On October 24, 1997, defendant Graphics
Technologies, Inc. ("GTI") filed an action in
Minnesota State Court against plaintiff UMAX
Technologies, Inc. ("UMAX") for breach of
contract, fraudulent misrepresentation, consumer
fraud, interference with prospective advantage and
estoppel, based on an alleged breach of a distributor
agreement entered into between the two parties.
That action was removed to the District of
Minnesota on October 24, 1997. On November 3,
1997, UMAX filed this action against GTI in the
Northern District of California, seeking damages for
GTI's alleged breach of that same distributor
agreement. GTI moved to dismiss the instant
action, stay it pending resolution of the Minnesota
action, or transfer it to the District of Minnesota.

On March 6, 1998, the District of Minnesota
denied a motion by UMAX to transfer the suit filed
by GTI in Minnesota pursuant to 28 U .S.C. §
1404(a). The Court found that none of the three
factors a court is to consider in determining whether
to transfer an action--(1) the convenience of the
parties; (2) the convenience of witnesses; and (3)

the interests of justice [FN1] --weighed in favor of
transferring the action to the Northern District of
California. Furthermore, the court rejected
plaintiffs' argument that a forum selection clause
allegedly included in the distributor agreement
justified transfer of the action to California.

> FN1. *Radisson Hotels Int'l., Inc. v. Westin
> Hotel Co.,* 931 F.Supp. 638, 641
> (D.Minn.1996).

"[I]t has long been recognized that the avoidance of
duplicative litigation is one of the paramount
interests of justice." *Zurich Insurance Co. v.
Celotex Corp.,* 1988 WL 107392 at *4 (N.D.Ill.).
The transfer of an action to the district in which
another action involving the same issue and the
same parties was previously filed "would conserve
judicial resources, promote judicial economy and
avoid the problems related with duplicative actions
being filed in different districts." *Tingley Sys., Inc.
v. Bay State HMO Management, Inc.,* 833 F.Supp.
882, 887 (M.D.Fla.1993). The District of
Minnesota has already determined that the balance
of equities weighs in favor of keeping the case in
Minnesota. This Court therefore holds that the
interests of judicial economy and the avoidance of
duplicative lawsuits require that the Court grant
GTI's motion to transfer this action to the District of
Minnesota. The District of Minnesota can then
determine whether to dismiss this action or
consolidate it with GTI's lawsuit, Civ. No.
97-2622/RHK/FLN. GTI's motion to transfer is
therefore GRANTED.

IT IS SO ORDERED.

Not Reported in F.Supp., 1998 WL 164964
(N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT

F

**EXHIBIT G**

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2005 WL 396614 (N.D.Cal.)

(Cite as: 2005 WL 396614 (N.D.Cal.))

c
Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Vincent HERNANDEZ, Plaintiff(s),
v.
UNION PACIFIC RAILROAD COMPANY;
Nordco, Inc., Defendant(s).
No. C 04-04899 JW.

Feb. 18, 2005.
Larry Lockshin, Esq., Sacramento, CA, for Plaintiff.

John H. Ernster, Marilyn J. Bacon, Phil John Montoya, Jr., Ryan K. Marden, Ernster Law Offices, PC, Pasadena, CA, John D. Feeney, San Francisco, CA, Jonathan A. Ross, Bradley & Gmelich, Glendale, CA, for Defendants.

ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE
I. INTRODUCTION

WARE, J.

*1 This matter is currently before the Court on Defendants' Motion to Transfer Venue to the Central District of California. [FN1] The motion was originally noticed for hearing on February 14, 2005. The Court finds it appropriate, pursuant to Civil L.R. 7-1(b), to take Defendants' Motion under submission, without oral argument, for decision based upon the papers filed by the parties. For the reasons set forth below, the Court GRANTS Defendants' Motion.

> FN1. Defendant Union Pacific initially filed the motion alone, but Defendant Nordco subsequently joined.

II. BACKGROUND

Vincent Hernandez ("Plaintiff") and Javier Partida ("Partida") were employees of Defendant Union Pacific Railroad ("Union Pacific") on May 13, 2003, the date of the incident giving rise to the underlying complaint. (Mot. Transfer at 3.) In Santa Cruz County that day, Plaintiff and Partida were injured while working aboard a track machine that was rear-ended by a spike driver manufactured by Defendant Nordco, Inc. ("Nordco"). (Opp'n to Transfer at 2-3.) Plaintiff and Partida have retained the same attorney to pursue Federal Employers' Liability Act ("FELA") and products liability causes of action against Union Pacific and Nordco (collectively "Defendants"). (Mot. Transfer at 3.)

