RUSSELL B. HILL (State Bar No. 190070)
JESSE D. MULHOLLAND (State Bar No. 222393)
ELIZABETH YANG (State Bar No. 249713)
Howrey LLP
4 Park Plaza, Suite 1700
Irvine, California 92614-8200
Telephone:   949/721-6900
Facsimile:    949/721-6910
hillr@howrey.com
mulhollandj@howrey.com
yange@howrey.com

Attorneys for Plaintiff
ELECTRONICS FOR IMAGING, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONICS FOR IMAGING, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>TESSERON, LTD., an Ohio limited liability company,<br><br>          Defendants. | No.  3:07-CV-5534 CRB<br><br>**EFI'S OPPOSITION TO TESSERON'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date:    February 1, 2008<br>Time:   10:00 a.m.<br>Judge:  Hon. Charles R. Breyer |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

    A.   Gauthier's Use of Tesseron and its Predecessors Varis and vLogix ............................ 2

    B.   EFI Conducts All of its Relevant Operations in Foster City. ........................... 5

III. THE ACTIONS OF TESSERON, ITS ALTER EGOS AND ITS
    AGENTS SUBJECT TESSERON TO THE SPECIFIC PERSONAL
    JURISDICTION OF THIS COURT .......................................................................... 6

    A.   EFI's Uncontested Jurisdictional Allegations Exceed the
        Requirements of Rule 8. ............................................................................ 6

    B.   The Public Record Wholly Belies Tesseron's Attempt to Avoid
        Jurisdiction Here. ...................................................................................... 7

        1.   Gauthier, vLogix, Varis and Tesseron are alter egos. ........................ 9

            a.   Gauthier controls all assets and owns all stock. .................. 10

            b.   Gauthier uses his residence as the office location for
                all of these companies. ..................................................... 10

            c.   Gauthier is the only employee of these companies
                and he treats their assets as his own. .................................. 11

            d.   The public record manifests confusion between
                Varis, vLogix and Tesseron. ............................................ 11

        2.   Failure to recognize Tesseron's alter ego relationships
            would result in injustice. ................................................................. 12

        3.   Exercise of personal jurisdiction would not be
            unreasonable. ................................................................................. 12

IV.  THE CONVENIENCE OF THE PARTIES AND WITNESSES, AND
    THE INTEREST OF JUSTICE DEMAND THAT THIS COURT DENY
    TESSERON'S MOTION TO TRANSFER THE CASE TO THE
    DISTRICT OF OHIO. ............................................................................................ 13

    A.   Convenience of the Witnesses and Location of Evidence Favor
        Northern California. ................................................................................ 14

    B.   EFI's Forum Choice Favors Northern California. ....................................... 15

    C.   The Interest of Justice Favors Northern California. ..................................... 16

    D.   The Relative Court Congestion Favors the Northern District of
        California. ................................................................................................ 17

**TABLE OF CONTENTS (cont.)**

Page(s)

E.    The Local Interest in Deciding EFI's Controversy Favors Northern California. ................................................................................................ 17

V.    AT THE VERY MINIMUM, THIS COURT SHOULD GRANT EFI JURISDICTIONAL DISCOVERY. ..................................................................... 18

VI.    CONCLUSION ............................................................................................. 19

HOWREY
LLP

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Associated Vendors, Inc. v. Oakland Meat Co.,*
    210 Cal. App. 2d 825 (1962)..................................................................................... 10

*Ballard v. Savage,*
    65 F.3d 1495 (9th Cir. 1995)...................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (U.S. 2007)........................................................................................ 6

*Beverly Hills Fan Co. v. Royal Sovereign Corp,*
    21 F.3d 1558 (Fed.Cir.1994) .................................................................................... 12

*Bradley v. Chiron Corp.,*
    136 F.3d 1317 (Fed. Cir. 1998) .................................................................................. 6

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .............................................................................................. 8, 12

*Chan v. Soc'y Expeditions, Inc.,*
    39 F.3d 1398 (9th Cir. 1994)..................................................................................... 11

*Cont'l Grain Co. v. Barge FBL-585,*
    364 U.S. 19 (1960) .................................................................................................... 17

*Davis v. Metro Prods., Inc.,*
    885 F.2d 515 (9th Cir. 1989)...................................................................................... 9

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986)..............................................................................13, 15

*Decter v. MOG Sales, LLC,*
    No. CV 06-1738 MCE GGH, 2006 U.S. Dist. LEXIS 90415,
    at *7 (E.D. Cal. Dec. 13, 2006) ............................................................................... 14

*Denver & Rio Grande W. Ry. Co. v. Bhd. of R.R. Trainmen,*
    387 U.S. 556 (1967) ................................................................................................. 14

*DIRECTV, Inc. v. EQ Stuff, Inc.,*
    207 F. Supp. 2d 1077 (C.D. Cal. 2002) ................................................................... 15

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001)...................................................................................... 9

*Electronics for Imaging, Inc. v. Coyle,*
    340 F.3d 1344 (Fed. Cir. 2003)........................................................................7, 8, 12

*Florens Container v. Cho Yang Shipping,*
    245 F. Supp. 2d 1086 (N.D. Cal. 2002)...............................................................14, 15

HOWREY
LLP

1

# TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*Flynt Distrib. Co. v. Harvey,*
    734 F.2d 1389 (9th Cir. 1984) ................................................................. 9

4

5

*Gerin v. Aegon USA, Inc.,*
    No. C 06-5407 SBA, 2007 WL 1033472,
    at *1-3 (N.D. Cal. Apr. 3, 2007) ............................................................ 17

6

7

*GTE Wireless, Inc. v. Qualcomm, Inc.,*
    71 F. Supp. 2d 517 (E.D. Va. 1999) ...................................................... 16

8

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) .......................................................................... 16, 17

9

10

*Howard v. Everex Sys.,*
    228 F.3d 1057 (9th Cir. 2000) ................................................................. 9

11

*Inamed Corp. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001) ............................................................... 8

12

13

*Injen Tech. Co. v. Advanced Engine Mgmt.,*
    270 F. Supp. 2d 1189 (S.D. Cal. 2003) ................................................. 13

14

*Insituform Techs., Inc. v. CAT Contracting, Inc.,*
    385 F.3d 1360 (Fed. Cir. 2004) ............................................................... 9

15

16

*Laub v. U.S. DOI,*
    342 F.3d 1080 (9th Cir. 2003) ............................................................... 18

17

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
    89 F.R.D. 497 (C.D. Cal. 1981), aff'd,
    726 F.2d 1381 (9th Cir. 1984) ............................................................... 13

18

19

*McCombs v. Rudman,*
    197 Cal. App. 2d 46 (1961) ................................................................... 10

20

21

*Minnesota Mining & Mfg. Co. v. Eco Chem. Inc.,*
    757 F.2d 1256 (Fed. Cir. 1985) ............................................................... 9

22

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.,*
    6 F. Supp. 2d 203 (S.D.N.Y. 1998) ....................................................... 16

