JON MICHAELSON (SBN 83815)
jon.michaelson@klgates.com
BEN BEDI (SBN 172591)
ben.bedi@klgates.com
**KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**
630 Hansen Way
Palo Alto, California 94304
Telephone: (650) 798-6700
Facsimile: (650) 798-6701

KEVIN W. KIRSCH (SBN 166184)
kirsch@taftlaw.com
DAVID H. WALLACE, *admitted pro hac vice*
dwallace@taftlaw.com
**TAFT, STETTINIUS & HOLLISTER, LLP**
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205

Attorneys for Defendant
TESSERON, LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONICS FOR IMAGING, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TESSERON, LTD., <br><br> Defendant. | Case No. CV07-5534 CRB <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT TESSERON, LTD'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER** <br><br> Hearing Date: February 1, 2008 <br> Time: 10:00 a.m. <br> Judge: Charles R. Breyer |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A. The exercise of personal jurisdiction over Tesseron would violate due process. ................................................................................................................... 2

        1. EFI admits that Tesseron, alone, does not have the necessary contacts with California to establish jurisdiction. ............................................. 2

        2. EFI seeks, instead, to establish jurisdiction over Tesseron using an extreme remedy by imputing contacts from alleged alter egos. .......... 2

            a. EFI has not established that the failure to disregard the separate entities of Tesseron, vLogix, Varis, and Gauthier would result in fraud or injustice. ................................................................................ 3

            b. EFI has failed to establish a unity of interest such that the separate personalities of Tesseron, Varis, and vLogix no longer exist. ........................................................................................................ 4

        3. The contacts of Varis, vLogix, and Gauthier, even if imputed to Tesseron, are still not sufficient to subject Tesseron to personal jurisdiction in the forum state. ............................................................. 7

    B. Venue is proper in the Northern District of Ohio ....................................... 9

    C. EFI should not be permitted to conduct highly invasive alter ego discovery regarding three separate corporations and an individual having already conceded an appropriate alternate forum. .............................................. 12

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Cases                                                                                                                Page

*Agra Chem. Distrib. Co., Inc. v. Marion Lab., Inc.*, 523 F. Supp. 699 (W.D.N.Y. 1981) .................................................................................................................................. 7

*AST Sports Science, Inc. v. CLF Distrib. Ltd.*, No. 05-CV-01549, 2006 WL 686483 (D. Colo. March 16, 2006) .................................................................................................. 7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ............ 10

*Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006) ............................................................................................................... 2

*Butler v. Adoption Media, LLC*, 486 F.Supp.2d 1022 (N.D.Cal. 2007) ............................ 2

*Calvert v. Huckins*, 875 F.Supp. 674 (E.D.Cal. 1995) .................................................. 2, 3

*Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) ........................... 9

*Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92 (9th Cir. 1988) ........... 3

*Hockey v. Medhekar*, 30 F.Supp.2d 1209 (N.D.Cal.1998) ............................................... 3

*Hokama v. E.F. Hutton & Company, Inc.*, 566 F.Supp. 636 (C.D.Cal.1983) ................... 3

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001) ............................................... 2

*Institute of Veterinary Pathology, Inc.*, 116 Cal.App.3d 111, 172 Cal.Rptr. 74 (1981) .... 5

*Lindgren v. GDT, LLC* 312 F. Supp.2d 1125 (S.D. Iowa 2004) ........................................ 7

*Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326 (9th Cir.1978) ...................... 3

*Mesler v. Bragg Mngmt Co.*, 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601 (1985) ..... 3

*Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 11 Cal.Rptr.2d 918 (1992) ..... 3, 5

*Mutli Tech. Indus., LLC v. Huhtamaki Forchheim*, No. 05-cv-403-SM, 2007 WL 433368 (D.N.H. Feb. 7, 2007) ......................................................................................... 8

*Nordica USA Corp. v. Ole Sorenson*, 475 F. Supp.2d 128 (D.N.H. 2007) ........................ 8

*Oncology Therapeutics Network Connection v. Virginia Hematology*, No. C 05-3033, 2006 WL 334532 (N.D. Cal. Feb. 10, 2006) ................................................................... 3

*Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564 (Fed. Cir. 1984) .......... 3

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 2006 WL 1897091 (9th Cir. Jul. 12, 2006) ............................................................................................................................ 8, 12

*Potts v. Dyncorp Int'l, LLC*, 465 F.Supp.2d 1254 (M.D. Ala. 2006) ................................. 8

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, No. C05-04039, 2006 WL 269951 (N.D. Cal. Feb. 2, 2006) .................................................................................................. 12

*Red Wing Shoe Co. v. Hockerson-Halberstandt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) .................................................................................................................................. 2, 9

*Rolling Thunder, LLC v. Indian Motorcycle Int'l, LLC*, No. 2:07-CV-52 TS, 2007 WL 2327590 (D. Utah Aug. 10, 2007) ............................................................................. 8

*Roman Catholic Archbishop v. Sup.Ct.*, 15 Cal.App.3d 405, 93 Cal.Rptr. 338 (1971) ...... 4

*Sonora Diamond Corp. v. Superior Court of Tuolumne County*, 83 Cal.App.4th 523, 99 Cal.Rptr.2d 824 (2000) ............................................................................................ 2, 4

*Terracom v. Valley Nat. Bank*, 49 F.3d 555 (9th Cir. 2002) .............................................. 12
*Towe Antique Ford Found. v. IRS*, 999 F.2d 1387 (9th Cir.1993) ........................................ 3
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................... 10

**REPLY IN SUPPORT OF TESSERON'S MOTION TO DISMISS**
Case No. CV07-5534 CRB

I. **INTRODUCTION**

Electronics for Imaging, Inc. ("EFI") has failed to meet its burden to establish that the exercise of personal jurisdiction over Tesseron, Ltd. ("Tesseron") comports with the requirements of due process. Indeed, the only piece of evidence that EFI has offered regarding Tesseron's contacts in California is the one letter Tesseron sent to EFI in 2005. This contact does not subject Tesseron to jurisdiction in California, however, because the sending of this letter, without more, is not sufficient to satisfy the requirements of due process. Because there is no other evidence of Tesseron's contacts with California, Tesseron is not subject to personal jurisdiction here.

In a last-ditch argument to avoid dismissal, EFI contends that the contacts of Varis Corporation ("Varis"), vLogix, Inc. ("vLogix"), and Forrest Gauthier should be imputed to Tesseron under an alter-ego theory, and that with these additional contacts, the exercise of personal jurisdiction would not violate due process. But EFI has failed to carry its burden to demonstrate such unity of interest and ownership exists between Varis, vLogix, Gauthier, and Tesseron that separate personalities no longer exist and that a failure to disregard the separate entities would result in fraud or injustice. As such, their conduct cannot be imputed to Tesseron to create personal jurisdiction. Moreover, even if their contacts were imputed to Tesseron, these additional contacts are still not sufficient to give rise to personal jurisdiction. For these reasons and those that follow, Tesseron is not subject to personal jurisdiction in the Northern District of California and its motion to dismiss should be granted.

With regard to Tesseron's alternative motion to transfer, EFI rebutted its own bold proclamation in its Opposition (Opp., p. 1, 2), that this is the "only action . . . (2) where the two real parties in interest, Tesseron as the patentee and EFI as the manufacturer of the allegedly infringing technology, are subject to personal jurisdiction," when, on January 16th, EFI filed an Answer, admitting personal jurisdiction, in the Northern District of Ohio action involving the same parties, technology, and patent families.[1] As such, there is clearly an acceptable forum for resolution of these issues without resort to the extreme remedy requested by EFI.

---

[1] The action in the Northern District of Ohio is entitled, Tesseron, Ltd. v. Konica Minolta Business Solutions U.S.A., Inc., et al., N.D. Ohio Case No. 1:07-cv-02947.