Partida filed suit first on February 19, 2004 in the Central District of California (Mot. Transfer at 3), where Partida currently resides. (Reply at 8.) That case is scheduled to go to trial on October 11, 2005. (Opp'n to Transfer at 1.) Discovery in that case has already begun (Opp'n to Transfer at 2), but has encountered problems because many of the deponent co-workers who witnessed the incident are frequently preoccupied with work-related travel. (Mot. Transfer at 5.)

Although Plaintiff is a resident of the Central District (Mot. Transfer at 4), and although most of the witnesses are local to the Central District, Plaintiff filed his suit on May 6, 2004 in the Santa Cruz County Superior Court. (Opp'n to Transfer at 2.) Plaintiff has more recently retained two physicians in the Northern District [FN2] (Opp'n to Transfer at 7), but the majority of Plaintiff's treating physicians are located in the Central District. (Reply at 4.) Defendants anticipate calling the Central District physicians as witnesses because their assessments directly contradict those made by Plaintiff's Northern District physicians. (Reply at 5.) There are also four eyewitnesses and management witnesses who reside in the Central District. (Reply at 4.)

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

EXHIBIT
G

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 396614 (N.D.Cal.)

(Cite as: 2005 WL 396614 (N.D.Cal.))

FN2. Plaintiff points out that he has also "contacted" two experts from the Northern District. Even if Plaintiff eventually retains these experts, for reasons given below, their retention does not significantly affect this Court's analysis.

This action has become increasingly complex. In addition to Plaintiff's claims against the Defendants, Defendants have each filed cross-claims against each other, and Nordco has filed a counterclaim against Plaintiff. Defendants removed Plaintiff's suit from Santa Cruz County Superior Court to this Court, which has federal question jurisdiction based on the FELA cause of action. Defendants now seek to transfer venue to the Central District of California, where they will move to consolidate this case with Partida's case. (Mot. Transfer at 8.)

### III. STANDARDS

*2 Title 28 U.S.C. § 1404(a) provides that the Court may transfer any civil action to any other district where it might have been brought for the "convenience of the parties and witnesses, in the interest of justice." Section 1404(a) transfers are vested in the sound discretion of the Court. *Decker Coal v. Commonwealth Edison Co.,* 805 F.2d 834, 842-43 (9th Cir.1986). Normally, however, the plaintiff's choice of forum is to be given great weight. *Florens Container v. Cho Yang Shipping,* 245 F.Supp.2d 1086, 1092 (N.D.Cal.2002).

### IV. DISCUSSION [FN3]

FN3. After Union Pacific filed its Reply, Plaintiff filed an objection to allegations contained within that Reply. Plaintiff's objection is unfounded because, contrary to Plaintiff's contention, the Reply addressed only matters raised in Plaintiff's Opposition. In any event, Plaintiff is barred from filing such a paper without prior Court approval under Civil Local Rule 7-3.

A. Convenience of the Parties

In deciding whether to grant a transfer, the Court considers the conveniences to be gained and lost by the parties. 28 U.S.C. § 1404(a). Generally, a plaintiff's choice of forum is afforded substantial weight. *Florens Container,* 245 F.Supp.2d at 1092. However, this rule is substantially attenuated where the forum selected is not the district of plaintiff's residence or where it lacks a "significant connection" to the activities alleged in the complaint. *Carolina Cas. Co. v. Data Broad. Corp.,* 158 F.Supp.2d 1044, 1048 (N.D.Cal.2001).

Defendants' mere filing of its Motion to Transfer Venue attests to the conveniences that they will gain from a transfer. Upon transfer, both Defendants will be required to appear in only one district. Plaintiff, however, originally chose to bring suit here, near the situs of the accident. This decision is given some deference, *Florens Container,* 245 F.Supp.2d at 1092, but it is not determinative because Plaintiff does not live in the Northern District and because the Northern District has a minimal, rather than a substantial, connection to the activities alleged in Plaintiff's complaint. *Carolina Cas. Co.,* 158 F.Supp.2d at 1048. In particular, the connection is minimal because, although the collision occurred in the Northern District, Plaintiff has not asserted that the jury will be required to view the collision site and, indeed, Union Pacific alleges that the site is non-unique. (Reply at 5.) The Court, therefore, gives some deference to Plaintiff's choice of forum, but must consider the other § 1404(a) factors.

B. Convenience of the Witnesses

Plaintiff argues that transfer will not convenience the witnesses because there is no guarantee that Plaintiff's case will be consolidated with Partida's, and therefore the witnesses will still be required to make multiple appearances.