23

24

*Orchid Biosciences, Inc. v. St. Louis Univ.,*
    198 F.R.D. 670 (S.D. Cal. 2001) ........................................................... 19

25

*Panduit Corp. v. All States Plastic Mfg. Co.,*
    744 F.2d 1564 (Fed. Cir. 1984) ............................................................... 9

26

27

*Ravelo Monegro v. Rosa,*
    211 F.3d 509 (9th Cir. 2000) ................................................................. 16

28

PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS
CASE NO.: C-07-5534-RS

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998) ...................................................................8, 12, 13

*Riddle v. Leuschner,*
51 Cal. 2d 574 (1959) ................................................................................. 10

*Royal Queentex Enters. v. Sara Lee Corp.,*
No. C-99-4787MJJ, 2000 U.S. Dist. LEXIS 10139,
at *2 (N.D. Cal. Mar. 1, 2000) .......................................................................14, 18

*SEC v. Hickey,*
No. 01-17027, No. 01-17214, 2003 U.S. App. LEXIS 13563,
at *10 (9th Cir. Cal. July 7, 2003) ................................................................... 9

*SEC v. Rose Fund, LLC,*
No. C 03-04593WHA, 2004 U.S. Dist. LEXIS 22491,
at *9 (N.D. Cal. Jan. 9, 2004).......................................................................... 14

*Securities Investor Prot. Corp. v. Vigman,*
764 F.2d 1309 (9th Cir. 1985).......................................................................... 15

*Sher v. Johnson,*
911 F.2d 1357 (9th Cir. 1990).......................................................................... 11

*Silent Drive, Inc. v. Strong Indus.,*
326 F.3d 1194 (Fed. Cir. 2003) .................................................................. 7, 8

*Smith & Noble v. S. Jersey Vinyl, Inc.,*
No. CV 97-7473 WDK, 1998 U.S. Dist. LEXIS 15930,
at *11 (C.D. Cal. May 11, 1998) ..................................................................... 10

*Strigliabotti v. Franklin Res., Inc.,*
No. C 04-0883 SI (N.D. Cal. Oct. 5, 2004) ....................................................... 17

*STX, Inc. v. Trik Stik, Inc.,*
708 F. Supp. 1551 (N.D. Cal. 1988) ................................................................. 13

*Towe Antique Ford Found. v. IRS,*
999 F.2d 1387 (9th Cir. 1993)........................................................................... 9

*Trintec Indus. v. Pedre Promotional Prods.,*
395 F.3d 1275 (Fed. Cir. 2005)................................................................... 7, 13

*William Gluckin & Co. v. Int'l Playtex Corp.,*
407 F.2d 177 (2d Cir. 1969)............................................................................ 16

*Williams v. Canon, Inc.,*
432 F. Supp. 376 (C.D. Cal. 1977) ..................................................................... 12

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.,*
No. C 03-3711 MHP, 2003 U.S. Dist. LEXIS 26802,.......................................... 12

HOWREY
LLP

1

## TABLE OF AUTHORITIES (cont.)

2

**Page(s)**

3

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
    *556 F.2d 406 (9th Cir. 1977)* ............................................................................................. 18

4

5

**STATUTES**

6

Fed. R. Civ. P. 8(a)(1) ................................................................................................................. 6

7

Fed. R. Civ. P. 9(b) ..................................................................................................................... 6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-vi-                          PLAINTIFF'S OPPOSITION TO MOTION TO
                                            DISMISS
                              CASE NO.: C-07-5534-RS

1    **I.    INTRODUCTION**

2        The Court should deny Tesseron Ltd.'s Motion to Dismiss or, in the Alternative, to Transfer

3    Venue ("Motion").  With regard to its motion to dismiss, Tesseron completely ignores EFI's alter ego

4    jurisdictional allegations.  Tesseron therefore tacitly admits that through its alter egos and agents it

5    maintains continuing and extensive contacts with this forum.  These contacts by Tesseron and its alter

6    egos, which conclusively establish specific personal jurisdiction over Tesseron, include:

7        •    giving a mortgage interest in the patents-in-suit to Silicon Valley Bank, a California

8            corporation with its principal place of business in Santa Clara, California;

9        •    maintaining a website directed at residents of California for which the ongoing contact

10           for the registration of the website is with persons within California;

11       •    supplying the technology disclosed in the patents-in-suit to companies in northern

12           California;

13       •    developing a program for a San Francisco, California-based company utilizing the

14           technology disclosed in the patents-in-suit;

15       •    demonstrating the technology disclosed in the patents-in-suit at trade shows in San

16           Francisco, California;

17       •    maintaining a residence in California while developing the technology claimed in the

18           patents-in-suit;

19       •    accusing EFI and its customers of performing, within this judicial district, acts

20           constituting infringement of the patents-in-suit.

21   Given the contacts of Tesseron's alter egos with this forum, Tesseron's failure to dispute EFI's alter

22   ego allegations is fatal to its motion.  Even if the Court were to entertain further argument from

23   Tesseron on this point, the Court should easily see through Tesseron's corporate shell games, all

24   directed by the same individual, Forrest P. Gauthier ("Gauthier").

25       With regard to Tesseron's motion to transfer, the Court should reject it because the interest of

26   justice and the convenience of the parties and witnesses weigh heavily in favor of this forum.  This is

27   the only action (1) where all of the patents-in-suit are at issue and (2) where the two real parties in

28

1  interest, Tesseron as the patentee and EFI as the manufacturer of the allegedly infringing technology,

2  are subject to personal jurisdiction.

3  II.    **STATEMENT OF FACTS**

4       A.    **Gauthier's Use of Tesseron and its Predecessors Varis and vLogix.**

5       Before founding Tesseron and serving as its president and sole shareholder, Gauthier founded

6  and served as the Chief Executive Officer of Varis Corporation ("Varis").  While he controlled Varis,

7  Gauthier conducted research pertaining to the high-speed printing industry, including variable printing

8  technology that Gauthier calls "VariScript technology."  *See* Declaration of Forrest Gauthier in

9  Support of Motion to Dismiss or Transfer, Docket No. 11 ("Gauthier Decl.") at ¶¶1-3; Declaration of

10  Mark L. Blake in Support of Electronic for Imaging Inc.'s Opposition to Tesseron Ltd.'s Motion to

11  Dismiss or, in the Alternative, to Transfer Venue ("Blake Decl.") at ¶2, Ex. A.  The VariScript

12  technology that Gauthier developed ultimately led to the patents-in-suit, which include: U.S. Patent

13  Nos. 5,729,665 ("the '665 patent"), 5,937,153 ("the '153 patent"), 6,209,010 B1 ("the '010 patent"),

14  6,381,028 B1 ("the '028 patent"), 6,487,568 B1 ("the '568 patent"), 6,599,325 B2 ("the '325 patent"),

15  6,687,016 B2 ("the '016 patent"), and 6,771,387 B2 ("the '387 patent"), collectively (the "patents-in-

16  suit").  Gauthier Decl. at ¶3.