1

**REPLY IN SUPPORT OF TESSERON'S MOTION TO DISMISS**
Case No. CV07-5534 CRB

II. **ARGUMENT**

A. **The exercise of personal jurisdiction over Tesseron would violate due process.**

1. **EFI admits that Tesseron, alone, does not have the necessary contacts with California to establish jurisdiction.**

EFI admits that Tesseron's one letter sent to EFI in 2005 does not subject Tesseron to specific jurisdiction, because the sending of such a letter, without more, is not sufficient to satisfy the requirements of due process. (Opp., p. 8); *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006) (holding that cease-and-desist letters, without more, were not sufficient contacts with the forum state); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361 (Fed. Cir. 2001); *Red Wing Shoe Co. v. Hockerson-Halberstandt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). Tesseron has not engaged in any other activities in California and has no other contacts with parties in the forum state. (Gauthier Decl., ¶¶ 10, 13, 14). EFI has not and cannot establish otherwise. Thus, the exercise of jurisdiction over Tesseron would violate due process.

2. **EFI seeks, instead, to establish jurisdiction over Tesseron using an extreme remedy by imputing contacts from alleged alter egos.**

In a distressed attempt to subject Tesseron to this Court's jurisdiction, however, EFI argues that the court should pierce Tesseron's corporate veil and impute contacts from two separate corporations and one individual, vLogix, Varis, and Gauthier, to Tesseron under the alter-ego doctrine. "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court of Tuolumne County*, 83 Cal.App.4th 523, 538-539, 99 Cal.Rptr.2d 824 (2000); *see also Calvert v. Huckins*, 875 F.Supp. 674 (E.D.Cal. 1995)("Disregarding the corporate entity is recognized as an extreme remedy . . . ."). The alter-ego doctrine "prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Sonora Diamond*, 83 Cal.App.4th at 538, 99 Cal.Rptr.2d 824; *Butler v. Adoption Media, LLC*, 486 F.Supp.2d 1022 (N.D.Cal. 2007).

To establish that one company is the alter ego of another company, two requirements must be met: (1) that there is such unity of interest and ownership that the separate personalities of the two corporations no longer exist and (2) that failure to disregard the corporation would result in fraud or

injustice. *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92 (9th Cir. 1988); *Mesler v. Bragg Mngmt Co.*, 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601 (1985).[2] It is the burden of the party asserting alter ego to overcome the presumption of the separate existence of the corporate entities. *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 338 (9th Cir.1978). At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss. *Hokama v. E.F. Hutton & Company, Inc.*, 566 F.Supp. 636, 647 (C.D.Cal.1983); *Hockey v. Medhekar*, 30 F.Supp.2d 1209, 1211 n. 1 (N.D.Cal.1998).

Here, EFI has failed to set forth sufficient evidence to satisfy either requirement of the alter-ego test and, therefore, the Court should not apply this extreme remedy.

### a. EFI has not established that the failure to disregard the separate entities of Tesseron, vLogix, Varis, and Gauthier would result in fraud or injustice.

EFI has not produced any evidence to satisfy the second requirement for alter-ego liability. Under this element, the allegation of alter ego can be sustained only when failure to disregard the separate entities would result in fraud or injustice. *See, e.g., Calvert v. Huckins,* 875 F.Supp. 674 (E.D.Cal. 1995); *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1212, 11 Cal.Rptr.2d 918 (1992). Some evidence of bad-faith conduct or wrongdoing is required before concluding that an inequitable result justifies an alter-ego finding. *Oncology Therapeutics Network Connection v. Virginia Hematology*, No. C 05-3033, 2006 WL 334532, at *19 (N.D. Cal. Feb. 10, 2006); *Mid-Century Ins. Co.*, 9 Cal.App.4th at 1212, 11 Cal.Rptr.2d 918.[3]

Here, EFI has failed to allege that Tesseron, or that vLogix, Varis, or Gauthier on behalf of Tesseron, have engaged in conduct motivated by bad faith and/or fraudulent intent. In addition, EFI has not identified any right that will be defeated if Tesseron, vLogix, Varis, and Gauthier are allowed to maintain separate identities. Instead, EFI's sole argument is that it will be harmed if this action is

---

[2] Because the alter ego issue is not unique to patent law, the law of the regional circuit applies. *Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1574-75 (Fed. Cir. 1984). The Ninth Circuit applies the law of the forum state in determining alter ego. *Towe Antique Ford Found. v. IRS,* 999 F.2d 1387, 1391 (9th Cir.1993).