In weighing the convenience of the witnesses, the Court considers not only the number of witnesses involved, but also the materiality of the expected testimony. *E. & J. Gallo Winery v. F. & P. S.p.A.,* 899 F.Supp. 465, 466 (E.D.Cal.1994) (suggesting materiality is a factor by requiring disclosure of anticipated testimonies). The convenience of expert witnesses is given little weight. *Williams v. Bowman,*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2005 WL 396614 (N.D.Cal.)

**(Cite as: 2005 WL 396614 (N.D.Cal.))**

157 F.Supp.2d 1103, 1108 (N.D.Cal.2001).

Regardless of whether the Central District ultimately consolidates Plaintiff's suit with Partida's, transferring this action will significantly convenience the witnesses. Consolidation will remove the need for duplicative trial testimony. However, even if consolidation is denied, a transfer benefits most of the witnesses because they will avoid the expense of traveling to two identical depositions in two distant locations. The number of appearances required of each deponent is of substantial concern to the Court because many of the percipient and management witnesses are unable to make repeated appearances due to their frequent travel schedules. (Mot. Transfer at 8.) By contrast, the expense to Plaintiff's two Northern District physicians in traveling to the Central District is of less importance because the convenience of expert witnesses is given little weight. [FN4] *Williams,* 157 F.Supp.2d at 1108 (refusing to give weight to the convenience of an expert witness even where that expert has expressed an intention to not testify if the trial is transferred to another venue).

> FN4. Other reasons exist to not weigh the convenience of these two experts heavily. First, there are several fact and management witnesses who already must testify in the Central District, but Plaintiff has only identified two experts who will be convenienced by a Northern District trial.

*3 Plaintiff argues that any anticipated conveniences to the witnesses are illusory because discovery has already begun in the Partida action, and thus repeat depositions must be taken anyway. Although the depositions of Partida and one Union Pacific supervisor, Mr. Romero, have already been taken, that is an insufficient ground to deny transfer because Partida is local to the Central District and can readily be re-deposed. The one supervisor may be required to make a second appearance, [FN5] but that inconvenience is greatly outweighed by the number of other depositions that have not yet been taken. [FN6]

> FN5. The record is not clear which district

is more convenient for this deponent.

> FN6. Plaintiff himself has stated that another supervisor and two co-workers must still be deposed because they could not attend the originally scheduled deposition due to "work duties." (Opp'n to Transfer at 2 n. 1.) Their inability to attend because of prior obligations is precisely the reason why the Court hesitates in keeping the case.

C. Interest of Justice

The most compelling reason to transfer this case is based on the interests of justice, which will be greatly benefitted by the consolidation of Plaintiff's suit with Partida's. 28 U.S.C. § 1404(a). The "interest of justice" prong of § 1404(a) covers more than just the quest for a fair trial. Where two actions involve common issues of law and fact, the "interest of justice" considers the feasibility of their consolidation so that inconsistent verdicts are avoided. *A.J. Industries, Inc. v. United States Dist. Ct.,* 503 F.2d 384, 389 (9th Cir.1974). Similarly, judicial economy and the prevention of duplicative litigation are also taken into account. *E. & J. Gallo Winery,* 899 F.Supp. at 466.

Transfer of this suit is proper because consolidation is feasible. *A.J. Industries, Inc.,* 503 F.2d at 389 (stating "feasibility of consolidation is a significant factor in a transfer decision"). Plaintiff contends that his case and Partida's do not involve similar issues of fact and law because the two of them sustained different injuries. Both suits, however, arise out of the same collision and both complaints recite verbatim the same allegations. Thus, consolidation is feasible. [FN7]

> FN7. Plaintiff also urges that consolidation is not feasible because Partida's litigation is further underway. Because this headstart is negligible compared to the time remaining until Partida's mid-October trial date, sufficient time remains for Plaintiff to bring his case up to speed. Moreover, consolidation will expedite Plaintiff's

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                              Page 4

Not Reported in F.Supp.2d, 2005 WL 396614 (N.D.Cal.)

**(Cite as: 2005 WL 396614 (N.D.Cal.))**

    preparation by excising duplicative work. The sharing of depositions already conducted will be particularly easy since both plaintiffs are represented by the same attorney.

Moreover, consolidation will serve the interest of justice by removing the possibility of inconsistent verdicts, a concern that is particularly troublesome in this case because of the numerous cross-claims. The possibility of inconsistent verdicts increases dramatically with the number of claims involved. Eliminating the duplicative nature of these suits will not only ensure consistent verdicts and serve the goal of judicial economy, but it will also guarantee that Plaintiff and Partida will have consistently fair trials.

### V. CONCLUSION
Based on the foregoing, the Court GRANTS the motion to transfer venue to the Central District of California.

Not Reported in F.Supp.2d, 2005 WL 396614 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.