17       In 2001, Gauthier sold Varis and all of its assets, including the patents-in-suit, to vLogix,

18  another company founded and controlled by Gauthier as its Chief Executive Officer and Chairman.

19  *See* Blake Decl. at ¶¶2-4, Exs. A-C.[1]   As part of Gauthier's transfer of assets, "vLogix assumed all

20  ongoing operations of Varis Corporation, the original developer of the VariScript system."  *Id.* at ¶5,

21  Ex. D.  That is, "vLogix began ongoing service and support operations for VariScript customers."  *Id.*

22  at ¶3, Ex. B.

23       Before beginning his litigation campaign against Xerox, EFI and others, Gauthier once again

24  transferred the patents-in-suit.  This time Gauthier transferred the patents to Tesseron, which Gauthier

25

26  [1] Gauthier used Tesseron to conduct the "public" auction of Varis' assets referred to by Gauthier's

27  declaration, through which vLogix and later Tesseron acquired the assets of Varis.  *See* Blake Decl. at

28  ¶6, Ex. E.

HOWREY
LLP

1    solely controls and which he describes as "his holding company" for licensing the patents-in-suit. *See*

2    *id.* at ¶2, Ex. A.

3        Contrary to Tesseron's carefully worded motion, Gauthier and his closely held corporations

4    maintain substantial and on-going contacts with California. These contacts include giving a mortgage

5    interest in the patents-in-suit to Silicon Valley Bank, a California corporation with its principle place of

6    business at 3003 Tasman Drive, Santa Clara, California 95054. *See id.* at ¶¶7-8, Ex. F at 347:20-348:3,

7    and Ex.G.

8        In addition, Gauthier and Tesseron are publicly held out to be the administrative contacts for

9    the commercial website www.vlogix.com (i.e., "Forrest Gauthier" at admin@tesseron.net), which

10   maintains its domain name registration with Network Solutions in Santa Clara, California. *See id.* at

11   ¶9, Ex. H. This shows that Gauthier and Tesseron are intimately involved in the dealings of vLogix, a

12   company that has extensive commercial contacts with this judicial district. For example, Gauthier,

13   through vLogix, supplied the VariScript technology to George Lithograph—"one of the oldest and

14   largest printers in Northern California." *Id.* at ¶3, Ex. B. Gauthier continues to highlight this

15   significant contact on the vLogix website. *Id.* Varis and Gauthier also publicly demonstrated the

16   VariScript technology at the Seybold trade show in San Francisco, California. The Court should

17   reasonably infer that Gauthier was offering the VariScript technology for sale at that show. *Id.* at ¶10,

18   Ex. I at 4. Indeed, Varis obviously achieved commercial success in this judicial district: it developed a

19   successful "a coupon program for the Planet U, a San Francisco-based data mining company serving

20   retail grocery chains" in collaboration with George Lithograph and Oce Printing Systems USA. *See id.*

21   at ¶11, Ex. J at 4.

22       Tesseron also has ongoing licenses and service contracts with RR Donnelley, which has

23   numerous offices throughout California.[2] *See* Gauthier Decl. at ¶12; Blake Decl. at ¶12, Ex. K. The

---

26   [2] Gauthier's declaration that "Moore Wallace [which was acquired by RR Donnelley]. . . has

27   represented that all variable output printer controllers that are subject to the software use/technical
     support contract with Moore Wallace are located in Osage, Kansas and Streetsboro, Ohio" is hearsay
     and should not be considered by this Court. *See* Gauthier Decl. at ¶12; Fed. R. Evid. 602.

1  VariScript technology continues to be used by customers in California, including the Graphic

2  Communication Department at California Polytechnic State University in San Luis Obispo, California.

3  *See* Blake Decl. at ¶¶13-15, Exs. L-N.

4       Gauthier himself maintained residences in San Luis Obispo, California until at least 2000 and

5  in Bakersfield, California until at least 2001—the same time in which he claims to have developed the

6  VariScript technology disclosed in the patents-in-suit.  *See id.* at ¶16, Ex. O; Gauthier Decl. at ¶¶2-3.

7  Gauthier also worked as a consultant to Print Research Technologies in Santa Ana, California during

8  the time he purports to have developed the same technology.  *See* Blake Decl. at ¶7, Ex. F at 41:5-20.

9       Tesseron also purposefully directed its activities at EFI and EFI's customers within this judicial

10  district.  Specifically, in 2005, Tesseron sent a letter to EFI informing EFI that it had recently filed suit

11  against Xerox and GMC for patent infringement in the United States District Court for the Northern

12  District of Ohio.  Declaration of James L. Etheridge in Support of EFI's Opposition Tesseron Ltd.'s

13  Motion to Dismiss or, in the Alternative, to Transfer Venue ("Etheridge Decl.") at ¶2.  Tesseron also

14  threatened that EFI should negotiate a license because, depending on how the litigation against Xerox

15  and GMC progressed, Tesseron could decide that it would be better served enforcing its rights through

16  litigation against EFI.  *Id.*

17       EFI attempted in vain to deal with Tesseron directly.  *See* Etheridge Decl. at ¶¶3-4.  On April 6,

18  2005, EFI requested that Tesseron send copies of relevant patents, file histories, and any other

19  documents that would demonstrate how Tesseron's patents relate to EFI's products.  *Id.* at ¶3.

20  Tesseron never responded.  *Id.*  Instead, Tesseron sidestepped EFI and sent letters alleging patent

21  infringement to many of EFI's customers, including Konica Minolta Business Technologies ("K-M")

22  and Ricoh Company, Ltd. ("Ricoh").  *Id.* at ¶5.  EFI's customers in turn demanded that EFI indemnify

23  them against Tesseron's claims.  *Id.* at ¶6.

24       After threatening EFI, Tesseron filed a complaint on September 26, 2007 in the Northern

25  District of Ohio ("N.D. Ohio Action") alleging, *inter alia,* that K-M's products, which incorporate

26  EFI's Fiery® print controllers, infringe one or more claims of the patents-in-suit.  Blake Decl. at ¶17,

27  Ex. P.  Tesseron based its accusations on the presence of EFI Fiery® print controllers in K-M's

28  products.  *Id.* at Ex. P ¶¶13, 20, 34, and 57.  EFI was not named in that action.

1    On October 30, 2007, EFI filed this action for declaratory judgment of non-infringement,

2  invalidity, and unenforceability of the patents-in-suit because Tesseron's continued accusations and

3  threats create an uncertainty concerning EFI's and its customers' future business.  Complaint, Docket

4  No. 1.  Over a month later, on December 6, 2007, Tesseron filed an Amended Complaint in the N.D.

5  Ohio Action adding EFI and Ricoh as Defendants but removing six of the eight patents-in-suit, thereby

6  limiting its infringement allegations to the '028 and '387 patents.  Blake Decl. at ¶18, Ex. Q at ¶¶20

7  and 35.