[3] Copies of all unreported cases cited herein are included at Exhibit A.

dismissed because it will not be able to pursue its declaratory judgment action in this forum. Being unable to pursue a declaratory judgment action in the Northern District of California is hardly the type of injustice contemplated under the alter-ego analysis, especially considering that Tesseron is not subject to personal jurisdiction in this forum. Further, EFI would not suffer any real harm if this action is dismissed because the dismissal would be without prejudice and EFI would still be able to assert its claims against Tesseron in a proper forum.[4] Thus, the purported harm that EFI will suffer is illusory, and EFI cannot satisfy the second element of the alter-ego test.

### b.  EFI has failed to establish a unity of interest such that the separate personalities of Tesseron, Varis, and vLogix no longer exist.

EFI has also failed to produce any evidence that a unity of interest exists between Tesseron, vLogix, Varis, and Gauthier such that the separateness between these entities ceases to exist. Factors to be considered in determining if there is a unity of interest include the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. *Roman Catholic Archbishop v. Sup.Ct.*, 15 Cal.App.3d 405, 411, 93 Cal.Rptr. 338 (1971). Other factors include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. *Sonora Diamond,* 83 Cal.App.4th at 539, 99 Cal.Rptr.2d 824. No one characteristic governs a finding of alter ego, and the court must look to all of the circumstances to determine whether the doctrine should be applied. *Id.*

Applying these factors to this case, it is clear that EFI has failed to meet its burden to demonstrate that Varis, vLogix, and Gauthier are alter egos of Tesseron. EFI does not contend – and there is no evidence in the record to establish – that Tesseron, vLogix, Varis, and/or Gauthier: (1) commingled assets or funds; (2) guaranteed each other's debts; (3) disregarded corporate formalities, (4) were undercapitalized; (5) did not maintain separate corporate books and records; or (6) used one

---

[4] Contrary to EFI's conclusory allegations, there is no evidence of improper forum shopping by Tesseron. Tesseron has asserted all of its patent infringement actions in the Northern District of Ohio. EFI commenced the instant litigation, not Tesseron, and it is EFI that is attempting to forum shop to avoid litigation in the Northern District of Ohio.

or more of these entities as a mere shell, instrumentality, or conduit for the business affairs of another of the entities.

Instead, EFI asks the Court, based on little or no evidence, to jump to the conclusion that there is a unity of interest because Tesseron, vLogix, and Varis are all associated with Forrest Gauthier. Specifically, EFI contends that: (1) Gauthier controls all assets and owns all stock of Tesseron, vLogix, and Varis; (2) Gauthier uses his residence as the office location for all of these companies; (3) Gauthier is the only employee of these companies; and (4) there is confusion between Tesseron, vLogix, and Varis. Even if all of these assertions were supported by evidence—which they are not—they would only establish the inter-corporate connections between Tesseron, vLogix, and Varis. This evidence is not sufficient to warrant the application of the alter-ego doctrine.

Turning to its specific contentions, EFI asserts that Gauthier owns all of the stock in Tesseron, vLogix, and Varis, and that this evidences an alter-ego relationship. This assertion is factually incorrect. Varis, which ceased operations in 2001, was owned by other individuals and a number of venture-capital groups; Gauthier owned only approximately 35% of the stock. (Second Declaration of Forrest Gauthier ("Gauthier Decl. 2"), ¶¶ 6,7).[5] Further, courts have cautioned against relying too heavily in isolation on the factor of concentration of ownership and control. *Mid-Century Ins. Co.*, *supra*, 9 Cal.App.4th at 1213, 11 Cal.Rptr.2d 918; *Institute of Veterinary Pathology, Inc.*, 116 Cal.App.3d, 111, 119-20, 172 Cal.Rptr. 74 (1981) (alter-ego liability is not established by stock ownership or interlocking directorates alone). With this in mind, there is no evidence that Gauthier manipulated these companies or used them as shells for his own activities. Thus, the fact that Gauthier has held an ownership interest in Tesseron, vLogix, and Varis does not support an alter ego finding.