8    B.     **EFI Conducts All of its Relevant Operations in Foster City.**

9    EFI's principal place of business is located within this judicial district in Foster City.  Etheridge

10  Decl. at ¶7.  EFI employs close to 500 engineers and other highly skilled workers in Foster City.  *Id.* at

11  ¶8.  The efforts of EFI's highly educated work force allow it to offer pioneering variable data printing

12  ("VDP") solutions, all of which Tesseron has accused of infringing all of the patents-in-suit.  EFI's

13  industry-leading VDP technologies include its Fiery® FreeForm and Fiery® FreeForm 2 software,

14  Fiery® print controllers, and mid-range to high-end Fiery® production servers.  Complaint, Docket

15  No. 1, at ¶7.  These solutions allow digital copiers and printers to efficiently print personalized

16  documents with addressee-specific content.

17    EFI sells its VDP solutions through original equipment manufacturers ("OEMs").  *Id.* at ¶8.

18  OEMs such as Xerox Corporation ("Xerox"), Canon USA, Inc. ("Canon"), Ricoh, and K-M

19  incorporate EFI's solutions into their digital printing equipment.  *Id.*  All of these VDP solutions are

20  developed and supported at EFI's headquarters in Foster City.  Etheridge Decl. at ¶9.

21    Further, all of EFI's relevant documentation and witnesses regarding the development,

22  structure, function, and operation of its VDP products are located in Foster City.  *Id.* at ¶10.  These

23  materials include EFI's source code database, engineering documentation, financial data, intellectual

24  property records, sales documentation, marketing documentation, and user documentation.  *Id.*

25

26

27

28

1

**ARGUMENT**

2

**III.    THE ACTIONS OF TESSERON, ITS ALTER EGOS AND ITS AGENTS SUBJECT TESSERON TO THE SPECIFIC PERSONAL JURISDICTION OF THIS COURT.**

3

4

A.    **EFI's Uncontested Jurisdictional Allegations Exceed the Requirements of Rule 8.**

5

At the outset, the Court should reject Tesseron's attempts to impose a heightened pleading

6

burden here.  Instead of focusing on EFI's relatively low pleading burden under Federal Rule of Civil

7

Procedure 8, Tesseron improperly cites to inapposite cases with heightened pleading burdens.

8

Specifically, Tesseron cites *Bradley v. Chiron Corp.,* 136 F.3d 1317 (Fed. Cir. 1998) in an attempt to

9

inflate Rule 8(a)(1)'s low pleading burden.  *Bradley*, however, deals with the heightened pleading

10

standard for *fraud* under Federal Rule of Civil Procedure 9(b).  *Id.* at 1321.  Unlike EFI's jurisdictional

11

allegations, fraud must be pled "with particularity," which is a far greater burden than the "short and

12

plain statement of the grounds [upon which] the court's jurisdiction" depends.  Fed. R. Civ. P. 8(a)(1)

13

and 9(b).  Likewise, Tesseron erroneously cites *Bell Atlantic Corp. v. Twombly*, wherein the court

14

again dealt with the heightened pleading standard required to allege an antitrust conspiracy under § 1

15

of the Sherman Act.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1962 (U.S. 2007).[3]

16

In any event, the proper jurisdictional pleading standard is Rule 8(a)(1), which only requires a

17

"short and plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1); *see*

18

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (plaintiff need only demonstrate facts that if true

19

would support jurisdiction over the defendant).  In determining whether EFI's complaint meets this

20

standard, the Court "must construe all pleadings and affidavits in the light most favorable to [EFI]."

21

*Id.*  That is, "[i]n the procedural posture of a motion to dismiss, [the] district court must accept the

22

uncontroverted allegations in [EFI]'s complaint as true and resolve any factual conflicts in the

23

24

---

25

[3] Tesseron's citation to these inapposite cases doubly confuses the issue as the relevant holdings in

26

these cases pertain to whether the plaintiffs stated claims upon which relief could be granted—not whether the jurisdictional allegations were sufficient.  *See Bell,* 127 S. Ct. at 1962*; Bradley*, 136 F.3d

27

at 1321.  Tesseron does not even suggest that EFI pled its claims for relief in any sort of deficient manner.

28

HOWREY
LLP

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE NO.: C-07-5534-RS

affidavits in [EFI]'s favor." *Electronics for Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed. Cir. 2003) (cited hereafter as "*Coyle*" to avoid confusion as EFI was the lead party in that case).

EFI meets the requirements of Rule 8 readily. As EFI pled:

> This Court has personal jurisdiction over Tesseron by way of Tesseron's ongoing and substantial business in the Northern District of California. Based on information and belief, Tesseron, through its agents, affiliates, and/or alter egos, has continuing and extensive contacts with this forum, including contacts with companies in this forum to which it sells and provides service support for variable data printing ("VDP") software and hardware. Moreover, based on information and belief Tesseron has, through its agents, affiliates and/or alter egos, accused EFI's customers of performing, within this judicial district, acts constituting patent infringement.

Complaint, Docket No. 1, at ¶2. This short, plain jurisdictional statement properly alleges that Tesseron is subject to this Court's personal jurisdiction by way of its and its alter egos' activities here. Knowing full well that Gauthier, Varis and vLogix—Tesseron's alter egos—have extensive contacts with California, Tesseron did not even address EFI's alter ego allegations. Taking these uncontested allegations as true, which it must, the Court should reject Tesseron's motion.

**B.    The Public Record Wholly Belies Tesseron's Attempt to Avoid Jurisdiction Here.**

While Tesseron's failure to contradict EFI's alter ego allegations is fatal to Tesseron's motion, EFI provides herein ample evidence supporting its jurisdictional allegations in case the Court entertains further argument from Tesseron. This evidence provides much more than the required "prima facie showing of jurisdiction to defeat [Tesseron's] motion to dismiss" for lack of personal jurisdiction. *Trintec Indus. v. Pedre Promotional Prods.,* 395 F.3d 1275, 1282 (Fed. Cir. 2005).

The question of personal jurisdiction over Tesseron boils down to a due process inquiry. *Coyle,* 340 F.3d at 1349 ("California's long-arm statute permits service of process to the limits of the due process clauses of the federal Constitution. . . . Therefore, the personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports with due process.").[4] Under the Federal

---

[4] Federal Circuit law regarding due process governs the issue of personal jurisdiction in EFI's declaratory action for non-infringement, invalidity, and unenforceability of the patents-in-suit because EFI's claims are "intimately related to patent law." *See Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

HOWREY
LLP

1   Circuit's three-factor test to determine whether jurisdiction over a party comports with due process,

2   this Court must consider: (1) whether Tesseron purposefully directed its activities at residents of the

3   forum state, (2) whether the claims arise out of or relate to the Tesseron's activities with California,

4   and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Id.*; *Silent Drive*, 326 F.3d

5   at 1202 (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).