EFI also contends that Gauthier controls all of the assets of Tesseron, vLogix, and Varis and treats these companies as a single enterprise. As evidence of this control, EFI alleges that in 2000, Varis sold its assets to vLogix at a public auction, and that vLogix then sold the assets to Tesseron. (Opp., p. 10). These assertions are again unsupported. In 2001, Tesseron purchased Varis's

---

[5] The declaration of Forrest Gauthier dated January 18, 2008, is attached as Exhibit B.

5

promissory note from Silicon Valley Bank and foreclosed on the note. (Gauthier Decl. 2, ¶ 9). As part of the foreclosure, Tesseron conducted a public auction to sell all of Varis's assets. (Gauthier Decl. 2, ¶ 10). Through that auction, Tesseron acquired all of Varis's assets, including Varis's patents. (Gauthier Decl. 2, ¶¶ 11, 12). Later in 2001, Tesseron sold all of the tangible assets to vLogix, but retained the patents. (Gauthier Decl. 2, ¶¶ 14, 15). Tesseron then licensed the patents to vLogix in 2003. (Gauthier Decl. 2, ¶ 16). EFI admits that these facts do not rise to the level of asset commingling. (Opp., p. 10). Indeed, there was no commingling of assets at any time; the assets were transferred by each company pursuant to legally proper procedures. The only thing clearly established by this evidence is that Gauthier treated these entities as separate and distinct legal entities. Thus, this evidence does not support the finding of an alter-ego relationship between Tesseron, vLogix, and Varis.

EFI also incorrectly asserts that the office locations for Tesseron, vLogix, and Varis are the same. When Varis was in business, its office was located at 7500 Innovation Way, Mason, Ohio 45040. (Gauthier Decl. 2, ¶ 5.) Varis ceased to operate in 2001 and closed its office at that time. (Gauthier Decl. 2, ¶ 13.) Further, EFI has presented no evidence that vLogix and Tesseron share an office; rather they simply ask the Court to "infer" as much. (Opp., p. 11.)

EFI's assertion that Gauthier is the sole employee of Tesseron, vLogix, and Varis is equally meritless. Gauthier is the president of Tesseron. (Gauthier Decl., ¶ 1.) He was also employed by vLogix and Varis. (Gauthier Decl. 2, ¶¶ 2, 16.) But both vLogix and Varis had additional employees. (Gauthier Decl. 2, ¶¶ 5, 16.) Thus, contrary to EFI's assertions, Gauthier was not the sole employee for each of these companies.

Finally, EFI argues that there is evidence of confusion between these companies, based on their existing or former websites, and that this is sufficient to establish a unity of interest between the companies. EFI cites to no case law in support of this novel argument. Even if it did, this argument is nothing more than a red-herring. It is clear that before Varis ceased operating, it was a separate and distinct legal entity, and the fact that its website may have linked users to vLogix's website after it closed does not change this fact. Further, the apparent inadvertent listing of Gauthier at Tesseron

as a contact for the vLogix domain registration and inadvertent listing of vLogix as the registrant for Tesseron's website does not somehow blur the lines between these companies.

In sum, EFI has failed to meet its burden on both of the elements necessary to support alter-ego jurisdiction, and therefore cannot satisfy the "other contacts" necessary to subject Tesseron to the personal jurisdiction of this Court. Accordingly, the Court should dismiss this matter for lack of personal jurisdiction.

### 3. The contacts of Varis, vLogix, and Gauthier, even if imputed to Tesseron, are still not sufficient to subject Tesseron to personal jurisdiction in the forum state.

Even if EFI had established that Varis, vLogix, or Gauthier were Tesseron's alter egos, Tesseron still does not have sufficient minimum contacts with California to subject it to personal jurisdiction here. All of Varis' contacts with California are over seven years old and are therefore too stale to confer jurisdiction. vLogix's contacts with California are either similarly stale or so *de minimis* that they do not confer jurisdiction. And the contacts that EFI attributes to Gauthier personally are factually incorrect.