6       Tesseron's cease and desist letters to EFI satisfy the first two requirements that (1) Tesseron

7   purposefully directed its activities to California, and (2) the claims arise out of or relate to the

8   Tesseron's activities within the forum. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148

9   F.3d 1355, 1360 (Fed. Cir. 1998) (finding cease and desist letters alone are enough to show minimum

10  contacts however, other contacts are necessary to prove jurisdiction meets the concept of fair play and

11  substantial justice); *Silent Drive*, 326 F.3d at 1202. The activities of Tesseron's alter egos further

12  satisfy these first two elements. These activities include extensive and ongoing contacts purposefully

13  directed to California, all of which are related to the invention and exploitation of technology disclosed

14  in the patents-in-suit. *Infra* Section II.A. Thus, the activities of Tesseron and its alter egos clearly

15  meet the requirements of the first two prongs.

16      With respect to the third prong—whether the assertion of personal jurisdiction is fair and

17  reasonable—Tesseron bears the burden to "present a compelling case that the presence of some other

18  considerations would render jurisdiction unreasonable." *Coyle*, 340 F.3d at 1351-52 (quoting *Burger*

19  *King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Tesseron

20  ignores its burden. Indeed, its "other activities," enumerated in Section II. A *infra*, within this forum

21  individually, and through its agents/alter egos, are more than sufficient such that the Court's assertion

22  of personal jurisdiction would be reasonable and fair. As explained above, Tesseron and its alter egos

23  have done much more in this forum than other defendants found subject to personal jurisdiction here.

24  *See, e.g., Coyle*, 340 F.3d at 1350-51 (finding personal jurisdiction present where Defendant sent cease

25  and desist letters, demonstrated the technology underlying what later issued as the patent, and hired a

26  California attorney).

27      Given the extensive contacts highlighted above, the core question for the Court is whether the

28  actions of Gauthier, vLogix and Varis should be imputed to Tesseron. If the Court considers these

1  entities to be alter egos of Tesseron, the Court should impute these contacts to Tesseron and exercise

2  personal jurisdiction over it.  *See, e.g., Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1393-94 (9th Cir.

3  1984) (finding a prima facie case of alter ego-based jurisdiction over individuals who were alter egos

4  of the contract signatories and of the corporations and partnerships); *Davis v. Metro Prods., Inc.*, 885

5  F.2d 515, 520-21 (9th Cir. 1989) (corporate form may be ignored in cases in which the corporation is

6  the agent or alter ego of the individual defendant or where there is an identity of interests between the

7  corporation and the individuals); *Howard v. Everex Sys.,* 228 F.3d 1057, 1069 n.17 (9th Cir. 2000)

8  ("where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter

9  ego of the parent, jurisdiction is appropriate over the parent as well"); *Minnesota Mining & Mfg. Co. v.

10  Eco Chem. Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (finding that the exercise of personal

11  jurisdiction over a successor corporation with no ties to the forum state was appropriate when the

12  successor corporation was a "mere continuation" of the predecessor corporation and exercise of

13  personal jurisdiction would have been appropriate over the predecessor).  Only a *prima facie* showing

14  of an alter ego relationship is requisite to defeat a motion to dismiss.  *Doe v. Unocal Corp.,* 248 F.3d

15  915, 926 (9th Cir. 2001).  There is ample evidence to support such a showing.

16             **1.  Gauthier, vLogix, Varis and Tesseron are alter egos.**

17        The answer to whether Gauthier, vLogix and Varis are Tesseron's alter egos is a resounding

18  "yes." The Ninth Circuit recognizes an alter ego relationship when two conditions are met:[5] (1) there

19  is such a unity of interest between the corporate personalities that they do not function as separate

20  personalities, and (2) a failure to disregard the separate nature of the corporate entities would result in

21  fraud or injustice. *Id.*  Factors going to the first prong include commingling of assets, sole ownership

22  of all the stock in a corporation by one individual or members of a family, the use of the same office

23

24  [5] As the alter ego issue is not unique to patent law, the Federal Circuit applies the law of the regional

25  circuit. *Insituform Techs., Inc. v. CAT Contracting, Inc.,* 385 F.3d 1360, 1380 (Fed. Cir. 2004) (citing
   *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574-75 (Fed. Cir. 1984)).  The current

26  Ninth Circuit and California state law test for whether corporations are alter egos of other corporations
   or individuals is the same.  *See SEC v. Hickey,* No. 01-17027, No. 01-17214, 2003 U.S. App. LEXIS

27  13563, at *10 (9th Cir. Cal. July 7, 2003); *Towe Antique Ford Found. v. IRS,* 999 F.2d 1387, 1391 (9th

28  Cir. 1993).

PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS
CASE NO.: C-07-5534-RS

HOWREY
LLP

1  location, employment of the same employees, treatment of assets of the corporation as an individual's

2  own, and the confusion of the records of the separate entities.  *See Associated Vendors, Inc. v. Oakland*

3  *Meat Co.,* 210 Cal. App. 2d 825, 838-41 (1962).  Here, the salient facts go beyond a *prima facie*

4  showing that Tesseron, vLogix, Varis Corporation, and Gauthier are alter egos.

5  a.    **Gauthier controls all assets and owns all stock.**

6          Gauthier was the founder and CEO of Varis, where he developed the technology in the patents-

7  in-suit.  *See* Blake Decl. at ¶2, Ex. A.  He subsequently sold Varis' assets to his other companies, first

8  to vLogix and then to Tesseron.  Gauthier Decl. at ¶ 8; *see* Blake Decl. at ¶¶2-4, Exs. A-C.  In fact,

9  Gauthier used Tesseron to conduct the "public" auction for the sale of Varis' assets, which resulted in

10 the sale to Gauthier's other company vLogix.  *See* Blake Decl. at ¶6, Ex. E.  vLogix "assumed all

11 ongoing operations of Varis Corporation," including "ongoing service and support operations for

12 VariScript customers."  Blake Decl. at ¶¶3-5, Exs. B-D.  Thus, the Court should reasonably infer that

13 Gauthier controls all the assets and owns all of the stock in these companies.

14         With regard to commingling of assets, the record shows that Gauthier has freely moved the

15 patents-in-suit through his corporations.  As the only executive and the owner of all the stock in these

16 companies, the Court may reasonably infer that Gauthier can freely arrange and apportion these assets

17 as he sees fit.  Further, any monetary gain stemming from the patents-in-suit or the technology therein

18 flows ultimately to Gauthier.  While this might not rise to the level of asset commingling, it does show

19 that Gauthier treats these companies as a single enterprise, which supports finding an alter ego

20 relationship.  *See Smith & Noble v. S. Jersey Vinyl, Inc.*, No. CV 97-7473 WDK, 1998 U.S. Dist.

21 LEXIS 15930, at *11 (C.D. Cal. May 11, 1998) (alter ego found for purposes of personal jurisdiction

22 where company was treated as individual's sole proprietorship).

23 b.    **Gauthier uses his residence as the office location for all of these
   companies.**

24

25         That Gauthier uses the same home office for his multiple corporations further demonstrates

26 their alter ego relationship.  *See Riddle v. Leuschner*, 51 Cal. 2d 574, 577 (1959) (shareholders had

27 unity of interest with two corporations having the same office location); *See also McCombs v.