A plaintiff may not rely on stale contacts that occurred long before the transaction at issue; "[t]he pertinent time frame is keyed to the date the complaint is filed." *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, No. 05-CV-01549, 2006 WL 686483, *2 (D. Colo. March 16, 2006).[6] "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a period of time immediately prior to the filing of the lawsuit." *Lindgren v. GDT, LLC* 312 F. Supp.2d 1125, 1129 (S.D. Iowa 2004) (citing cases). *See also Agra Chem. Distrib. Co., Inc. v. Marion Lab., Inc.*, 523 F. Supp. 699, 702 (W.D.N.Y. 1981) (contacts are measured at the time the complaint was served).

Here, all of Varis' contacts with California ceased when Tesseron purchased substantially all of its assets, including its patents, nearly seven years ago, in 2001. Likewise, vLogix's contract with George Lithograph ended by 2003 when George Lithograph declared bankruptcy. (Gauthier Decl. 2,

---

[6] While *AST Sports* deals with general jurisdiction, the distinction is irrelevant because EFI seeks to impose jurisdiction based on contacts not related to the transaction at issue.

7

**REPLY IN SUPPORT OF TESSERON'S MOTION TO DISMISS**
Case No. CV07-5534 CRB

1  ¶ 17). Thus, by the time EFI filed its complaint in this action, neither vLogix nor Varis had any
2  substantial contacts with California for over four years.
3        Furthermore, contrary to EFI's assertion, Gauthier did not own any residences in California.
4  The residences EFI points to were owned by Gauthier's relatives, not Gauthier. (Gauthier Decl. 2, ¶
5  18). In any event, because EFI alleges that the properties are only former residences, they are
6  necessarily insufficient to confer personal jurisdiction on Gauthier or Tesseron. *Potts v. Dyncorp*
7  *Int'l, LLC*, 465 F.Supp.2d 1254 (M.D. Ala. 2006).
8        EFI's primary evidence of current contacts with California by any of Tesseron, Varis,
9  vLogix, or Gauthier is the registration of vLogix's domain name with a California-based company.
10  But registering a domain name in a foreign state for an essentially passive website does not subject
11  one to personal jurisdiction there more generally. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 2006
12  WL 1897091, *2 (9th Cir. Jul. 12, 2006), see also *Rolling Thunder, LLC v. Indian Motorcycle Int'l,*
13  *LLC*, No. 2:07-CV-52 TS, 2007 WL 2327590 (D. Utah Aug. 10, 2007) (holding that passive website
14  and cease-and-desist letters did not confer personal jurisdiction). Indeed, because a website is
15  unrelated to an action involving patent rights, it fails to satisfy the "arising out of" prong of the due
16  process analysis and does not satisfy the other contacts necessary to confer personal jurisdiction.
17  *Mutli Tech. Indus., LLC v. Huhtamaki Forchheim*, No. 05-cv-403-SM, 2007 WL 433368, *3 (D.N.H.
18  Feb. 7, 2007). Thus, Tesseron's domain-name registration does not subject it to jurisdiction in
19  California.
20        Tesseron's software license to Moore Wallace does not establish jurisdiction in California
21  because EFI has not presented any evidence that Moore Wallace is Tesseron's exclusive licensee or
22  that Moore Wallace even uses Tesseron's invention in California. *See Nordica USA Corp. v. Ole*
23  *Sorenson*, 475 F. Supp.2d 128, 136-37 (D.N.H. 2007). Nor is jurisdiction established by the Graphic
24  Communication Department at California Polytechnic State University's ("Cal Poly") alleged use of
25  Tesseron's technology. EFI's evidence shows that this technology was provided by Xeikon, a Varis
26  licensee. Neither Tesseron nor vLogix knows how Cal Poly how obtained that machine, and they are
27  not currently receiving any revenue from it. (Gauthier Decl. 2, ¶¶ 19-20.) Thus, EFI has not
28

8
REPLY IN SUPPORT OF TESSERON'S MOTION TO DISMISS
Case No. CV07-5534 CRB

established any "other contacts" with California that would subject Tesseron to jurisdiction here. *Red Wing Shoe*, 148 F.3d at 1361-62.