28 *Rudman*, 197 Cal. App. 2d 46, 48 (1961) (attorney had same office as his alter ego corporation).  The

HOWREY
LLP

1  Ohio Secretary of State lists Tesseron's principle place of business as 8792 Maineville Rd., Maineville,

2  Ohio 45039, which also is Gauthier's personal residence.  Blake Decl. at ¶¶16 and 21, Exs. O and T.

3  vLogix, as a "licensee" of Tesseron, is impliedly still in business, even though no business by that

4  name is currently at vLogix's listed address.  *See* Gauthier Decl. at ¶11; Blake Decl. at ¶22.  The Court

5  should draw the reasonable inference that vLogix also is operated out of Gauthier's home as he is the

6  sole employee listed on vLogix's website, especially because the website's registration points to

7  Gauthier at Tesseron as its administrative contact.  *See* Blake Decl. at ¶¶2 and 9, Exs. A and H.

**c.    Gauthier is the only employee of these companies and he treats their assets as his own.**

8
9
10  As explained above, Gauthier appears to be the only employee listed for these companies.

11  Indeed, he characterizes Tesseron merely as "his holding company."  Gauthier Decl. at ¶8; *see* Blake

12  Decl. at ¶2, Ex. A.  Gauthier admits that he maintains sole control over the assets of Tesseron and

13  vLogix.  *See* Gauthier Decl. at ¶1; Blake Decl. at ¶¶ 2 and 7, Ex. A and Ex. F at 60:3-8.  This includes

14  the patents-in-suit.  For example, before he started his litigation campaign, Gauthier transferred the

15  patents-in-suit to Tesseron even though he had used Tesseron to conduct a "public" auction so that

16  vLogix could obtain those assets.

**d.    The public record manifests confusion between Varis, vLogix and Tesseron.**

17
18  Evidence of confusion between the companies is plentiful.  For example, at one point, anyone

19  trying to access Varis' website www.variscorp.com was forwarded to vLogix's website.  *Id.* at ¶19, Ex.

20  R.  Likewise, vLogix's website, www.vlogix.com, is directly linked to Tesseron.  The administrator

21  and contact for the vLogix website is Gauthier at Tesseron.  *Id.* at ¶9, Ex. H.  Furthermore,

22  www.tesseron.net is registered and owned by vLogix.  *See id.* at ¶20, Ex. S.

23  In short, every relevant factor demonstrates that Tesseron, vLogix, Varis, and Gauthier are alter

24  egos.[6]  Although discovery will undoubtedly uncover additional facts confirming the alter ego

25
26  _____

27  [6]The same evidence also supports jurisdiction over Tesseron under an agency theory. *See Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (for purposes of personal jurisdiction, the actions of an agent are attributable to the principal.); *see also Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405-

28  (Continued...)

relationship, the present record sufficiently demonstrates Tesseron's alter ego relationships, and, at a minimum, meets the required *prima facie* showing to defeat Tesseron's motion to dismiss.

### 2. Failure to recognize Tesseron's alter ego relationships would result in injustice.

Allowing Tesseron to escape this jurisdiction despite its own contacts and the contacts of its alter egos and predecessors would result in injustice. Specifically, it would be unjust to allow Gauthier to hide behind Tesseron to avoid this jurisdiction when Gauthier and his closely held companies purposefully availed themselves of this forum to commercially exploit the technology in the patents-in-suit. To do so would improperly condone forum shopping through the use of holding companies. *See Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 U.S. Dist. LEXIS 26802, *14-15 (N.D. Cal. Oct. 14, 2003) (enumerating interest of justice in preventing forum shopping).

### 3. Exercise of personal jurisdiction would not be unreasonable.

Given the alter ego relationships demonstrated above, Tesseron cannot show that this is one of the rare situations in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable. *See Coyle*, 340 F.3d at 1352 (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King*, 471 U.S. at 477)). Indeed, Tesseron's and its alter egos' contacts are much more persuasive than those in the *Coyle* case, where exercising jurisdiction was found reasonable. *See id.* at 1347. In fact, the contacts here include purposeful commercial exploitation of the patented technology in this district. Thus, exercising jurisdiction over Tesseron is even more reasonable than in *Coyle*. *See id.* at 1351-52.

Tesseron misplaces its reliance on *Red Wing Shoe Co.* That case had nothing to do with a defendant attempting to separate itself from the actions of its alter ego predecessors to avoid personal

---

(...Continued)

06 (9th Cir. 1994) (a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego or general agent); *see also Williams v. Canon, Inc.*, 432 F. Supp. 376, 380 (C.D. Cal. 1977) (liability under agency requires showing control and management of one corporation over another).

1  jurisdiction.  *See Red Wing*, 148 F.3d at 1355-60.  As explained above, Gauthier, Varis and vLogix

2  purposely availed themselves of this forum to exploit the very technology disclosed in the patents-in-

3  suit.  Thus, Tesseron cannot now show it would be unreasonable to exercise jurisdiction over it.

4       In sum, Tesseron's and its alter egos' contacts with California are more than enough for EFI to

5  meet its minimal burden of "mak[ing] a prima facie showing of jurisdiction to defeat [Tesseron's]

6  motion to dismiss" for lack of personal jurisdiction.  *Trintec Indus.*, 395 F.3d at 1282.  All of the

7  contacts highlighted in Section II. A *infra* relate to this action because they concern the patented

8  technology here.  Tesseron's contacts with California, imputed or otherwise, which are intimately

9  connected to the technology of the patents-in-suit, necessarily relate to EFI's claim that the patents-in-

10 suit are invalid, unenforceable, and not infringed by EFI.  *See id*.  Thus, exercise of jurisdiction over

11 Tesseron fully comports with the requirements of due process.  The Court should therefore deny

12 Tesseron's motion to dismiss.

13 **IV.    THE CONVENIENCE OF THE PARTIES AND WITNESSES, AND THE INTEREST**
14 **OF JUSTICE DEMAND THAT THIS COURT DENY TESSERON'S MOTION TO**
15 **TRANSFER THE CASE TO THE DISTRICT OF OHIO.**

16      Tesseron cannot meet its heavy burden to show that transfer of venue would be proper here.

17 *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal.

18 1981), aff'd, 726 F.2d 1381 (9th Cir. 1984); *See also Injen Tech. Co. v. Advanced Engine Mgmt.*, 270

19 F. Supp. 2d 1189, 1192-94 (S.D. Cal. 2003) (defendant bears a heavy burden to justify the necessity of

20 the transfer).  That is, Tesseron fails to demonstrate how a transfer would be more convenient and

21 would better serve the interest of justice.  *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56

22 (N.D. Cal. 1988).