In addition, *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) is distinguishable from the facts of this case because the defendants there had a series of substantial contacts with EFI itself in California in an attempt to license the technology. There, the defendants solicited EFI in late 1999 or 2000, then entered into a nondisclosure agreement with EFI in January of 2000. *Id.* at 1347. After signing the nondisclosure agreement, "defendants solicited EFI in California **_repeatedly_**," including having their California attorney update EFI on the progress of the patent application several different times and actually having two representatives visit EFI's facility in December 2000 to demonstrate the technology. *Id.* (emphasis added). In fact, even after EFI indicated in 2001 that it was not interested in licensing the technology, the defendants continued to contact EFI to report further developments in the patent application process and developments in the technology. *Id.* The defendants also continued to solicit EFI and, during the week of November 26, 2001, made several telephone calls to EFI alleging that EFI was infringing its patent and threatening to sue. *Id.* at 1347-48. Here, in contrast, Tesseron's only alleged contact with EFI is the 2005 letter. (See Ethridge Decl. ¶ 2.) Further, in stark contrast to *Coyle,* EFI even alleges that Tesseron never responded to multiple letters from EFI's General Counsel "requesting information regarding how EFI products relate to Tesseron's Patents." *Id.* Tesseron's alleged single contact is certainly not as extensive as the defendants' contacts in *Coyle. Coyle* therefore provides no basis for asserting jurisdiction over Tesseron here.

**B.    Venue is proper in the Northern District of Ohio.**

Even if it is determined that Tesseron is subject to the personal jurisdiction of this Court, this action should be transferred to the Northern District of Ohio because it is the most convenient forum. EFI contends that a transfer to the Northern District of Ohio is improper arguing that the Northern District of California is the only district where both Tesseron and EFI are subject to personal jurisdiction. (Opp., p. 1-2.) Contrary to this argument, however, EFI conceded on January 16, 2008,

1   that it is subject to personal jurisdiction in Ohio by filing an answer and affirmative defenses to
2   Tesseron's complaint in the Northern District of Ohio action.[7]

3         Furthermore, Ohio's interests in this dispute are significant, and it is both fair and reasonable
4   for the Northern District of Ohio to exercise personal jurisdiction over EFI. Ohio has a compelling
5   interest in discouraging injuries that occur within its borders – namely, the sale of a product that
6   infringes on a patent held by an Ohio corporation. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
7   21 F.3d 1558, 1568 (Fed. Cir. 1994). Ohio also has a substantial interest in cooperating with other
8   states in order to provide a forum for efficiently litigating claims of patent infringement. It would be
9   efficient and logical to join this action to the pending Ohio action because EFI and several of its
10  customers are already parties to that action. Tesseron will, therefore, be able to seek redress in Ohio
11  for sales of the infringing software to consumers in a single action, and in turn, California will be
12  spared the burden of providing a forum for Tesseron to seek redress for these infringing sales. EFI
13  will also be protected from having to litigate multiple suits in different forums on the same topic of
14  patent infringement. *See id.*

15        Moreover, the burden on EFI is not significant. EFI's argument that the location of the
16  witnesses and the evidence favor the Northern District of California are outweighed with the
17  advances of modern technology, particularly where, as here, they will be defending an action in the
18  Northern District of Ohio. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980). In
19  addition, there is no evidence that EFI will be unable to defend itself in Ohio. The same counsel
20  represent EFI in this case and in the Northern District of Ohio case, and EFI has also retained local
21  counsel. Because it has sophisticated national and international business dealings, it would not be
22  significantly burdensome for EFI to litigate in another forum.

23        EFI also argues that this action should not be transferred to the Northern District of Ohio
24  because the convenience of witnesses and the location of evidence favor the Northern District of
25  California. This argument is without merit for several reasons. EFI asserts that because all of its
26  witnesses are located in California, venue is proper in California instead of Ohio, and Gauthier "is

---

28  [7] A copy of the Answer filed by EFI in the Northern District of Ohio action and a copy of the docket are attached as Exhibit C.

likely the only Tesseron witness who would need to travel to California for trial." (Opp., p. 14.) EFI does not rebut the fact, however, that all of Tesseron's witnesses, including attorneys who participated in the procurement of the Tesseron Patents, witnesses for Varis, witnesses for Tesseron, and 30(b)(6) witnesses, reside in Ohio.