23      None of the relevant factors pertaining to transfer under section 1404(a) favor Tesseron's

24 request to move this action to the Northern District of Ohio.  The relevant factors include: the

25 plaintiff's choice of forum, the relative ease of access to evidence, the availability and convenience for

26 witnesses, the relative degrees of court congestion, the local interest in deciding local controversies,

27 the potential conflicts of laws, and burdening citizens of an unrelated forum with jury.  *Decker Coal*

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE NO.: C-07-5534-RS

HOWREY LLP

1  *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Royal Queentex Enters. v. Sara*

2  *Lee Corp.*, No. C-99-4787MJJ, 2000 U.S. Dist. LEXIS 10139, at *2 (N.D. Cal. Mar. 1, 2000).

3        A.  **Convenience of the Witnesses and Location of Evidence Favor Northern California.**

4

5        The convenience of witnesses involved in this action, which is often the most important factor

6  in determining whether a transfer pursuant to § 1404 is appropriate, favors California. *See, e.g.*,

7  *Denver & Rio Grande W. Ry. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 560, 87 S. Ct. 1746, 18 L.

8  Ed. 2d 954 (1967) ("venue is primarily a matter of convenience of litigants and witnesses"); *Decter v.*

9  *MOG Sales, LLC*, No. CV 06-1738 MCE GGH, 2006 U.S. Dist. LEXIS 90415, at *7 (E.D. Cal. Dec.

10  13, 2006) ("The convenience of the witnesses is said to be the most important factor in considering a

11  transfer motion").  Indeed, Tesseron's infringement allegations against EFI and EFI's customers

12  depends on a finding that EFI's controllers infringe the patents-in-suit.  All of the witnesses related to

13  these print controllers are located within this district, including the inventors and manufacturers of the

14  print controllers.  Forcing a number of EFI's key technology workers to travel to Ohio would have a

15  negative impact on EFI's business.  Etheridge Decl. at ¶11.

16        Tesseron fails to carry its burden of demonstrating any inconvenience to witnesses.  *SEC v.*

17  *Rose Fund, LLC*, No. C 03-04593WHA, 2004 U.S. Dist. LEXIS 22491, at *9 (N.D. Cal. Jan. 9, 2004)

18  ("To demonstrate an inconvenience to witnesses, [Tesseron] must identify relevant witnesses, state

19  their location, and describe their testimony and its relevance."); *see also Royal Queentex*, 2000 U.S.

20  Dist. LEXIS 10139, at **7-8.  That is, Tesseron fails to identify any particular witnesses besides a

21  cursory description of "percipient witnesses for Varis and Tesseron," "attorneys who participated in

22  the procurement of the Tesseron Patent," and "the possible 30(b)(6) deponents for Tesseron." *Florens*

23  *Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002)  ("The party seeking a

24  transfer cannot rely on vague generalizations as to the convenience factors.  The moving party is

25  obligated to identify the key witnesses to be called and to present a generalized statement of what their

26  testimony would include.").  As Tesseron's sole shareholder, sole employee, and the named inventor of

27  all the patents-in-suit, Gauthier is likely the only Tesseron witness who would need to travel to

28  California for trial.  However, travel to California should be readily manageable for Gauthier

1    considering the current ease of travel and Gauthier's familiarity with air travel as the manager of Inc.

2    Jet Aviation Ltd.  *See* Blake Decl. at ¶23, Ex. U.

3        Further, it would not be inconvenient for the attorneys who participated in the procurement of

4    the Tesseron patents because the law firm representing Tesseron in this action, Taft Stettinius &

5    Hollister, is the same law firm that procured over half of the patents-in-suit.  *See* '028 patent; '568

6    patent; '325 patent; '016 patent; '387 patent.  This factor does not favor the transfer of this action as

7    Tesseron's Taft Stettinius & Hollister attorneys are either members of the California bar or have

8    recently been admitted *pro hac vice* to participate in this action.  Moreover, the improvements in

9    communication and transportation have reduced much of the burden of litigating in a distant forum.

10   *Decker*, 805 F.2d at 841.

11       Also, with regard to documentary evidence, this forum is much more convenient.  While this is

12   typically not a crucial inquiry for hard copy documents in view of modern means of document

13   production, it becomes crucial with regard to items that must be inspected in place.  Here, one of the

14   most important sources of evidence will be EFI's software source code database.  The content of this

15   system is highly confidential and will require inspection at EFI's facilities in Foster City under an

16   adequate protective order.  Moreover, with regard to typical, hard copy documentation, all of EFI's

17   engineering documents, user guides, marketing documents, sales records and the like are kept in Foster

18   City.  Etheridge Decl. at ¶9.  By contrast, Tesseron points to no such crucial evidence in Ohio.  Thus,

19   this factor weighs in favor of keeping the action here.

20       B.    **EFI's Forum Choice Favors Northern California.**

21       Tesseron fails to make the strong showing of inconvenience necessary to disturb EFI's choice

22   of forum.  *See, e.g.*, *Decker*, 805 F.2d at 843 ("The defendant must make a strong showing of

23   inconvenience to warrant upsetting the plaintiff's choice of forum."); *Florens Container*, 245 F. Supp.

24   2d at 1092 ("[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in

25   proceedings under this section, and courts generally will not transfer an action unless the

26   'convenience' and 'justice' factors strongly favor venue elsewhere") (citing *Securities Investor Prot.*

27   *Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp.

28

1   2d 1077, 1082 (C.D. Cal. 2002) ("There is a strong presumption in favor of the plaintiff's choice of

2   forum," *citing Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000)).

3       Additionally, EFI's choice of forum must be given greater weight as a resident of this judicial

4   district.  *See, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)

5   ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely

6   be disturbed"); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999)

7   ("[P]laintiff's choice of its home forum is given more weight than its choice of a foreign forum"); *Orb*

8   *Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998) ("[T]he plaintiff's

9   choice is generally accorded more deference where there is a material connection or significant contact

10  between the forum state and the underlying events allegedly underlying the claim, or where the

11  plaintiff is a resident of the forum district") (internal citation omitted).  Tesseron cannot make a

12  showing of inconvenience to overcome the strong presumption in favor EFI's choice of forum.

13      **C.    The Interest of Justice Favors Northern California.**

14      This forum is the most efficient forum to obtain a complete resolution between the parties as

15  this is the only action where all the patents-in-suit are at issue.  Only two of the eight patents-in-suit—

16  the same patents with which Tesseron has been threatening EFI and its customers—are at issue in the

17  Ohio Action.  *See* Blake Decl. at ¶18, Ex. Q at ¶¶ 20 and 35.

18      EFI, as the manufacturer of the accused products, and Tesseron, as the patent holder, are the

19  true parties in interest, and an action between them is to be favored over an action commenced in

20  another district against a reselling customer of the manufacturer.  *See William Gluckin & Co. v. Int'l*

21  *Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969).  Indeed, courts have given preference to a

22  manufacturer's declaratory judgment action when the other action filed is against a mere customer.  *Id.*

23  Tesseron admits that the other parties to the Ohio action, K-M and Ricoh, are merely EFI's

24  downstream customers.  Motion, Docket No. 11 at 12.  As such, proceeding with this action here is

25  more favorable because it will completely resolve Tesseron's allegations of infringement and EFI's

26  declaratory claims of non-infringement, invalidity, and unenforceability.  Ultimately, this Court's

27  resolution of these issues will render the action in Ohio moot.  The Ohio action, however, cannot do

28  the same for this action.

PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS
CASE NO.: C-07-5534-RS

1    Tesseron misplaces its reliance on *Gerin v. Aegon USA, Inc.* because the relevant jurisdictional

2    facts are very different.  *Gerin v. Aegon USA, Inc.,* No. C 06-5407 SBA, 2007 WL 1033472, at *1-3

3    (N.D. Cal. Apr. 3, 2007).  *Gerin* was a class action case filed by non-resident plaintiffs with no

4    connection to the forum.  *Id.*  Indeed, none of the operative facts occurred within the forum and the

5    forum had no interest in the parties or subject matter.  *Id.*  In light of those facts, and because the case

6    was a class action, the district court gave minimal deference to the plaintiff's choice of forum to

7    prevent forum shopping.  *Id.* at *7.  Additionally, the plaintiffs conceded that the action involved the

8    same claims and the same parties as a Georgia action that was on appeal.  *Id.* at *5.  Unlike *Gerin*, this

9    case is not a class action.  There are no previously filed cases between the parties with identical claims.

10    EFI filed this action in its home forum as opposed to forum shopping.  Most importantly, contrary to

11    the statements made in Tesseron's Motion, this action and the Ohio action do not present identical

12    issues (as was the case in *Gerin*).

13    Likewise, Tesseron's citation to *Continental Grain Co. v. Barge FBL-585,* for avoiding

14    duplicative litigation, is misplaced.  In *Continental*, opposing parties filed identical claims in different

15    forums, disputing who was at fault for the destruction of a barge.  *Cont'l Grain Co. v. Barge FBL-585,*

16    364 U.S. 19, 26, 80 S. Ct. 1470, 4 L. Ed. 1540 (1960).  Again, this action and the Ohio action are not

17    identical.  On the contrary, this case involves six patents that are not at issue in Ohio.  The interests of

18    justice therefore weigh in favor of EFI's forum choice.

19    **D.    The Relative Court Congestion Favors the Northern District of California.**

20    The factor of relative court congestion and time to trial favors this district.  The most

21    appropriate measure of court congestion is the median time from filing to disposition of civil cases.

22    *See Strigliabotti v. Franklin Res., Inc.*, No. C 04-0883 SI, 2004 WL 2254556, at *6 (N.D. Cal. Oct. 5,

23    2004).  The most recent measure of this statistic is 7.4 months for this district, compared to 13.5

24    months for the Northern District of Ohio.  *See* Blake Decl. at ¶¶24-25, Exs. V-W.  Because this district

25    is the less congested one, this factor weighs against transfer.

26    **E.    The Local Interest in Deciding EFI's Controversy Favors Northern California.**

27    Because EFI is based in the Northern District of California, this District has a strong, local

28    interest in this case.  *See Gulf Oil Corp.,* 330 U.S. at 509 ("There is a local interest in having localized

1    controversies decided at home."). EFI has close to 500 employees in California. Etheridge Decl. at ¶8.

2    Tesseron has no products and a single employee. Gauthier Decl. at ¶¶1 and 10. Unsurprisingly,

3    therefore, Tesseron has not alleged that the Northern District of Ohio has any particular local interest

4    in the case. This factor therefore weighs against a transfer.

5            Rather than considering the interest of justice, Tesseron merely seeks to shift the

6    inconveniences. Tesseron, however, fails to demonstrate any pressing financial hardship. Tesseron's

7    assertion that EFI is in a better position to shoulder the bill is irrelevant. Indeed, Tesseron started this

8    dispute by badgering EFI and its customers with allegations of infringement. Tesseron cannot now

9    attempt to upset EFI's choice of forum with empty assertions that the cost of litigation is an

10   inconvenience. Tesseron has made no showing like that in *Royal Queentex Enterprises*, where the

11   small plaintiff company would have had to shut down if forced to litigate outside its home state. *Royal*

12   *Queentex Enterprises*, 2000 U.S. Dist. LEXIS 10139, at *18.

13          In sum, none of the transfer factors weigh in Tesseron's favor. At most, the inconvenience

14   caused by some of the factors will be neutral. Because Tesseron has not met its heavily burden for

15   showing that transfer would be proper, the Court should deny Tesseron's motion to transfer.

16   **V.    AT THE VERY MINIMUM, THIS COURT SHOULD GRANT EFI JURISDICTIONAL DISCOVERY.**

17

18   EFI firmly believes that the foregoing demonstrates that Tesseron is subject to the jurisdiction of this

19   Court. EFI notes that the evidence it adduced was gathered without discovery. Given what EFI found

20   in the public record, it believes that jurisdictional discovery, if necessary, would reveal further relevant

21   contacts. Accordingly, should the Court find that the evidence already presented is somehow deficient,

22   EFI respectfully requests that the Court permit EFI to conduct jurisdictional discovery. Such discovery

23   "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are

24   controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. DOI*, 342

25   F.3d 1080, 1093 (9th Cir. 2003); *see also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d

26   406, 430 n.24 (9th Cir. 1977); *Trintec*, 395 F.3d at 1283 (finding a plaintiff is entitled to jurisdictional

27   discovery where the existing record is "inadequate" to support personal jurisdiction and "a party

28   demonstrates that it can supplement its jurisdictional allegations through discovery"). In particular,

EFI believes that it could further supplement its jurisdictional allegations, if necessary, by conducting discovery into Tesseron's financial dealings with Silicon Valley Bank as well as vLogix agreements and dealings with Network Solutions.  Also, discovery into the locations and on-going support of VariScript products in California would provide supplemental evidence of Tesseron's contacts with this forum.

         In any event, EFI should not be bound solely by the contents of Tesseron's affidavit or conclusions that the contacts disclosed therein are insufficient to establish personal jurisdiction.  Instead, EFI "should be allowed to explore the quality, quantity and nature of all of [Tesseron's] contacts with the forum and draw its own conclusions and proffer its own arguments as to whether [Tesseron] should be subject to personal jurisdiction in this Court." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674 (S.D. Cal. 2001).  Therefore, if the Court does not find the current record sufficient, the Court should grant EFI leave to conduct limited jurisdiction discovery.

## VI.    CONCLUSION

         The Court should deny Tesseron's motion to dismiss or in the alternative transfer because Tesseron is subject to the jurisdiction of this Court, and the interest of justice and the convenience of the parties favor this jurisdiction.  In the alternative, the Court should grant EFI an opportunity to conduct limited jurisdictional discovery.


DATED:  January 11, 2008              HOWREY LLP

                                       Russell B. Hill
                                       Jesse D. Mulholland
                                       Elizabeth Yang


                                       By:  _____s/ Jesse D. Mulholland_____

                                                Jesse D. Mulholland

                                       Attorneys for Plaintiff
                                       ELECTRONICS FOR IMAGING, INC.