EFI also fails to rebut the fact that key witnesses and documents concerning EFI's infringement of the Tesseron Patents are not in California, but in New Jersey, where EFI's relevant customers are located. Indeed, extensive discovery including depositions, document production and review of computer source code, will need to be taken from Ricoh and Konica Minolta, each of which have principal places of business in New Jersey, which is closer and more accessible to Ohio than California. In addition, in light of today's technology, all of EFI's hard-copy documentation can easily be sent to the Northern District of Ohio for Tesseron's review. Moreover, contrary to EFI's assertion that its source code must be reviewed at its facilities in Foster City, the source code can be sent to Ohio and reviewed by Tesseron after an appropriate protective order is entered. Thus, EFI's contention that the convenience of witnesses and location of evidence favor Northern California is without merit.

In addition, the interests of justice favor litigating this matter in the Northern District of Ohio because it is the most efficient forum to obtain a complete and just resolution between EFI and Tesseron. EFI does not – and cannot – point to one fact that would outweigh the justice system's interests in judicial economy and avoiding duplicative litigation. With related litigation already pending in the Northern District of Ohio, the instant action is an unnecessary drain on the parties' and judicial resources. Indeed, if both actions are maintained, the parties will likely engage in duplicative discovery, briefing, and hearings before both courts. Further, there is a real possibility of inconsistent verdicts if both actions are litigated to judgment. Transfer of this action to the Northern District of Ohio would avoid this possibility. Finally, EFI's assertion that the Northern District of California is a more suitable forum because it is less congested than the Northern District of Ohio is outweighed by the interests of ensuring consistent judicial outcomes and avoiding duplicative litigation. Accordingly, in the event this Court concludes that it may exercise personal jurisdiction over

Tesseron, it should nonetheless transfer this action to the Northern District of Ohio where EFI is subject to personal jurisdiction.

      **C.    EFI should not be permitted to conduct highly invasive alter-ego discovery regarding three separate corporations and an individual having already conceded an appropriate alternate forum.**

EFI's alternative request for leave to conduct jurisdictional discovery should be denied because EFI has not established a prima facia case for personal jurisdiction over Tesseron. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 2002) (affirming the district court's refusal to grant jurisdictional discovery; plaintiff "failed to demonstrate how further discovery would allow it to contradict the affidavits" of defendants)). Thus, when, as here, the "[p]laintiff has provided the Court with only bare allegations of commercial activity in the forum state," the Court may properly deny a request for jurisdictional discovery in an effort to conserve the defendant's and the court's resources, particularly where such discovery would impose an undue burden on Defendants. *Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, No. C05-04039, 2006 WL 269951, at *3 n.2 (N.D. Cal. Feb. 2, 2006).

Tesseron has established that it does not conduct business in California, does not maintain a physical presence in California, has no personnel or assets in California, is not registered to do business in California, has not issued any licenses to any company with its principal place of business in California, and does not otherwise transact business in California. (Gauthier Decl., ¶¶13-14). None of EFI's arguments or innuendo contradict any material aspect of Tesseron's evidence of insufficient California contacts.

EFI's request for an opportunity to conduct discovery is nothing more than a request to conduct a fishing expedition in an attempt to construct a basis for jurisdiction. Further, given that EFI has already submitted to jurisdiction in the Ohio action, this request for jurisdictional discovery on the alter-ego claims appears to be an improper and calculated fishing expedition into restricted waters. EFI appears to be using this process to obtain highly invasive financial information from three separate corporations and highly personal, invasive, and confidential information from Mr.

Gauthier. This unnecessary discovery would create undue burden and cost for three separate corporate entities and Mr. Gauthier, and would result in a waste of judicial resources, especially considering that jurisdiction has already been established by EFI's own admission in the Northern District of Ohio due to its pervasive and continuing contacts with Ohio. The Court should therefore deny EFI's request for jurisdictional discovery.

### III. CONCLUSION

For these additional reasons, Tesseron respectfully requests that the Court dismiss this action or, in the alternative, transfer this action to the United States District Court for the Northern District of Ohio.

KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

Dated: January 18, 2008

By: _____
Ben Bedi
Jon Michaelson
Attorneys for Defendant